1   EDWARD C. DUCKERS (SBN 242113)
    ed.duckers@stoel.com
2   STOEL RIVES LLP
    Three Embarcadero Center, Suite 1120
3   San Francisco, CA 94111
    Telephone: 415.617.8900
4   Facsimile: 415.617.8907

5   BRYAN L. HAWKINS (SB #238346)
    bryan.hawkins@stoel.com
6   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
7   Sacramento, CA 95814
    Telephone: 916.447.0700
8   Facsimile: 916.447.4781

9   Attorneys for Defendants
    Thomas Woods and Stoel Rives, LLP
10

11                  UNITED STATES DISTRICT COURT

12                  EASTERN DISTRICT OF CALIFORNIA

13

14  JAMES WILFRED RAY AND DEBORAH        Case No. 2:19-cv-0055-MCE-KJN
    ANN RAY,
15                                        REQUEST FOR JUDICIAL NOTICE IN
              Plaintiff,                  SUPPORT OF MOTION TO DISMISS
16                                        PLAINTIFFS' COMPLAINT
         v.
17                                        Date:  March 28, 2019
    JUDGE WARREN STRACENER               Time:  10:00 a.m.
18  JUDGE FREDA PECHNER                  Dept:  Courtroom 25 - 8th Floor
    JUDGE THOMAS SMITH                   Judge: Hon. Kendall J. Newman
19  JUDGE DAVID DEVORE
    JENNIFER HEMINEZ, SUPERIOR COURT
20  CLERK
    GARY DECKER, THE WOLF FIRM
21  PAVEL EKMEKCHYAN, YU MOHANDESI
    DIANE CRAGG, SEVERSON & WERSON
22  THOMAS WOODS, STOEL RIVES, LLP,

23            Defendant.

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE ISO          -1-                    2:19-CV-0055-MCE-KJN
MOTION TO DISMISS
100407482.1 0099805-00000

### REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201 of the Federal Rules of Evidence, Defendants Thomas Woods and Stoel Rives, LLP  ("Defendants")  request that the Court take judicial notice of the following facts.

Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir. 1987).

The documents below are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Courts commonly take judicial notice of deeds of trust and similar instruments.  *See, e.g., Monaco v. Bear Stearns Residential Mortgage Corp.,* 554 F. Supp. 2d 1034, 1036 n.1 (C.D.  Cal. 2008); *Moore v. Chase Bank,* 2008 WL 961161, at *2 n.5 (N.D. Cal. 2008); *Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.,* 393 F. Supp. 2d 972, 977-78 (N.D. Cal. 2005); *Western Fed. Savings & Loan Ass'n v. Heflin,* 797 F. Supp. 790, 792 (N.D. Cal. 1992).

- Plaintiffs' Verified Complaint in the matter styled as *Deborah Ann Ray and James Wilfred Ray v. Select Portfolio Servicing, Inc.; et al.*, El Dorado County Superior Court, Case No. 20130578 (the "First Action"), filed November 15, 2013 (without exhibits), attached to this request as **Exhibit A**.

- Plaintiffs' Second Amended Verified Complaint ("SAC") in the First Action, attached to this request as **Exhibit B**.

- March 11, 2016, Order Sustaining demurrer to the SAC, attached to this request as **Exhibit C**.

- April 6, 2016, Judgment in the First Action, attached to this request as **Exhibit D**.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS                    -2-                    2:19-CV-0055-MCE-KJN

100407482.1 0099805-00000

1   • Plaintiffs Complaint in the matter styled as *Deborah Ann Ray and James Wilfred*

2   *Ray v. Bank of New York Melon, et al.*, El Dorado County Superior Court, Case

3   no. PC 20160566[1] (the "Second Action"), filed December 13, 2016, attached to

4   this request as **Exhibit E**.

5   • Plaintiffs' Second Amended Verified Complaint ("SAC") in the Second Action,

6   attached to this request as **Exhibit F**.

7   • July 25, 2018, Notice of Ruling Sustaining demurrer to the SAC in the Second

8   Action, attached to this request as **Exhibit G**.

9   • July 26, 2018, Judgment in the Second Action, attached to this request as **Exhibit**

10   **H**.

11   • Notice of Removal filed by Plaintiffs in the unlawful detainer action styled as *The*

12   *Bank of New York Melon v. James Wilfred Ray, et al.*, United States Eastern

13   District of California Case No. 2:19-cv-00063 (removing case no. 20170277 from

14   the El Dorado County Superior Court, Case No. PC 20160566 [2] (the "Third

15   Action"), attached to this request as **Exhibit I.**

16   • January 11, 2019, Order Remanding the Third Action back to El Dorado County

17   Superior Court, attached to this request as **Exhibit J.**

18

19   DATED:  February 22, 2019

20                                          STOEL RIVES LLP

21

22                                          By:/s/Bryan L. Hawkins
                                            EDWARD C. DUCKERS
23                                          BRYAN L. HAWKINS
                                            Attorneys for Defendants
24                                          Thomas Woods and Stoel Rives, LLP

25

26

27   _____

28   [1] This case number was identified in the Complaint.  *See* Dkt. 1 at. 9, ll. 11.
     [2] This case number was identified in the Complaint.  *See* Dkt. 1 at. 9, ll. 11.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS                    -3-                    2:19-CV-0055-MCE-KJN

100407482.1 0099805-00000

# EXHIBIT A

1   LAW OFFICES OF LINDA Z. VOSS
    Linda Z. Voss, Esq. SBN 111434
2   1900 South Norfolk Street, Suite 350
    San Mateo, CA 94403-1511
3   Phone: 650 576-2545
    Fax: 877 653-5117
4   Email: lzvoss@pacbell.net

5

6   Attorney for Plaintiffs,
    Deborah and James Ray
7

8            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF EL DORADO

10

11  DEBORAH ANN RAY and JAMES          )   Case No. PC 20130573
    WILFRED RAY, individuals,          )
12                                     )   COMPLAINT FOR:
    Plaintiffs,                        )
13                                     )
           vs.                         )   1.  CANCELLATION OF INSTRUMENTS:
14  BANK OF AMERICA, N.A in its        )       CALIFORNIA CIVIL CODE §3412
    capacity as servicer,  THE BANK OF )
15  NEW YORK MELLON FKA THE            )
    BANK OF NEW YORK , individually    )   2.  VIOLATION OF CALIFORNIA
16  and AS TRUSTEE FOR THE             )       HOMEOWNERS BILL OF RIGHTS
    CERTIFICATEHOLDERS OF CWALT,)
17  INC,. ALTERNATIVE LOAN TRUST       )
    2007-OH2, MORTGAGE PASS-           )   3.   VIOLATION OF CALIFORNIA BUSINESS
18  THROUGH CERTIFICATE, SERIES        )       & PROFESSIONS CODE §17200, ET SEQ
    2007-OH2 , a business entity unknown;)
19  RECONTRUST COMPANY, N.A, a         )
    business entity unknown; ALL       )   4.  WRONGFUL FORECLOSURE
20  PERSONS UNKNOWN, CLAIMING          )
    ANY LEGAL OR EQUITABLE RIGHT,)         5.  QUIET TITLE
21  TITLE, ESTATE, LIEN, OR INTEREST )
    IN THE PROPERTY DESCRIBED IN       )   DEMAND FOR JURY TRIAL
22  THE COMPLAINT ADVERSE TO           )
    PLAINTIFFS' TITLE, OR ANY          )
23  CLOUD ON PLAINTIFFS' TITLE         )
    THERETO and, DOES, 1 through 100,  )
24  inclusive,                         )
                                       )
25  Defendants.                        )

26

27

28

              PLAINTIFFS' VERIFIED COMPLAINT
                    Page 1 of 35

**COMPLAINT**

Come now, Plaintiffs, DEBORAH ANN RAY and JAMES WILFRED RAY, ("Plaintiffs"), by and through their counsel, for their Complaint against Defendants: The Bank of New York Mellon fka The Bank of New York (hereafter "BONY "), as Trustee for the Certificateholders of CWALT, Inc,. Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2 (hereafter "TRUST 2007-OH2", (in its capacity as purported beneficiary and assignee of Plaintiffs' Note and Deed of Trust); Recontrust Company, N.A, (in its capacity as purported trustee, hereafter "RECON"), Bank of America, N.A. (hereafter "BOFA" in its capacity as servicer), all collectively sometimes referred to as BANK Defendants, who plead as follows:

1.     Plaintiffs allege there are major defects in the non-judicial foreclosure instruments filed with the El Dorado County Recorder's Office. Specifically, the Assignment of Deed of Trust ("ADOT") was one recorded on June 24, 2011 that purports to vest an interest in Plaintiffs' Home to Defendants BONY and TRUST 2007-OH2, is invalid and has no legal force or effect.

2.     Defendant BONY engaged in unlawful or fraudulent conduct by filing or causing the ADOT to be filed with knowledge that the ADOT contained deliberate misstatements and misrepresentations, including that Defendant BONY had been assigned Plaintiffs' Note and Deed of Trust ("DOT"), collectively referred to as Plaintiffs' Loan.

3.     Through this action, Plaintiffs seek cancellation of the ADOT, Notice of Default, ("NOD"), Notice of Trustee Sale ("NOTS") 1 and NOTS2 as invalid non-judicial foreclosure instruments, damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing the future rights and obligations of the parties.

## II. PARTIES

4.     Plaintiffs are now, and at all times mentioned herein, individuals residing in the State of California in the County of El Dorado.  At all times relevant to this action, Plaintiffs have owned real property commonly known as 3190 Carlson Drive, Shingle Springs, CA 95682, ("Plaintiffs' Home").

5.     Plaintiffs allege that at all times mentioned herein, Defendant RECON was and is a company retained to enforce the faulty Loan and associated security interest, by conducting its

1  non-judicial foreclosure proceedings.

2        6.      Plaintiffs allege that at all times mentioned herein, Defendant BOFA, is the loan

3  servicer on for Plaintiffs' Loan referenced throughout this Complaint.

4        7.      Plaintiffs allege that Defendant BONY is a national banking association authorized

5  to do business in the State of California, including in El Dorado County. Plaintiffs further allege

6  that Defendant BONY claims to be the named Trustee bank for Defendant TRUST 2007-OH2.

7        8.      Plaintiffs allege that at all times mentioned herein, Defendant TRUST 2007-OH2

8  was and is the trust Plaintiffs' Home was securitized within.

9        9.      Plaintiffs are ignorant of the true identities and capacities of Defendants

10  designated as Does 1 - 100, but will amend the Complaint when their identities have been

11  ascertained according to proof within the time permitted. However, Plaintiffs allege on information

12  and belief, that each and every Doe Defendant is in some manner responsible for the acts and

13  conduct of the other Defendants and were, and are responsible for the injuries, damages, and harm

14  incurred by Plaintiffs. Plaintiffs further allege on information and belief that each such designated

15  Defendant acted, and acts, as the authorized agent, representative, and associate of the other

16  Defendants in doing the things alleged herein.

17                    **III. FACTUAL ALLEGATIONS**

18        10.      On or around May 18, 2007, Plaintiffs met with an Agent of American Financing

19  Corporation and executed a promissory note ("Note") in the amount of $670,000 in favor of

20  American Finance Corporation. The Note is secured by a deed of trust ("DOT") (Note and DOT

21  collectively, the "Loan") for the finance of Plaintiffs' Home. See Exhibit "1", attached hereto and

22  incorporated herein by this reference a true and correct copy of the DOT.

23        11.      The DOT named Plaintiffs as the "borrowers," identified Fidelity National Title

24  Company., a California Corporation as "trustee," American Financing Corporation, as "lender" and

25  MERS as both "nominee" and "beneficiary." America's Wholesale Lender is a fictitious business

26  name owned by Countrywide Home Loans.

27        12.      At the time Plaintiffs signed the closing documents, including the Note and DOT,

28  the Payment Letter to Borrower reflected a monthly payment of $3.056.63. After signing the loan

1   documents presented to them at their home, the notary took the original signed mortgage paperwork

2   with him and did not leave a set of the signed documents, which would have included a 3 day right

3   of rescission. The notary assured Plaintiffs they would receive signed copies by mail in a few days.

4           13.     The Payment Letter to Borrower indicated that the monthly payments for the

5   above referenced loan would begin on July 1, 2007 and would continue monthly until June 1, 2037.

6   This letter further stated: "*Your monthly payment will consist of the following: Principal and*

7   *Interest: $2,518.54, Taxes: $433.26, Insurance: $104.83, Total: $3056.6.* See Exhibit "2a" attached

8   hereto and incorporated herein by this reference a true and correct copy of the Payment Letter to

9   Borrower.

10          14.     Plaintiffs followed up for weeks with the agent from American Financing

11  Corporation asking for a copy of all the documents that they signed; approximately 8 weeks later

12  they received their documents. Upon review of the documents, the loan terms were different from

13  what was stated in the Payment Letter to Borrower. The documents reflected that they had not one

14  but four payment options, none of which were disclosed to Plaintiffs prior to signing the closing

15  documents. The payment options were as follows:

16                  Option 1 – 30 Year Fully Amortized payment of $5,066.33

17                  Option 2 – 15 year Fully Amortized payment of $6,684.31

18                  Option 3 – Minimum payment of $3,056.27

19                  Option 4 – Interest only payment of $4,515.92

20          15.     Plaintiffs allege that they were never informed at the time of signing their closing

21  documents regarding these payment options. When Plaintiffs signed the loan documents, the initial

22  monthly payment amount that appeared was the minimum payment amount. In other words,

23  documents provided to the Plaintiffs only reflected the minimum payment. Thus, Plaintiffs did not

24  know the monthly payment necessary to make a payment that would, for example, cover accruing

25  interest, until they received the first statement, well after all loan documents were signed. See

26  Exhibit "2b" attached hereto and incorporated herein by this reference a true and correct copy of

27  their November 1, 2007 mortgage statement.

28          16.     This type of loan is known as a Hybrid-Option Arm. The Option Arm is a

1    complicated product usually offering an introductory fixed rate for a short time period but four

2    payment options to pay. Option 1 is a 30 year fixed rate fully amortized payment and Option 2 is a

3    15 year fixed rate fully amortized payment. Option 3 is a "minimum" payment, the lowest of the

4    payment options with the minimum payment less than the monthly interest accruing on the loan.

5    The unpaid interest is added to the principal of the loan resulting in "negative amortization" or an

6    increase in the balance of the loan every month. Option 4 is an "interest only" payment, a payment

7    that neither increases nor decreases the balance on the loan. Plaintiffs' initial fixed interest rate was

8    7.125% for the first 5 years of the loan. This introductory 7.125% fixed rate loan had a minimum

9    monthly payment 5% below the introductory rate or 2.125%. The Agent of American Financing

10   Corporation sold this minimum negative amortization loan of 2.125%, with a monthly payment of

11   $2,518.54, to Plaintiffs as a 30 year fixed payment loan.

12        17.    The Hybrid Option Arm loans were designed to extract equity from the

13   homeowner each month if they made the minimum payment. The Payment Letter to Borrower, part

14   of the final loan documents, did not indicate anywhere that the payment being reflected was

15   anything less than a fully amortized payment. Only Options 1 and 2 contained the fully amortized

16   monthly loan payments of $5,066.33, and $6,684.31, respectively,  and these options were not

17   included or disclosed to the borrower in the Payment Letter to Borrower, or anywhere in the loan

18   documents signed by Plaintiffs before the notary. The payment difference between the 30 year

19   fixed rate fully amortized monthly payment and the minimum monthly payment, $2,010.00, was

20   added to the balance of the loan each and every month Plaintiffs made only a minimum payment.

21        18.    The option to make a minimum payment is only available up to the tenth year of

22   the loan or when the negative amortization of the interest exceeds the maximum amount allowed

23   per the terms of the loan, usually between 115% and 120% of the original loan amount. Once the

24   loan balance reaches its maximum negative equity position, the borrower is left with only three

25   payment options; the interest only, the 30 year fixed or the 15 year fixed. At the tenth year, the loan

26   *"recasts"* and the borrower is obligated to pay the full balance of the loan plus all negatively

27   amortized interest over the remaining shortened term of the loan. An increased balance now

28   payable monthly over a shorter mortgage period, usually 20 years, results in a fully amortized

1   payment that is unfathomable.

2        19.  Most, if not all, homeowners offered these Hybrid Option Arm loans would not

3   understand the terms without proper disclosures when signing the loan documents. The Payment

4   Letter to Borrower was correct but only for the first month of the loan and thereafter homeowners,

5   including Plaintiffs, making that payment added a minimum of $2,000.00 to their existing loan

6   balance every month. Nowhere in the Payment Letter to Borrower were Plaintiffs advised that this

7   payment was good for the first month only.

8        20.  Moreover, Plaintiffs never knew that there loan was a Hybrid Option Arm,

9   believing that they were entering into a fixed rate fully amortized 30 year loan.

10       21.  Plaintiffs allege that these Hybrid Option Arm loans were masterminded to extract

11   the maximum profit for the lender while deceiving homeowners, including Plaintiffs, resulting in an

12   escalating loan balance, decreased equity in their property and borrowers ultimately defaulting on

13   the terms of their loans.

14       22.  BANK Defendants knew the dangers these Hybrid Option Arm loans posed to

15   borrowers, including Plaintiffs, in particular the near certainty that payment shock would lead to

16   high borrower default rates and the risk that borrowers whose loans had negatively amortized

17   would not be able to refinance.

18       23.  Upon receiving a copy of their loan documents from their Agent, Plaintiffs

19   realized that the documents contained disclosures that were not provided to them at the time they

20   signed their loan documents. Plaintiffs called and talked to the loan agent of American Financing

21   Corporation and were told it was too late to rescind the loan. The next call they made was to the

22   local Countrywide branch where they were directed to the legal department. Countrywide's legal

23   department informed Plaintiffs that it was too late to rescind the loan.

24       24.  Adding insult to injury, Plaintiffs were not able to refinance out of this TOXIC

25   Hybrid Option Arm loan due to a three year prepayment penalty clause in the loan documents for

26   early payoff of the loan. This prepayment penalty consisted of 6 months' interest on 80% of the

27   unpaid balance of the loan. See Exhibit 3 attached hereto and incorporated herein by this reference

28   a copy of the Prepayment Rider.

1    25.    From August 2007 until approximately fall 2010, Plaintiffs made the interest only

2    payments drawing upon their savings each month to make the payments.

3    26.    In or about February 2009, Plaintiffs received via FedEx an unsolicited loan

4    modification application dated February 25, 2009 from Countrywide adding $8,223.67 to their

5    balance and changing the monthly payment to $3,049.92 for 5 years. This letter stated that the offer

6    was good for 30 days. See Exhibit "2c" attached hereto and incorporated herein by this reference a

7    true and correct copy of the February 25, 2009 letter.

8    27.    Approximately two weeks later, Plaintiffs received via FedEx a second loan

9    modification application dated March 7, 2009 identical to the first except that $15,426.79 was

10   added to the existing loan amount and the interest only monthly payment was $3,069.82 for 5 years.

11   See Exhibit "2d" attached hereto and incorporated herein by this reference a true and correct copy

12   of the March 7, 2009 letter.

13   28.    Upon receiving both loan modification applications, Plaintiffs called Countrywide

14   on March 8, 2009 and spoke with a Charles Wallace who said to disregard the first offer and that

15   there would be no explanation or further information provided to the borrower as to why they

16   received these offers.

17   29.    Plaintiffs did further research on the modifications and determined that the

18   modifications were only a rate adjustment of the minimum interest rate for a period of five years.

19   The minimum interest rate only affected how quickly the negative amortization of interest would

20   accumulate and did not change the overall fully indexed payment or Toxic terms of the loan.

21   Plaintiffs did not sign the offers.

22   30.    Starting in 2010, Plaintiffs started applying for a loan modification with Defendant

23   BOFA who had taken over Countrywide's servicing. Plaintiffs spent months going back and forth

24   with Defendant BOFA as every month or so Defendant BOFA would claim to not have received all

25   the paperwork. This activity continued to February 2012 at which time Plaintiffs were approved for

26   a short sale through the HAFA program. See Exhibit "2e" attached hereto and incorporated herein

27   by this reference a true and correct copy of the Short Sale Approval letter dated February 14, 2012.

28   See also Exhibit "2f", a true and correct copy of the document showing Defendant BOFA's

1   valuation of Plaintiffs' Home at $300,000.00.

2         31.    In 2009, a subdivision was built above the Plaintiffs' Home. Improper drainage as

3   a result of the construction in this subdivision caused severe damage to Plaintiffs' property the

4   following winter. Plaintiffs verbally tried to communicate this damage to Defendant BOFA during

5   the process of getting approved for a loan modification as well as a short sale. This damage not

6   only affected the property value but the marketability of the property as well.

7         32.    After months on the market trying to short sell their water damaged property,

8   Plaintiffs' took the property off the market and Defendant BOFA offered Plaintiffs an opportunity

9   to apply for another loan modification. See Exhibit "2g" attached hereto and incorporated herein by

10   this reference a true and correct copy of the August 10, 2012 letter from Defendant BOFA.

11         33.    Plaintiffs received a letter from Defendant BOFA dated October 23, 2012

12   declining their loan modification and provided a copy of the Net Present Value (NPV) Worksheet

13   showing the information used to reach that decision. On the worksheet, the market value is listed as

14   one of the reasons for the decline of the modification. On the worksheet, Defendant BOFA used a

15   property a value of $570,000 in their calculations when the value assigned by Defendant BOFA to

16   the property for the short sale was $300,000. See Exhibit "2h" attached hereto and incorporated

17   herein by this reference a true and correct copy of the October 23, 2012 Decline letter with NPV

18   Worksheet.

19         34.    Plaintiffs timely appealed the denial of their loan modification on November 14,

20   2012, challenged the NPV used on the worksheet and requested an appraisal. See Exhibit "2i"

21   attached hereto and incorporated herein by this reference a true and correct copy Defendant

22   BOFA's response to Plaintiffs' November 14, 2012 Appeal Letter.

23         35.    Defendant BOFA thereafter agreed to reevaluate the value of Plaintiffs' Home and

24   sent one of their appraisers to value the property. The appraisal was returned with a market value of

25   $349,000. The Appraiser noted: *"For site comments – external factors the appraiser noted: ... there*

26   *is evidence of inadequate drainage and significant damage has occurred to the site improvements*

27   *and to the subject. This condition has created a significant negative impact upon the subject and*

28   *the subject's marketability."* See Exhibit "2j" attached hereto and incorporated herein by this

1  reference a true and correct copy of the Appraisal dated 12-20-12.

2      36.   Plaintiffs allege that during this appeal process they tried to engage Defendant

3  BOFA in meaningful talks regarding the damage to their Home. Plaintiffs want to address the issue

4  of the damage with the culpable parties but need to have a solid permanent loan modification in

5  place to proceed.

6      37.   Plaintiffs allege that due to their appeal and subsequent appraisal, their loan

7  modification application was approved for a trial loan modification on May 30, 2013. The offer

8  stated that after 3 months Plaintiffs could be asked to make one or more payments with no definite

9  time as to when they would be offered a permanent loan modification. The modification did not list

10 any specific details or information regarding the modification. Plaintiffs were and are concerned

11 that this modification would be no different than the previous offers in 2009 that only changed the

12 minimum interest due on the loan and would not address the toxic nature of the underlying loan.

13 After all the issues the Plaintiffs had with proper disclosure of their original loan terms they felt

14 they could not trust the loan modification offer. See Exhibit "2k" attached hereto and incorporated

15 herein by this reference a true and correct copy of the May 30, 2013 Trial Modification Offer.

16     38.   Plaintiffs allege that they declined the May 30, 2013 offer because they felt it was

17 another attempt by Defendant BOFA to collect payments without any intent of making a permanent

18 loan modification. The Affidavit of William McCaffrey ("AFFIDAVIT"), attached hereto and

19 incorporated herein by this reference as Exhibit "4", includes an Exhibit "A", a copy the loan level

20 detail sheet for Plaintiffs' Loan. A review of Exhibit "A" to the AFFIDAVIT shows that no trial

21 modification was accepted on this loan.

22     39.   On October 5, 2011, Defendant RECON recorded a Substitution of Trustee

23 ("SOT"), signed by T. Sevillano (SEVILLANO), as "Assistant Vice President" for The Bank of

24 New York Mellon, FKA The Bank of New York, as Trustee for the Certificate Holders of CWALT,

25 Inc., Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2 by

26 its AIF Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing, LP. See

27 Exhibit "5", attached hereto and incorporated herein by this reference a true and correct copy of the

28 SOT. SEVILLANO's signature on Exhibit "5" was purportedly notarized by Ninoush Samimi

1   ("SAMIMI').

2       40.   SEVILLANO appears to be an employee of Defendant RECONTRUST and has

3   signed documents in California. See Exhibit "6" attached hereto and incorporated herein, a true and

4   correct copy of a LinkedIn page showing a SEVILLANO who works for Defendant

5   RECONTRUST. Plaintiffs allege that contrary to her statements in the SOT Exhibit "5" attached

6   hereto and incorporated herein by this reference, SEVILLANO did not have the requisite authority

7   to sign on behalf of Defendants BONY or BANK OF AMERICA, had no personal knowledge of

8   the facts involved in the SOT, never saw or learned whether Plaintiffs' Loan was actually ever

9   assigned, and never viewed the Note securing the DOT.

10      41.   Plaintiffs further allege that Exhibit "5" was not signed by SEVILLANO and in

11  fact her signature is a forgery, further invalidating the SOT. Attached hereto as Exhibit "7" and

12  incorporated herein by this reference are samples of signatures by SEVILLANO on various

13  documents recorded within the State of California. A comparison of SEVILLANO's signature on

14  Exhibit "5" with the signatures on Exhibit "7" raises issues regarding who actually signed Exhibit

15  "5".

16      42.   Plaintiffs allege that the notary signature on Exhibit "5" is also forged, further

17  invalidating the SOT. A comparison of SAMIMI's signature on Exhibit "5" with the notary

18  signature of SAMIMI on page 7 of Exhibit"7" raises issues regarding who actually signed and

19  notarized Exhibit "5".

20      43.   Plaintiffs allege that SEVILLANO does not hold the position of "Assistant Vice

21  President" of Defendants BONY or BOFA; SEVILLANO is what has come to be known as a

22  "robo-signer"- an individual who simply signs thousands of non-judicial foreclosure documents on

23  behalf of several different entities without any personal knowledge or corporate authority. Plaintiffs

24  allege that Defendants BONY and BOFA never, in any manner whatsoever appointed

25  SEVILLANO as "Assistant Vice President". *(See* California Civil Code ("CC") § 2299 ["an agency

26  is actual when the agent is really employed by the principal]"). Rather, SEVILLANO is an

27  employee of Defendant RECON.

28      44.   Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any

1    interest under the DOT or Note to Defendant BONY as Trustee for Defendant TRUST 2007-OH2

2    ever occurred as required, and as set forth more fully below.

3         45.    Plaintiffs further allege that almost immediately upon the recording of the DOT, if

4    not sooner, Plaintiffs' Loan was sold to another entity, possibly CWALT, Inc., Depositor, for the

5    purpose of securitizing this Loan and placing Plaintiffs' Loan into Defendant TRUST 2007-OH2.

6         46.    Plaintiffs further allege that upon the sale of Plaintiffs Loan to another entity,

7    possibly CWALT, Inc., Depositor, Defendants BONY, TRUST 2007-OH2, BOFA and RECON

8    had no further authority to initiate or complete any non-judicial foreclosure actions regarding

9    Plaintiffs' Home.

10        47.    On October 5, 2011, a Notice of Default ("NOD") was recorded by Defendant

11   RECON, signed by Wally Davidson (DAVIDSON), as "Assistant Vice President ", Agent for

12   Beneficiary. See Exhibit "8", attached hereto and incorporated herein by this reference is a true and

13   correct copy of the NOD. Attached to the NOD and incorporated herein by this reference is a

14   California Declaration, signed by James Renfro (RENFRO).

15        48.    On January 13, 2012 and December 11, 2012, respectively, Defendant RECON

16   recorded NOTS1 signed by Nallely Ochoa-Flores (OCHOA-FLORES), as "Assistant Vice

17   President" and NOTS2 signed by Lorena E. Rivera (RIVERA), as Assistant Vice President. See

18   Exhibits "9" and "10", respectively, attached hereto and incorporated herein by this reference, a

19   true and correct copy of NOTS1 and NOTS2.

20                              **A. Invalid Assignment**

21        49.    An Assignment of Deed of Trust ("ADOT") was recorded on June 24, 2011 in the

22   El Dorado County Recorder's Office, which was purportedly executed on June 11, 2011, by

23   "Mercedes Judilla" (JUDILLA) as "Assistant Secretary" of Mortgage Electronic Registration

24   Systems, Inc. ("MERS") as nominee. See Exhibit "11", attached hereto and incorporated herein by

25   this reference, a true and correct copy of the ADOT.

26        50.    This ADOT alleges that for "value received" MERS "does hereby grant, sell,

27   assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF

28   NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.

ALTERNATIVE LOAN TRUST 2007-OH2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OH2, ... all beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein described ..."

51.     Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any interest under the DOT or Note to Defendants BONY or TRUST 2007-OH2 ever occurred, on the following grounds: four years after the cutoff date for Loans to be assigned to this trust, MERS as nominee for American Financing Corporation. purportedly recorded the ADOT of the subject loan to Defendant BONY as trustee for Defendant TRUST 2007-OH2.

52.     Attached hereto as Exhibit "12" and incorporated herein by this reference are copies of the Declaration of Attorney Steve Berman who filed the case of *In Re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation* in the United States District Court District of Massachusetts, Case No. 1:10-md-2193 RWZ and the corroborating Declarations of William E. Wilson, Simone Gordon and Theresa Terrelonge, former Bank of America ("BOFA") employees who verify that BOFA managers had a business practice known as a twice monthly "blitz". Defendant BOFA ordered case managers and underwriters to "clean out" the backlog of HAMP loan modification applications by denying any file where the financial documents were more than 60 days old, including files where the homeowner had provided all financial documents and fully complied with the terms of a Trial Period Plan. Case managers, underwriters and employees were rewarded handsomely with bonuses and gifts for trashing loan modification documents and indiscriminately foreclosing properties. A single team would "blitz" up to 1500 loan modifications approximately every 2 weeks.

53.     Plaintiffs allege that Defendants herein have engaged in the same tactics as identified in Exhibit "12".

54.     Plaintiffs allege that JUDILLA does not hold the position of "Assistant Secretary" of MERS, which is located in Virginia. JUDILLA, located in California, is what has come to be known as a "robo-signer"- an individual who simply signs thousands of non-judicial foreclosure documents on behalf of several different entities without any personal knowledge or corporate authority. Plaintiffs allege that JUDILLA was never, in any manner whatsoever, appointed by

1    MERS, as an "Assistant Secretary". *(See* California Civil Code ("CC") § 2299 ["an agency is actual

2    when the agent is really employed by the principal]). Rather, JUDILLA appears to be an employee

3    of Defendant BOFA and signed documents in California. Plaintiffs allege that contrary to her

4    statement in the ADOT, JUDILLA did not have the requisite authority to sign on behalf of MERS,

5    had no personal knowledge of the facts involved in the ADOT, has never seen or learned whether

6    Plaintiffs' Loan was actually ever assigned, and never viewed the Note securing the DOT.

7         55.    Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any

8    interest under the DOT or Note to Defendant BONY as Trustee for Defendant TRUST 2007-OH2

9    ever occurred.

10        56.    Plaintiffs allege that Defendant TRUST 2007-OH2 is a common law trust formed

11   in 2007 pursuant to New York law. The corpus of Defendant TRUST 2007-OH2 allegedly consists

12   of a pool of residential mortgage notes allegedly secured by liens on residential real estate.

13   Plaintiffs allege that Defendant TRUST 2007-OH2 has no officers or directors and no continuing

14   duties other than to hold assets and to issue the series of certificates of investment. A detailed

15   description of the categories of mortgage loans is included in the Prospectus Supplement ("the

16   Prospectus"). A copy of the Supplement Prospectus can be found at:

17   http://www.sec.gov/Archives/edgar/data/1269518/000114420407035146/v079879_424b5.htm.

18   Defendant TRUST 2007-OH2's Securities and Exchange Commission ("SEC") CIK Code for all

19   SEC filings is 0001404500. The Prospectus lists the following as parties to Defendant TRUST

20   2007-OII2: CWALT, Inc., Depositor; Countrywide Home Loans, Inc., Sponsor and Seller;

21   Countrywide Home Loans Servicing LP, Master Servicer; and Alternative Loan Trust 2007-OH2,

22   Issuer.

23        57.    The Pooling and Servicing Agreement ("PSA") lists the following as parties to

24   Defendant TRUST 2007-OH2: CWALT, Inc., Depositor; Countrywide Home Loans, Inc., Park

25   Granada, LLC, Park Monaco, Inc., Park Sienna, LLC, Sellers; Countrywide Home Loans Servicing

26   LP, Master Servicer; and Defendant BONY, Trustee.

27        58.    Plaintiffs allege that one purpose of the PSA is to document that in the regular

28   course of business Defendant BONY as Trustee for Defendant TRUST 2007-OH2 originates and

1  acquires loans and desires by the PSA to confirm the terms and conditions under which Defendant

2  TRUST 2007-OH2 will "acquire the mortgage loans" so originated.

3       59.    Defendants, and each of them, knowingly and willfully conspired, engaged in a

4  common enterprise, and engaged in a common course of conduct to accomplish the wrongs

5  complained of herein. The purpose and effect of the conspiracy, common enterprise, and common

6  course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of

7  Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common

8  enterprise, and common course of conduct by misrepresenting and concealing material information

9  regarding the servicing of loans, and by taking steps and making statements in furtherance of their

10  wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant

11  in the conspiracy, common enterprise and common course of conduct complained of herein, and

12  was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include,

13  inter alia, all of the acts that each of them are alleged to have committed in furtherance of the

14  wrongful conduct of complained of herein.

15       60.    Any applicable statutes of limitations have been tolled by the Defendants'

16  continuing knowing, and active concealment of the facts alleged herein. Despite exercising

17  reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from

18  discovering, the wrongdoing complained of herein.

19       61.    Plaintiffs allege that Defendant TRUST 2007-OH2 issued the securities in the

20  mortgage-backed Trust identified herein. Said securities were underwritten by CWALT, Inc, the

21  named Depositor in the PSA. Plaintiffs allege that these securities were duly registered with the

22  SEC on a registration statement bearing file number 333-140962. The registration statement and

23  other reports and information regarding the Defendants BONY and TRUST 2007-OH2 are

24  available at the SEC's Internet site at:

25  http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001404500&action=getcompany

26  The materials are also available to read and copy at the SEC's Public Reference Room at 100 F.

27  Street, N.E., Washington, D.C. 20549.

28       62.    In the ADOT, attached hereto as Exhibit "11" and incorporated herein by this

1   reference, Defendant TRUST 2007-OH2 is listed as the holder and owner of the Note and the

2   beneficiary of the DOT, listing Defendant BONY as Trustee for Defendant TRUST 2007-OH2. The

3   DOT executed by Plaintiffs on May 18, 2007 identifies the Lender as American Financing

4   Corporation and MERS as the beneficiary and nominee for the Lender.

5        63.    Plaintiffs further allege that the Note was not duly endorsed, transferred and

6   delivered to the Defendant TRUST 2007-OH2 prior to the Closing Date, June 29, 2007.

7        64.    Pursuant to Section 2.01 of the PSA, all mortgage files transferred to Defendant

8   TRUST 2007-OH2 must be delivered on or before the Closing Date:

9   "(a) Each Seller, concurrently with the execution and delivery of this Agreement, hereby sells,
    transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all its

10  respective right, title and interest in and to the related Initial Mortgage Loans, including all interest
    and principal received or receivable by such Seller, on or with respect to the applicable Initial

11  Mortgage Loans after the Initial Cut-off Date and all interest and principal payments on the related
    Initial Mortgage Loans received prior to the Initial Cut-off Date in respect of installments of

12  interest and principal due thereafter, but not including payments of principal and interest due and
    payable on such Initial Mortgage Loans, on or before the Initial Cut-off Date. On or prior to the

13  Closing Date, Countrywide shall deliver to the Depositor or, at the Depositor's direction, to the
    Trustee or other designee of the Depositor, the Mortgage File for each Mortgage Loan listed in the

14  Mortgage Loan Schedule (except that, in the case of the Delay Delivery Mortgage Loans (which
    may include Countrywide Mortgage Loans, Park Granada Mortgage Loans, Park Monaco

15  Mortgage Loans or Park Sienna Mortgage Loans), such delivery may take place within thirty (30)
    days following the Closing Date or twenty (20) days following the applicable Supplemental

16  Transfer Date, as applicable). Such delivery of the Mortgage Files shall be made against payment
    by the Depositor of the purchase price, previously agreed to by the Sellers and Depositor, for the

17  Mortgage Loans. With respect to any Initial Mortgage Loan that does not have a first payment
    date on or before the Due Date in the month of the first Distribution Date or any Supplemental

18  Mortgage Loan that does not have a first payment date on or before the Due Date in the month
    after the related Supplemental Transfer Date, Countrywide shall deposit into the Distribution

19  Account on or before the Distribution Account Deposit Date relating to the first applicable
    Distribution Date, an amount equal to one month's interest at the related Adjusted Mortgage Rate

20  on the Cut-off Date Principal Balance of such Mortgage Loan.

21
    Countrywide further agrees (x) to cause The Bank of New York to enter into the Swap Contract

22  Administration Agreement as Swap Contract Administrator and (y) to assign all of its right, title
    and interest in and to the Swap Contracts to, and to cause all of its obligations in respect of each

23  such transaction to be assumed by, the Swap Contract Administrator on the terms and conditions
    set forth in the related Swap Contract Assignment Agreement.

24

25

26

27

28

(b) Immediately upon the conveyance of the Initial Mortgage Loans referred to in clause (a), the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with the Depositor's right to require each Seller to cure any breach of a representation or warranty made in this Agreement by such Seller or to repurchase or substitute for any affected Mortgage Loan in accordance herewith.

(c) In connection with the transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee (or, in the case of the Delay Delivery Mortgage Loans that are Initial Mortgage Loans, will deliver or cause to be delivered to the Trustee within thirty (30) days following the Closing Date and in the case of the Delay Delivery Mortgage Loans that are Supplemental Mortgage Loans, will deliver or cause to be delivered to the Trustee within twenty (20) days following the applicable Supplemental Transfer Date) for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned:

(i) (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse," with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); …"

65.   Plaintiffs allege that Defendant TRUST 2007-OH2 was formed under New York law and therefore New York law governs the operation of the trust. New York Estates, Powers & Trusts Law section 7-2.4, provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."[i]

66.   Because Defendant TRUST 2007-OH2 was created by the PSA and that agreement establishes a specific Closing Date, Defendant BONY's attempt as Trustee for Defendant TRUST 2007-OH2 to accept a loan after the Closing Date was void as an act in contravention of the PSA.

67.   Plaintiffs allege that the Note in this case was never actually transferred or delivered by American Financing Corporation or by MERS to the Depositor, CWALT, Inc. and thereafter by the Depositor, CWALT, Inc. to the Custodian on behalf of Defendant BONY, Trustee for Defendant TRUST 2007-OH2 prior to the closing.

68.   In addition, there is no indication that Plaintiffs' loan was transferred into Defendant TRUST 2007-OH2 pursuant to the PSA before the Closing Date. Accordingly, Plaintiffs allege that the Note in this case was never lawfully negotiated and physically delivered to Defendant TRUST 2007-OH2.

69. Plaintiffs allege that the ADOT did not occur by September 29, 2007, or thirty (30) days thereafter, but rather on June 24, 2011, long after Defendant TRUST 2007-OH2 had closed. Said ADOT was ineffective, as Defendant TRUST 2007-OH2 could not have accepted the DOT after the Closing Date pursuant to the PSA and the requirements for a REMIC Trust. If the ADOT was made after the closing date, the non-compliance with the REMIC statutes would terminate Defendant TRUST 2007-OH2 by extinguishing its tax-exempt status under the REMIC statutes. See the AFFIDAVIT by William McCaffrey Exhibit "4" for further information on REMIC statutes.

70. Therefore, the attempted non-judicial foreclosure of Plaintiffs' Home, the NOD, NOTS1 and NOTS2, are and were wrongful and *void ab initio*. [ii]

71. Plaintiffs further allege that:

    a.  Paragraph 22 of the DOT (a complete, true and correct copy is attached hereto as Exhibit "1", attached hereto and incorporated herein by this reference ) authorizes only the lender-beneficiary (or its assignee), to (i) accelerate the loan after a default and (ii) elect to cause the Home to be sold; and

    b.  A non- holder of the DOT, Defendant BOFA, rather than the true beneficiary, Defendant BONY as Trustee for Defendant TRUST 2007-OH2, instructed Defendant RECON to initiate the non-judicial foreclosure. [iii]

72. The issues for which Plaintiffs are seeking resolution do not only include the question of whether or how much they may owe on the loan. The issue primarily needing to be resolved is what entity may actually own the loan and may have the right and standing to enforce the terms of the purported Note and DOT. The Court should not condone the BANK Defendants' fraudulent and predatory lending and servicing practices and allow it to collect money it was and is not owed. Simply put, the Court should not allow the BANK Defendants to trample over 200 years of well-settled property laws just because Plaintiffs may "owe somebody the money".

73. Plaintiffs' allegations are based on: (1) analysis of the Plaintiffs' Home's recorded county records; (2) direct written and oral communication with Defendants Defendant BONY as Trustee for Defendant TRUST 2007-OH2, BOFA and/or RECON; (3) their counsel's research,

1    experience, and extensive review of depositions, case law, amicus briefs, correspondence, news

2    articles, reports, and publicly available securitization documents & practices; (4) a review of the

3    purported recorded documents fraudulently signed; (5) a review of the purported Declaration of

4    Compliance fraudulently signed; (5) a review of the PSA and other documents filed with the SEC

5    for Defendant TRUST 2007-OH2.

6          74.    Plaintiffs allege that none of the BANK Defendants can demonstrate or document

7    that Plaintiffs' Note was ever properly endorsed, and the DOT simultaneously assigned and both

8    ultimately properly perfected and transferred to the Defendants BONY, TRUST 2007-OH2 or any

9    other entity.

10          75.    Plaintiffs relied on the BANK Defendants' misrepresentations and have been

11    damaged in the following ways: (1) Plaintiffs have been paying the wrong party for an

12    undetermined amount of time and overpaid interest and other penalties that were miscalculated; (2)

13    Plaintiffs have suffered damage to their credit reports and scores; (3) Plaintiffs have expended

14    significant funds to cover the cost of attorneys' fees and related costs; (4) Plaintiffs have suffered

15    damage to their reputation in the community; (7) Plaintiffs are unable to determine whether they

16    sent monthly mortgage payments to the right party; (8) multiple parties may seek to enforce this

17    debt obligation against Plaintiffs; and (9) any would-be buyer of Plaintiffs' Home will find

18    themselves in legal limbo, unable to know with any certainty whether they can safely buy

19    Plaintiffs' Home or get title insurance (10) Plaintiffs have been denied the opportunity to negotiate

20    the terms of their loan to cure the default with the proper party.

21          76.    Plaintiffs seek a court ruling as to whether the DOT secured any obligation of

22    Plaintiffs such that BANK Defendants could non-judicially foreclose on the Plaintiffs' Home or

23    collect Plaintiffs' loan payments; a final judgment granting Plaintiffs' quiet title to their Home; and

24    a final judgment of wrongful non-judicial foreclosure against the BANK Defendants and DOE

25    Defendants.

26          77.    Plaintiffs allege that BANK Defendants have received more than 100%

27    compensation for Plaintiffs' loan through moneys paid by investors, credit default swaps, the FDIC

28    and/or other insurance and have been paid in full by the investors in Defendant TRUST 2007-OH2,

1   or otherwise.

2        78.    For all of the foregoing reasons, Plaintiffs allege a controversy surrounding the

3   title is evident because there is no recorded ADOT to the proper purported Note Holder.

4        79.    Additionally, Plaintiffs claim the BANK Defendants have no authority to non-

5   judicially foreclose for lack of standing because said Defendants did not have any perfected

6   security or beneficial interest in the purported Note or DOT. Not only is the creation of this

7   "ADOT" as well as one or more of the documents signed by JUDILLA, fraudulent and deceptive,

8   but an unlawful <u>criminal violation.</u> California Penal Code §115 provides:

9   "[e]very person who knowingly procures or offers any false or forged instrument to be filed,
registered, or recorded in any public office within this state, which instrument, if genuine, might

10   be filed, registered, or recorded under any law of this state or of the United States, <u>is guilty of a</u>

11   <u>felony</u>." (emphasis added).

12   Clearly, Defendants' conduct falls squarely within the guidelines of California Penal Code §115.

13        80.    Plaintiffs allege that Defendant BOFA, among others, was and is a party to the

14   Consent Judgment reached in the case of *THE UNITED STATES OF AMERICA, et al, v. BANK OF*

15   *AMERICA CORPORATION, et al*, in the United States District Court for the District of Columbia,

16   Case # 1:12-cv-00361-RMC.

17        81.    Plaintiffs further allege that Defendant BOFA as a result of the actions herein

18   alleged, is in violation of this Consent Judgment.

19            **B. The Notice of Default, Notices of Sale Are Invalid**

20        82.    California non-judicial foreclosure law requires that the trustee of the beneficiary

21   or their authorized agents follow certain procedures in order to enforce a power of sale clause in a

22   deed of trust. See CC §2924(a) (permitting a "trustee, mortgagee, beneficiary, or authorized agent"

23   to initiate non-judicial foreclosure proceedings pursuant to the power of sale contained in the deed

24   of trust.) A foreclosing party must strictly comply with the statutory requirements, otherwise, the

25   sale is invalid.

26        83.    In California, the deed of trust follows the note. Hence, an assignment or transfer

27   of the note carries with it the deed of trust. See CC §2936. As such, in California, a deed of trust

28   can only be non-judicially foreclosed by the owner of the note, as a matter of law. [iv]

84.     Plaintiffs allege that MERS could not, and did not assign the Note securing the DOT to Defendants BONY or TRUST 2007-OH2.

85.     Plaintiffs further allege that Defendant BONY as Trustee for Defendant TRUST 2007-OH2 was not legally assigned the Note and/or DOT, and neither it nor Defendants BOFA or RECON had legal authority to exercise the power of sale under CC §§2924, et seq.

86.     Plaintiffs allege that any assignment naming Defendant BONY as Trustee for Defendant TRUST 2007-OH2 as the owner of Plaintiffs' Loan is in violation of the California non-judicial foreclosure laws and the California Homeowners Bill of Rights ("HBOR").

87.     Plaintiffs allege that Defendant RECON, the Trustee foreclosing on the Plaintiffs' Home, has initiated a non-judicial foreclosure without any authority whatsoever. The NOD is void since Defendant RECON recorded the instrument without being Defendants BONY's and TRUST 2007-OH2's "trustee, mortgagee, beneficiary, or authorized agent. Plaintiff alleges that DAVIDSON signed the NOD although he had no agency authority from Defendants BONY or TRUST 2007-OH2, which is required under CC §2924(a).

88.     Plaintiffs allege that the actions of Defendant RECON, the Trustee that initiated a non-judicial foreclosure on the Plaintiffs' Home were without any authority whatsoever. Therefore, NOTS1 and NOTS2 are void since Defendant RECON recorded the instruments without being Defendant BONY's "trustee, mortgagee, beneficiary, or authorized agent". Plaintiffs allege that Defendant RECON's employees signed NOTS1 and NOTS2 as Assistant Vice Presidents, although they had no agency authority from Defendants BONY or TRUST 2007-OH2, which is required under CC §2924(a).

89.     The title to Plaintiffs' Home is about to be stolen from them and they are entitled to have that title restored or recover damages according to proof.

90.     The conduct of Defendants BONY, TRUST 2007-OH2, BOFA and RECON and one or more of the DOE Defendants have led to the imminent loss of Plaintiffs' Home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of removing the cloud from the title, attorneys' fees and costs, in an amount to be proven at trial.

91.     The conduct of Defendants BONY, TRUST 2007-OH2, BOFA and RECON and

1   one or more of the DOE Defendants' conduct was malicious because said Defendants knew the

2   identity of the current and true beneficiary of Plaintiffs' Note and DOT, yet still wrongfully

3   recorded the fabricated documents so as to illegally non-judicially foreclose, slander the Plaintiffs'

4   credit and title to the Plaintiffs' Home, and make said title unmarketable.

5          92.     The title to Plaintiffs' Home has been rendered unmarketable and unsalable

6   because of the possibility of multiple claims being made against it. If the ADOT, NOD, NOTS1

7   and NOTS2 are not cancelled, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the

8   opportunity to identify the true and current creditor and exercise their statutory right to cure any

9   alleged default.

10         93.     Plaintiffs allege that any amount allegedly owed under the Note is subject to

11   equitable offset by the damages owed to Plaintiffs from the Defendants and others yet to be

12   determined.

13         94.     Plaintiffs allege that due to improper procedures conducted by Defendants BONY,

14   TRUST 2007-OH2, BOFA and RECON and one or more of the DOE Defendants, the true owner of

15   the Note and DOT is certainly not any of these Defendants.

16         95.     Plaintiffs do not allege that Defendants BONY, TRUST 2007-OH2, BOFA and

17   RECON and one or more of the DOE Defendants must be in "physical possession" or "hold"

18   Plaintiffs' Note to non-judicially foreclose on the Plaintiffs' Home - a requirement that has been

19   rejected in California. ᵛ Rather, Plaintiffs allege that prior to demanding mortgage payments from

20   Plaintiffs and recording the NOD, none of the Defendants BONY, TRUST 2007-OH2, BOFA and

21   RECON and one or more of the DOE Defendants had, nor presently have, a secured or unsecured,

22   legal or equitable interest in Plaintiffs' Note and/or DOT as required under California law,

23   irrespective of who is actually in physical possession of Plaintiffs' Note.

24         96.     Plaintiffs allege that Defendants BONY, TRUST 2007-OH2, BOFA and RECON

25   are enforcing a debt obligation in which they have no pecuniary, equitable or legal interest.

26   Defendants BONY, TRUST 2007-OH2, BOFA and RECON and one or more of the DOE

27   Defendants conduct is part of a fraudulent debt collection scheme.

28         97.     Given the competing allegations anticipated by the parties hereto regarding the

1   validity of the ADOT, should the Court deem the ADOT is invalid, Plaintiffs seek a declaratory

2   judgment to establish whether Defendants BONY, TRUST 2007-OH2, BOFA and RECON

3   obtained the Note and/or DOT by any other legal means, and the respective rights and obligations

4   of the parties under the Loan.

5           98.     Plaintiffs will suffer prejudice if the Court does not determine the rights and

6   obligations of the parties because: (1) they will be denied the right to conduct discovery and have

7   Defendants' claims verified by a custodian of records who has personal knowledge of the Loan and

8   all transactions related to it; and (2) they will be denied the opportunity to challenge the ADOT and

9   NOD; 3) they will face improper non-judicial foreclosure; 4) they will be denied the right to

10  peaceful use and enjoyment of this unique real property.

11          99.     Due to the actual case and controversy regarding competing claims and

12  allegations, it is necessary that the Court declare the actual rights and obligations of the parties and

13  make a determination as to (1) whether the ADOT is of any legal effect such that Defendants

14  BONY, TRUST 2007-OH2, BOFA and RECON had a right to initiate non-judicial foreclosure

15  proceedings on the Plaintiffs' Home; and (2) to the extent the Court finds the ADOT invalid,

16  whether Defendants BONY, TRUST 2007-OH2, BOFA and RECON obtained the Note and/or

17  DOT by any other legal means.

18                          **FIRST CAUSE OF ACTION**

19      **CANCELLATION OF INSTRUMENTS: CALIFORNIA CIVIL CODE § 3412**

20                  **[Against all Defendants, and Doe Defendants]**

21          100.    Plaintiffs hereby incorporate by reference each and every one of the preceding

22  paragraphs as if the same were fully set forth herein.

23          101.    Each of the written instruments described below in this cause of action was

24  recorded in El Dorado County, California. Plaintiffs' Home to which all of the written instruments

25  sought to be cancelled relates is situated in El Dorado County.

26          102.    Plaintiffs allege that the ADOT, SOT, NOD, NOTS1 and NOTS2 are all void for

27  the reasons stated herein.

28          103.    The written instruments sought to be cancelled in this cause of action should be

1  cancelled and Plaintiffs are entitled to attorney's fees. If the written instruments are not canceled

2  Plaintiffs will be deprived of title and possession of their Home, and title to their Home will have

3  been stolen from them.

4  ## SECOND CAUSE OF ACTION

5  ## VIOLATION OF CALIFORNIA THE HOMEOWNERS BILL OF RIGHTS

6  ### (Defendants BONY, TRUST 2007-OH2, BOFA and RECON)

7  104.  Plaintiffs hereby incorporate by reference each and every one of the preceding

8  paragraphs as if the same were fully set forth herein.

9  105.  Governor Jerry Brown signed the HBOR into law to bring fairness, accountability

10  and transparency to the state's mortgage and non-judicial foreclosure process. CC § 2923.4 sets

11  forth the legislative purpose underlying the HBOR: to ensure that, as part of the non-judicial

12  foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain,

13  available loss mitigation options such as loan modifications or other alternatives to non-judicial

14  foreclosure.

15  106.  CC§ 2924(a)(6) provides that "no entity shall record or cause a NOD to be

16  recorded or otherwise initiate the non-judicial foreclosure process" unless it is a) the holder of the

17  beneficial interest under the mortgage or DOT, b) the original trustee under DOT c) the designated

18  agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under

19  mortgage or DOT, original trustee or substitution of trustee under the DOT may record a NOD or

20  otherwise commence the non-judicial foreclosure process except when acting within the scope of

21  authority designated by the holder of the beneficial interest.

22  107.  Plaintiffs allege that BANK Defendants, and each of them, are in violation of CC §

23  2924(a)(6), as the true holder of the beneficial interest in Plaintiffs' Loan did not commence the

24  non-judicial foreclosure.

25  ## THIRD CAUSE OF ACTION

26  ## VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200, ET SEQ

27  ### [Against DEFENDANTS BONY, TRUST 2007-OH2, RECON, BOFA and Doe Defendants]

28  108.  Plaintiffs hereby incorporate by reference each and every one of the preceding

1  paragraphs as if the same were fully set forth herein.

2         109.   Plaintiffs allege Defendants misrepresented material information by causing an

3  ADOT to be recorded on June 24, 2011, containing unauthorized signatures.

4         110.   Plaintiffs allege that the Defendants, and each of them, had knowledge of such

5  falsity, as the signatory on the ADOT was an employee of Defendant BOFA, which served as the

6  agent for the remaining Defendants for purposes of executing a non-judicial foreclosure of

7  Plaintiffs' Home.

8         111.   Plaintiffs allege that Defendants further misrepresented to the public at large by

9  using their power to make attempts to transfer Plaintiffs' DOT after the closing date of the PSA,

10  thereby providing false information to the public and financially interested parties, that the

11  Plaintiffs' Home was properly transferred thereby allowing Defendants, and each of them, to

12  attempt to non-judicially foreclose.

13         112.   Plaintiffs allege that Defendants' acts and practices are likely to deceive,

14  constituting a fraudulent business act or practice. This conduct is ongoing and continues to this

15  date.

16         113.   Specifically, as fully set forth above, Defendants engage in deceptive business

17  practices with respect to the initiation of non-judicial foreclosure proceedings by utilizing falsified

18  documents and recording those documents in an effort to deceive the public at large as to the

19  validity of such documents. In addition, Defendants engaged and continue to engage in deceptive

20  practices by:

21         a.      Instituting improper or premature non-judicial foreclosure proceedings to

22                 generate unwarranted fees;

23         b.      Executing and recording false and misleading documents;

24         c.      Executing and recording documents without the legal authority to do so;

25         d.      Failing to disclose the principal for which documents were being executed

26                 and recorded in violation of CC § 1095;

27         e.      Acting as beneficiaries and trustees without the legal authority to do so;

28         f.      Keeping false and erroneous records of payments made by Plaintiffs;

g.        Keeping false and erroneous records of charges to Plaintiffs; and

h.        Other deceptive business practices.

114.   Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions ("B&P") Code §§ 17200, et seq.

115.   Plaintiffs allege that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

116.   The foregoing acts and practices have caused substantial harm to California consumers.

117.   Plaintiffs allege that the Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded into having their Home improperly sold at non-judicial foreclosure. Plaintiffs and other members of the general public have no other adequate remedy of law.

118.   Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

119.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of B&P Code §§17200, et seq.

120.   B&P Code §§17200, et seq., prohibit acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

121.   Defendants have violated California Penal Code §115 and §532(f)(a)(4) by filing or causing the ADOT to be filed with the El Dorado County Recorder in connection with Plaintiffs' Loan transaction with knowledge that the ADOT contained deliberate misstatements and

1  misrepresentations, including, inter alia, that Defendants BONY and TRUST 2007-OH2 had been

2  assigned Plaintiffs' Note and DOT.

3      122.   Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful non-

4  judicial foreclosure proceedings.

5      123.   Defendants BONY, TRUST 2007-OH2 and BOFA have been acting in a manner

6  to mislead Plaintiffs into believing that they had been assigned an interest in the Loan, and as such

7  had the authority to initiate non-judicial foreclosure proceedings on Plaintiffs' Home.

8      124.   The conduct described above by Defendants BONY, TRUST 2007-OH2 and

9  BOFA was malicious because they knew that the Note and DOT were not properly assigned.

10 However, despite such knowledge, Defendants BONY, TRUST 2007-OH2, RECON and BOFA

11 continue to move forward with a non-judicial foreclosure action on Plaintiffs' Home, and engaged

12 in other unlawful non-judicial foreclosure practices. Moreover, on information and belief, said

13 Defendants have developed a practice of recording false assignments of deeds of trust in order to

14 initiate non-judicial foreclosure proceedings on California consumers.

15     125.   As more fully described above, Defendants' acts and practices are unlawful. This

16 conduct is ongoing and continues to this date.

17     126.   As more fully described above, Defendants' acts and practices are likely to deceive

18 members of the public. This conduct is ongoing and continues to this date.

19     127.   As more fully described above, Defendants' acts and practices are unfair and the

20 harm caused by their conduct outweighs any benefit that their conduct may have. This conduct is

21 ongoing and continues to this date.

22     128.   Plaintiffs allege that Defendants' misconduct as alleged herein, gave them an

23 unfair competitive advantage over their competitors. The scheme implemented by Defendants is

24 designed to defraud California consumers and enrich Defendants.

25     129.   The foregoing acts and practices have caused substantial harm to California

26 homeowners, including Plaintiffs.

27     130.   Plaintiffs allege that they are aware of the existence of a Foreclosure Transmittal

28 Package originated by one of the parties hereto and distributed to, inter alia, the other parties hereto.

1   Plaintiffs further allege that the information contained in this Foreclosure Transmittal Package

2   includes the names of parties as yet unknown to Plaintiffs and who, if known, would be named as

3   parties to this complaint.

4       131.   Plaintiffs allege that this Foreclosure Transmittal Package contains information

5   verifying the allegations of this complain, that the Defendants do not own the subject loan, do not

6   have the right to non-judicially foreclose on Plaintiffs' Home and that Defendants will either deny

7   the existence of such information or oppose every effort by Plaintiffs to obtain this information.

8       132.   Plaintiffs allege that they are aware of the existence of a Log Book originated by

9   one of the parties hereto and distributed among, inter alia, the other parties hereto. Plaintiffs further

10   allege that the information contained in this Log Book includes the names of parties as yet

11   unknown to Plaintiffs and who, if known, would be named as parties to this complaint.

12       133.   Plaintiffs allege that this Log Book contains information verifying the allegations

13   of this complaint, that the Defendants do not own the subject loan, do not have the right to non-

14   judicially foreclose on the subject property and that Defendants will either deny the existence of

15   such information or oppose every effort by Plaintiffs to obtain this information.

16       134.   Plaintiffs intend to propound discovery to obtain copies of the Foreclosure

17   Transmittal Package and Log Book to obtain further proof of Defendants' violations

18       135.   As a direct and proximate result of the actions of Defendants, and each of them,

19   stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs'

20   Home and Defendants have failed to remove this cloud from Plaintiffs' title.

21       136.   Moreover, Plaintiffs have been deprived of the ability to negotiate a loan

22   modification with the true holder of their loan.

23       137.   As a direct and proximate result of Defendants' violations of B&P Code §§17200

24   and other related sections, Plaintiffs have been damaged in the following ways: (1) the title to their

25   Home is threatened to be stolen from them; (2) they are unable to determine whether they sent their

26   monthly loan payments to the right party; and (3) they have expended significant funds to cover the

27   cost of attorneys' fees and related costs.

28       138.   Plaintiffs allege that by engaging in the above described acts and/or practices as

1    alleged herein, Defendants violated several laws including B&P Code §§17200, et seq. and must

2    pay restitution related to their unfair, unlawful, and deceptive business practices.

3        139.   Plaintiffs are therefore entitled to attorney's fees as available B&P Code §§ 17200

4    and related sections. These acts and practices, as described in the previous paragraphs, are unfair

5    and violate B&P Code §§ 17200 et seq because their policies and practices described above violate

6    all statutes previously listed and consequently, constitute and unlawful business act of practice

7    within the meaning of B&P Code §§ 17200 et seq.

8                     **FOURTH CAUSE OF ACTION**

9                      **WRONGFUL FORECLOSURE**

10   **(Against Defendants BONY, TRUST 2007-OH2, BOFA and RECON and all Doe Defendants)**

11        140.   Plaintiffs hereby incorporate by reference each and every one of the preceding

12    paragraphs as if the same were fully set forth herein.

13        141.   Defendants BONY, TRUST 2007-OH2, BOFA and RECON were the purported

14    foreclosing parties upon Plaintiffs' Home. Defendants BONY, TRUST 2007-OH2, BOFA and

15    RECON were the entities that exercised the power of sale within the DOT.

16        142.   As set forth above, since the purported status of Defendants BONY and TRUST

17    2007-OH2 as beneficiary is *void ab initio*, Defendants BONY, TRUST 2007-OH2, BOFA and

18    RECON and/or other defendants did not have the authority to exercise the power of sale within the

19    DOT, and Defendants BONY, TRUST 2007-OH2, BOFA and RECON could not initiate non-

20    judicial foreclosure based upon any alleged defaults known or believed to exist.

21        143.   Defendants BONY, TRUST 2007-OH2, BOFA and RECON initiated non-judicial

22    foreclosure without privilege and with malice, as said Defendants knew that they had no interest in

23    the Note and DOT. As stated, Defendant RECON was not the properly named trustee under the

24    DOT, and Defendants BOFA and REON had no pecuniary interest in the Note and DOT and none

25    of the Defendants were beneficiaries of the Note and DOT. Therefore, despite the fact that said

26    Defendants knew they had no standing to proceed with a non-judicial foreclosure, they proceeded

27    to initiate a non-judicial foreclosure sale.

28        144.   Defendants falsely represented to Plaintiffs that if they did not pay, Plaintiffs'

1   Home would be sold at a public auction. Such actions were malicious and fraudulent. In fact, if any

2   sale does take place, it would be void, for the reasons stated herein.

3       145.   Plaintiffs allege said NOD, NOTS1 and NOTS2 were false, void, and without

4   privilege, for the reasons stated and discussed herein.

5       146.   At no point in time did the purported original beneficiary of the DOT, properly

6   endorse, assign, sell, transfer or in any way convey any perfected security interest in Plaintiffs'

7   Home to any of the Defendants herein.

8       147.   As set forth above, at the time Defendants BONY, TRUST 2007-OH2, BOFA and

9   RECON commenced non-judicial foreclosure proceedings, they had no legal or equitable interest in

10  the Note and DOT, and thus no amount was owed from Plaintiffs to Defendants BONY, TRUST

11  2007-OH2, BOFA and RECON or any other purported beneficiary of the Note and DOT.

12      148.   In addition to Defendants BONY, TRUST 2007-OH2, BOFA and RECON never

13  having the legal authority to non-judicially foreclose, the non-judicial foreclosure proceedings are

14  void and cancelled as set forth above due to the security interest in the DOT being nullified by the

15  actions of MERS.

16      149.   Plaintiffs further allege that any amount allegedly owing under the Note and DOT

17  is offset by the damages owed to them from all Defendants or any of the Doe Defendants in this.

18      150.   Even where the general rule is that a tender or return of the consideration be made,

19  it has been recognized that the rule is not inflexible and that there are exceptions thereto.[vi] The

20  tender-or-return of consideration requirement may not be imposed where it would be inequitable to

21  do so or where the underlying action is for money damages against which the value of the

22  consideration could be set off against a recovery. A Court may also find strict application of the

23  tender rule inequitable, in its sound discretion, to enforce even legally protected rights where the

24  effect would be prejudicial or contrary to public policy.[vii]

25      151.   Accordingly, Plaintiffs hereby request this Court for an order holding that any

26  non-judicial foreclosure sale of Plaintiffs' Home would be legally void and conducted without any

27  right or privilege by Defendants BONY, TRUST 2007-OH2, BOFA and RECON or any of the Doe

28  Defendants in this matter.

152.   Plaintiffs allege that CC§ 2924.19(g) applies in this case:

"(g)    The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law."

## FIFTH CAUSE OF ACTION

## QUIET TITLE

### (Against all DEFENDANTS & DOES 1-100, Inclusive)

153.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

154.   Plaintiffs allege that at all relevant times mentioned in this complaint, Defendants, and each of them, claim an interest in the Plaintiffs' Home as follows: that they are the title and/or fee simple owner(s) of the Plaintiffs' Home, and/or that each of the Defendants claims to have perfected a beneficial interest, security interest or other legal claim in the Plaintiffs' Home. Some of the unknown Doe Defendants may also claim an interest or interests in the Plaintiffs' Home adverse to Plaintiffs as assignees, successors or otherwise.

155.   Assignments of real property within California must be recorded; otherwise there is no uniform method that would operate to provide constructive notice of the transfer. (CC § 2934).

156.   "Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee". [viii] California law requires that a promissory note be unambiguously endorsed and physically delivered to the intended assignee. [ix] "Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance [pursuant to CCP § 3440] or as unperfected [under California Commercial Code §§ 9313-9314]."[x] Actual ownership and physical possession is a condition of enforcement of a note. [xi]

157.   An assignment by endorsement and delivery of the note alone may accomplish a transfer of the security, but is insufficient in that it is without the necessity of a formal assignment of the DOT itself, [xii] and the DOT securing a note is a mere incident of the debt secured thereby, but an incident with no independent, separate, or separable ascertainable market value. [xiii]

1        158.   Assignment of a mortgage [DOT] without a transfer of the indebtedness confers no

2    right, since debt and security are inseparable and the mortgage alone is not a subject of transfer. [xiv]

3    A mortgagee's purported assignment of the mortgage [DOT] without a joint simultaneous transfer

4    of the debt [promissory note] that is secured is a legal nullity. [xv] A DOT possesses no assignable

5    quality independent of the debt; it may be neither assigned nor transferred apart from the debt, and

6    any attempt to assign the DOT without a transfer of the debt is without legal effect. [xvi]

7        159.   "The note and the mortgage are inseparable; the former as essential, the latter as an

8    incident. An assignment of the note carries the mortgage with it, while an assignment of the latter

9    alone is a nullity."[xvii] A DOT is inseparable from the debt and always abides with the debt; alone it

10    is worthless.[xviii] A DOT possesses no assignable quality independent of the debt; it may be neither

11    assigned nor transferred apart from the debt, and any attempt to assign the trust deed without a

12    transfer of the debt is without legal effect. [xix]

13        160.   California statutory law has been designed to protect borrower's rights in the non-

14    judicial foreclosure context by requiring the recording of any assignment of mortgage to assignee in

15    order for assignee to foreclose non-judicially. The law is not limited in scope only to assignees of

16    mortgage interests, but also applies to successors and assignees under deeds of trust to mandate the

17    recording of any such transfer of interest in order for the event to meet the legal validity necessary

18    to permit non-judicial foreclosure. (CC § 2932.5).

19        161.   The non-judicial foreclosure "process was created long before things such as the

20    secondary market and mortgage brokers existed. When laws were first enacted, lenders 'originated-

21    to-hold' loans for their portfolio and rarely sold mortgage loans." [xx] Under the modern scheme,

22    these requirements, by and large, have become the subject of [unlawful] neglect or deliberate

23    [unlawful] omission.

24        162.   A paramount requirement under long-standing traditional principles of property

25    law requires that the DOT "follow the Note." There was virtually no exception. In fact, once the

26    original Note and original DOT were physically separated, their mutually dependent existence was

27    terminated and the DOT became a nullity. Such consequence may appear archaic, but this corollary

28    has served an important function since its inception: protection of the parties. This deep-seated

1  imperative remains sound law today. California law intends the same effect.[xxi] A purported

2  transferee of a Note does not acquire status as "holder" of that Note where the rights were

3  transferred by separate instrument without valid endorsement or negotiation of the subject note. [xxii]

4          163.   Plaintiffs seek to quiet title against the claims of Defendants BONY, TRUST

5  2007-OH2, BOFA, RECON and anyone else claiming an interest in the Plaintiffs' Home.

6  Defendants BONY, TRUST 2007-OH2, BOFA, RECON and any successors or assignees have no

7  right to title or interest in the Plaintiffs' Home and no right to entertain any rights of ownership

8  including rights of possession.

9          164.   Plaintiffs seek to quiet title as of November 14, 2013, on or about the date this

10  complaint is filed with the court. A copy of Plaintiffs' Deed is attached hereto as Exhibit "13" and

11  incorporated herein by this reference. As alleged above, Plaintiffs contend that any non-judicial

12  Trustee's Sale hereafter conducted would be *void ab initio*, as a result of the failure to timely place

13  the loan for Plaintiffs' Home into Defendant TRUST 2007-OH2. [xxiii]

14          165.   Plaintiffs further contend that the parties whose signatures appear on the NOD,

15  ADOT, SOT, NOTS1 and NOTS2 were not authorized to sign on behalf of any of the Defendants

16  herein.

17          166.   Plaintiffs seek a judicial declaration that the title to Plaintiffs' Home is vested in

18  Plaintiffs alone, that Defendants and each of them be declared to have no interest estate, right, title

19  or interest in the Plaintiffs' Home and that Defendants, their agents and assigns, be forever enjoined

20  from asserting any estate, right title or interest in Plaintiffs' Home.

21          167.   Accordingly, the Court should rule that Plaintiffs' Home remains Plaintiffs' Home

22  and award consequential damages as proven at trial, but not less than $1,000,000.00.

23          Wherefore, Plaintiffs pray for judgment against the Defendants, and each of them, jointly

24  and severally, as follows:

25      1.  For an order compelling Defendants BONY as Trustee for Defendant TRUST 2007-OH2

26          and RECON to remove any instrument, including the ADOT, SOT, NOD, NOTS1 and

27          NOTS2 which does or could be construed as constituting a cloud upon Plaintiffs' title to

28          their Home;

2. For a declaratory judgment determining the rights and obligations of the parties as to Plaintiffs' Home, the Note, DOT, or any other matter based on contract or any of the documents prepared in relation to Plaintiffs' Home;

3. For a court finding that Defendants BONY, TRUST 2007-OH2, BOFA and RECON, acting prior to the institution of non-judicial foreclosure proceedings on Plaintiffs' Home, violated California statutes regarding non-judicial foreclosure procedures, and that these acts were done fraudulently;

4. For the Court to issue an order restraining all Defendants, their agents, or employees from continuing or initiating any action against Plaintiffs' Home and enjoining all Defendants, their agents, or employees from doing so during the pendency of this matter;

5. For a declaration that Plaintiffs are the true and rightful owners of Plaintiffs' Home;

6. For issuance of an Order canceling the NOD, ASOT, NOTS1 and NOTS2;

7. For issuance of an Order quieting title in favor of Plaintiffs and against Defendants;

8. For compensatory, special and general damages in an amount according to proof at trial, but not less than $1,000,000.00, against all Defendants;

9. For punitive damages in an amount to be determined by the Court against all Defendants;

10. Pursuant to B&P Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of B&P §§ 17200 et seq, including, but not limited to, the violations alleged herein;

11. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof;

12. For reasonable attorney's fees and costs;

13. For reasonable costs of suit and such other and further relief as the Court deems proper.

Date: November 14, 2013

By: *Linda Z. Voss, Esq.*
Linda Z. Voss, Esq.,
Attorney for Plaintiffs
Deborah and James Ray

DEMAND FOR JURY TRIAL

Plaintiffs James and Deborah Ray hereby demand a trial by jury on all claims.

Date: November 14, 2013            By: *Linda Z. Voss, Esq.*
                                        Linda Z. Voss, Esq.,
                                        Attorney for Plaintiffs
                                        Deborah and James Ray

---

ENDNOTES

[i] The statutory purpose is "to protect trust beneficiaries from unauthorized actions by the trustee." (Turano, Practice Commentaries, McKinney's Consolidated Laws of New York, Book 17B, EPTL § 7-2.4.)

[ii] *Glaski vs. Bank of America National Association, et al* (2013) 218 Cal. App. 4th 1079, 2013 WL 4037310, at WL *9

[iii] See *Glaski, supra.* At WL *9

[iv] See *Santens v. Los Angeles Fin. Co.*, 91 Cal. App. 2d 197, 201-202 (Cal. Ct. App. 1949) (resolving who had a superior interest in the property at issue-a judgment creditor who executed or the owner of the note and deed of trust and deciding in favor of the owner of the note and deed of trust because he acquired his rights before the judgment creditor. See also *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954) (approving the holding in *Santens* that the deed of trust can only be non-judicially foreclosed by the owner of the note)

[v] *Chilton Federal Nat, Mortgage Assn.*, 2009 WL 5197869 (E.D. Cal.) (holding that possession of the original note is not a requirement for initiating foreclosure). Plaintiff does not allege Defendants need to be in physical possession of the "original note" in order to initiate foreclosure, but rather that Defendants must demonstrate that they own the subject loan in order to collect payments and foreclose whether by presenting the original note or a copy of the original.

[vi] Id., citing *Carruth v. Fritch* (1950) 36 Cal. 2d 426, 224 P. 2d 702, 24 A.L.R. 2d 1403.

[vii] *Burford v. Sun Oil Co.* (1943) 319 U.S. 315, 320, 63 S. Ct. 1098, 87 L. Ed. 1424 (there is no question of the constitutional power of the State to take appropriate action to protect the industry and protect the public interest); citing; *Ohio Oil Co. v. Indiana*, 177 U.S. 190, 20 S. Ct. 576, 44 L. Ed. 729; *Champlin Refining Co. v. Corporation Commission*, 286 U.S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A.L.R. 403

[viii] *Bear v. Golden Plan of California, Inc.* (9th Cir. 1986), 829 F. 2d 705, 709

[ix] California Commercial Code § 3203(a) & 3203(b)

[x] See also *In re Walker*, (Bankr. E.D. Cal. 2010) Case No.: 10-21656-E-11

[xi] California Commercial Code §§ 1201(b), 3-104(a), 3-109, 3-109(b), 3-201(a), 3-201(b), 3-205(a), 3-205(c), 3301, 3601(b), 3602(a), and 9313.

[xii]   CC §§ 2936, 1084;
Also *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal. 2$^d$ 284, 291, 267 P. 2$^d$ 16; *Lewis v. Booth* (1935) 3 Cal. 2$^d$ 345, 349, 44 P. 2$^d$ 560; *Union Supply Co. v. Morris* (1934) 220 Cal. 331, 338, 30 P. 2$^d$ 394; *Treat v. Burns* (1932) 216 Cal. 216, 217, 13 P. 2$^d$ 724; *Seidell v. Tuxedo Land Co.* (1932) 216 Cal. 165, 170, 13 P. 2$^d$ 686; *Pitman v. Walker* (1922) 187 Cal. 667, 668-669, 203 P. 739; *Savings & Loan Soc. V. McKoon* (1898) 120 Cal. 177; 179, 52 P. 305; *Adler v. Sargent* (1895) 109 Cal. 42, 48, 41 P. 799; *Domarad v. Fisher & Burke, Inc.* (1st Dist. 1969) 270 Cal. App. 2$^d$ 543, 553.

[xiii]  CC § 657; See also *Kirby v. Palos Verdes Escrow Company* (1986) 183 Cal. App. 3$^d$ 57, 62, 227 Cal. Rptr. 785

[xiv]  *Hyde v. Mangan* (1891) 88 Cal. 319, 26 P. 180; *Johnson v. Razy* (1919) 181 Cal. 342, 184 P. 657; *Treat v. Burns* (1932) 216 Cal. 216, 13 P. 2$^d$ 724

[xv]   *Kelley v. Upshaw* (1952) 39 Cal. 2$^d$ 179, 246 P. 2$^d$ 23

[xvi]  *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2$^d$ 543, 76 Cal. Rptr. 529

[xvii]  Civil Minute Order, *In Re Walker;* Citing *Carpenter v. Longan,* (1872) 83 U.S. 271, 274; accord *Henley v. Hotaling,* (1871) 41 Cal. 22, 28; *Seidell v. Tuxedo Land Co.,* (1932) 216 Cal. 165, 170; See also CC § 2936.

[xviii]  *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2$^d$ 543, 76 Cal. Rptr. 529; *Buck v. Superior Court* (1965) 232 Cal. App. 2$^d$ 153, 158, 42 Cal. Rptr. 527; *Nagle v. Macy* (1858) 9 Cal. 426, 428. 1858 WL (Cal) 818; *Hyde v. Mangan, supra; Polhemus v. Trainer* (1866) 30 Cal. 685, 688, 1866 WL (Cal) 831.

[xix]  *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2$^d$ 543, 76 Cal. Rptr. 529

[xx]   Ting, P., Office of the Assessor-Recorder, San Francisco, Cal. (Feb. 2012) *Foreclosure in California: A Crisis of Compliance,* p. 3; Data compiled and independently analyzed by Aequitas Compliance Solutions, Inc., 422 31st Street, Newport Beach, California 92663; Available electronically at: http://aequitasaudit.com/images/aequitas_sf_report.pdf

[xxi]  *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2$^d$ 543, 76 Cal. Rptr. 529; *Kelley v. Upshaw* (1952) 39 Cal. 2 179, 246 P. 2$^d$ 23; *Treat v. Burns* (1932) 216 Cal. 216, 13 P. 2$^d$ 724; *Johnson v. Razy* (1919) 181 Cal. 342, 184 P. 657; *Hyde v. Mangan* (1891) 88 Cal. 319, 26 P. 180.

[xxii]  *Security Pacific National Bank v. Chess* (1976) 58 Cal. App. 3$^d$ 555

[xxiii]  See *Glaski,* supra, at WL *11

**EXHIBIT B**

1  LAW OFFICES OF MAZEN SALFITI
2  Mazen Salfiti, Esq. SBN 231695
   1900 South Norfolk Street, Suite 350
3  San Mateo, CA 94403-1511
   Phone: 415-407-1481
4  Fax: (415) 520-0294
   Email: mazenesq@gmail.com
5
6  Attorney for Plaintiffs,
   Deborah and James Ray
7

8          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF El DORADO
                          Case No. PC 20130578
10  DEBORAH ANN RAY and JAMES WILFRED
11  RAY, individuals,                          SECOND AMENDED COMPLAINT FOR:

12  Plaintiffs,                                   1.  CANCELLATION OF INSTRUMENTS;
                                                       CALIFORNIA CIVIL CODE §3412
13          vs.
                                                  2.  VIOLATION OF THE CALIFORNIA
14                                                     HOMEOWNERS BILL OF RIGHTS
    SELECT PORTFOLIO SERVICING, INC, in its
15  capacity as servicer; BANK OF AMERICA,        3.  VIOLATION OF CALIFORNIA
    N.A., a business entity unknown; THE BANK         BUSINESS & PROFESSIONS CODE
16  OF NEW YORK MELLON FKA THE BANK                   §17200, ET SEQ
    OF NEW YORK, individually and AS TRUSTEE
17  FOR THE CERTIFICATEHOLDERS OF              4.  WRONGFUL FORECLOSURE
18  CWALT, INC., ALTERNATIVE LOAN TRUST
    2007-OH2, MORTGAGE PASS-THROUGH          5.  QUIET TITLE
19  CERTIFICATE, SERIES 2007-OH2, a business
    entity unknown; RECONTRUST COMPANY,     DEMAND FOR JURY TRIAL
20  N.A, a business entity unknown; ALL PERSONS
21  UNKNOWN, CLAIMING ANY LEGAL OR
    EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR
22  INTEREST IN THE PROPERTY DESCRIBED IN
    THE COMPLAINT ADVERSE TO PLAINTIFFS'
23  TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE   Original Complaint Filed: 11/15/2013
24  THERETO and, DOES, 1 through 100, Inclusive,

25  Defendants.
26  ────────────────────────────────
27
28

                        SECOND AMENDED COMPLAINT
                              Page 1 of 40

**COMPLAINT**

1
2   Come now Plaintiffs, DEBORAH AND JAMES RAY, ("Plaintiffs"), by and through their
3 counsel, for their Second Amended Complaint ("SAC") against: Defendant SELECT PORTFOLIO
4 SERVICING, INC, (hereafter "SPS"), a business entity unknown, in its capacity as servicer for
5 Defendant BANK OF AMERICA, N.A (hereafter "BOFA") a business entity unknown; Defendant THE
6 BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK (hereafter "BONY"),
7 individually and AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC.,
8 ALTERNATIVE LOAN TRUST 2007-OH2, MORTGAGE PASS-THROUGH CERTIFICATES,
9 SERIES 2007-OH2 (hereafter Defendant TRUST 2007-OH2) , a business entity unknown;
10 RECONTRUST COMPANY, N.A, (hereafter RECON)  a business entity unknown; all collectively
11 sometimes referred to as BANK Defendants, who plead as follows:
12   1.  Plaintiffs allege there are major defects in the foreclosure instruments filed with the El
13 Dorado County Recorder's Office. Specifically, the Assignment of Deed of Trust ("ADOT") was one
14 recorded on June 24, 2011 that purports to vest an interest in Plaintiffs' Home to Defendants BONY and
15 TRUST 2007-OH2, is invalid and has no legal force or effect.
16   2.  Defendant BONY engaged in unlawful or fraudulent conduct by filing or causing the
17 ADOT to be filed with knowledge that the ADOT contained deliberate misstatements and
18 misrepresentations, including that Defendant BONY had been assigned Plaintiffs' Promissory Note
19 ("Note") and Deed of Trust ("DOT").
20   3.  Through this action, Plaintiffs seek cancellation of the ADOT as an invalid foreclosure
21 instrument, damages resulting from Defendants' unlawful conduct and a declaratory judgment
22 establishing the future rights and obligations of the parties.
23          **II. PARTIES**
24   4.  Plaintiffs are now, and at all times mentioned herein, were individuals residing in the
25 State of California in the County of El Dorado. At all times relevant to this action, Plaintiffs have owned
26 real property commonly known as 3190 Carlson Drive, Shingle Springs, CA 95682 ("Plaintiffs' Home")
27 and described as follows: A PORTION OF THE NORTHEAST ¼ OF SECTION 35, TOWNSHIP10
28 NORTH, RANGE 9 EAST, MDB&M., MORE PARTICULARLY DESCRIBED AS FOLLOWS:

1  PARCEL A, AS SHOWN ON THE PARCEL MAP FILED JUNE 23, 1977 IN BOOK 15 OF PARCEL

2  MAPS AT PAGE 147.

3      5.    Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

4  Defendant RECON was and is a corporation retained to enforce the faulty Loan and associated security

5  interest, by conducting its non-judicial foreclosure proceedings.

6      6.    Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

7  Defendant BOFA, was the previous loan servicer for the mortgage referenced throughout this Complaint

8      7.    Plaintiffs are informed and believe and thereon allege that at all times mentioned herein,

9  Defendant SPS, is the loan servicer as of February 16, 2014 for the mortgage referenced throughout this

10  FAC.

11      8.    Plaintiffs are informed and believe and based thereon allege that Defendant SPS is

12  authorized to do business in the State of California, including in El Dorado County. Plaintiffs further

13  allege that Defendant SPS claims to be the named assuming non-bank for Defendant TRUST 2007-OH2.

14      9.    Plaintiffs allege that at all times mentioned herein, Defendant TRUST 2007-OH2 was and

15  is the trust into which Plaintiffs' Home was securitized.

16      10.   Plaintiffs are ignorant of the true identities and capacities of Defendants designated as

17  Does 1 - 100, but will amend the Complaint when their identities have been ascertained according to

18  proof within the time permitted. However, Plaintiffs allege on information and belief, that each and

19  every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants

20  and were, and are responsible for the injuries, damages, and harm incurred by Plaintiffs. Plaintiffs

21  further allege on information and belief that each such designated Defendant acted, and acts, as the

22  authorized agent, representative, and associate of the other Defendants in doing the things alleged

23  herein.

24                          **III. FACTUAL ALLEGATIONS**

25      11.   On or around May 18, 2007, Plaintiffs met with an Agent of American Financing

26  Corporation and executed a promissory note ("Note") in the amount of $670,000 in favor of American

27  Finance Corporation. The Note is secured by a deed of trust ("DOT") (Note and DOT collectively, the

28  "Loan") for the finance of Plaintiffs' Home. See Exhibit "1", attached hereto and incorporated herein by

1    this reference a true and correct copy of the DOT.

2        12.    The DOT named Plaintiffs as the "borrowers," identified Fidelity National Title

3    Company, a California Corporation as "trustee," American Financing Corporation, as "lender" and

4    MERS as both "nominee" and "beneficiary." America's Wholesale Lender is a fictitious business name

5    owned by Countrywide Home Loans.

6        13.    At the time Plaintiffs signed the closing documents, including the Note and DOT, the

7    Payment Letter to Borrower reflected a monthly payment of $3,056.63. After signing the loan

8    documents presented to them at their home, the notary took the original signed mortgage paperwork

9    with him and did not leave a set of the signed documents, which would have included a 3 day right of

10    rescission. The notary assured Plaintiffs they would receive signed copies by mail in a few days.

11        14.    The Payment Letter to Borrower indicated that the monthly payments for the above

12    referenced loan would begin on July 1, 2007 and would continue monthly until June 1, 2037. This letter

13    further stated: "*Your monthly payment will consist of the following: Principal and Interest: $2,518.54,*

14    *Taxes: $433.26, Insurance: $104.83, Total: $3056.6.* See Exhibit "2a" attached hereto and incorporated

15    herein by this reference a true and correct copy of the Payment Letter to Borrower.

16        15.    Plaintiffs followed up for weeks with the agent from American Financing Corporation

17    asking for a copy of all the documents that they signed; approximately 8 weeks later they received their

18    documents. Upon review of the documents, the loan terms were different from what was stated in the

19    Payment Letter to Borrower. The documents reflected that they had not one but four payment options,

20    none of which were disclosed to Plaintiffs prior to signing the closing documents. The payment options

21    were as follows:

22            Option 1 – 30 Year Fully Amortized payment of $5,066.33

23            Option 2 – 15 year Fully Amortized payment of $6,684.31

24            Option 3 – Minimum payment of $3,056.27

25            Option 4 – Interest only payment of $4,515.92

26        16.    Plaintiffs allege that they were never informed at the time of signing their closing

27    documents regarding these payment options. When Plaintiffs signed the loan documents, the initial

28    monthly payment amount that appeared was the minimum payment amount. In other words, documents

1   provided to the Plaintiffs only reflected the minimum payment. Thus, Plaintiffs did not know the

2   monthly payment necessary to make a payment that would, for example, cover accruing interest, until

3   they received the first statement, well after all loan documents were signed. See Exhibit "2b" attached

4   hereto and incorporated herein by this reference a true and correct copy of their November 1, 2007

5   mortgage statement.

6         17.    This type of loan is known as a Hybrid-Option Arm. The Option Arm is a complicated

7   product usually offering an introductory fixed rate for a short time period but four payment options to

8   pay. Option 1 is a 30 year fixed rate fully amortized payment and Option 2 is a 15-year fixed rate fully

9   amortized payment. Option 3 is a "minimum" payment, the lowest of the payment options with the

10   minimum payment less than the monthly interest accruing on the loan. The unpaid interest is added to

11   the principal of the loan resulting in "negative amortization" or an increase in the balance of the loan

12   every month. Option 4 is an "interest only" payment, a payment that neither increases nor decreases the

13   balance on the loan. Plaintiffs' initial fixed interest rate was 7.125% for the first 5 years of the loan. This

14   introductory 7.125% fixed rate loan had a minimum monthly payment 5% below the introductory rate or

15   2.125%. The Agent of American Financing Corporation sold this minimum negative amortization loan

16   of 2.125%, with a monthly payment of $2,518.54, to Plaintiffs as a 30-year fixed payment loan.

17         18.    The Hybrid Option Arm loans were designed to extract equity from the homeowner each

18   month if they made the minimum payment. The Payment Letter to Borrower, part of the final loan

19   documents, did not indicate anywhere that the payment being reflected was anything less than a fully

20   amortized payment. Only Options 1 and 2 contained the fully amortized monthly loan payments of

21   $5,066.33, and $6,684.31, respectively, and these options were not included or disclosed to the borrower

22   in the Payment Letter to Borrower, or anywhere in the loan documents signed by Plaintiffs before the

23   notary. The payment difference between the 30 year fixed rate fully amortized monthly payment and the

24   minimum monthly payment, $2,010.00, was added to the balance of the loan each and every month

25   Plaintiffs made only a minimum payment.

26         19.    The option to make a minimum payment is only available up to the tenth year of the loan

27   or when the negative amortization of the interest exceeds the maximum amount allowed per the terms of

28   the loan, usually between 115% and 120% of the original loan amount. Once the loan balance reaches its

SECOND AMENDED COMPLAINT
Page 5 of 40

maximum negative equity position, the borrower is left with only three payment options; the interest only, the 30-year fixed or the 15-year fixed. At the tenth year, the loan *"recasts"* and the borrower is obligated to pay the full balance of the loan plus all negatively amortized interest over the remaining shortened term of the loan. An increased balance now payable monthly over a shorter mortgage period, usually 20 years, results in a fully amortized payment that is unfathomable.

20.     Most, if not all, homeowners offered these Hybrid Option Arm loans would not understand the terms without proper disclosures when signing the loan documents. The Payment Letter to Borrowers was correct but only for the first month of the loan and thereafter homeowners, including Plaintiffs, making that payment added a minimum of $2,000.00 to their existing loan balance every month. Nowhere in the Payment Letter to Borrowers were Plaintiffs advised that this payment was good for the first month only.

21.     Moreover, Plaintiffs never knew that there loan was a Hybrid Option Arm, believing that they were entering into a fixed rate fully amortized 30-year loan.

22.     Plaintiffs allege that these Hybrid Option Arm loans were masterminded to extract the maximum profit for the lender while deceiving homeowners, including Plaintiffs, resulting in an escalating loan balance, decreased equity in their property and borrowers ultimately defaulting on the terms of their loans.

23.     BANK Defendants knew the dangers these Hybrid Option Arm loans posed to borrowers, including Plaintiffs, in particular the near certainty that payment shock would lead to high borrower default rates and the risk that borrowers whose loans had negatively amortized would not be able to refinance.

24.     Upon receiving a copy of their loan documents from their Agent, Plaintiffs realized that the documents contained disclosures that were not provided to them at the time they signed their loan documents. Plaintiffs called and talked to the loan agent of American Financing Corporation and were told it was too late to rescind the loan. The next call they made was to the local Countrywide branch where they were directed to the legal department. Countrywide's legal department informed Plaintiffs that it was too late to rescind the loan.

25.     Adding insult to injury, Plaintiffs were not able to refinance out of this TOXIC Hybrid

1     Option Arm loan due to a three-year prepayment penalty clause in the loan documents for early payoff

2     of the loan. This prepayment penalty consisted of 6 months' interest on 80% of the unpaid balance of the

3     loan. See Exhibit 3 attached hereto and incorporated herein by this reference a copy of the Prepayment

4     Rider.

5            26.     Plaintiffs would not have signed a Note that included this language.

6            27.     Moreover, Plaintiffs allege that any Note in possession of Defendants at this time is most

7     likely a forgery and demand to see a copy of the Note Defendants have in their possession.

8            28.     From August 2007 until approximately fall 2010, Plaintiffs made the interest only

9     payments.

10           29.     In or about February 2009, Plaintiffs received via FedEx an unsolicited loan modification

11    application dated February 25, 2009 from Countrywide adding $8,223.67 to their balance and changing

12    the monthly payment to $3,049.92 for 5 years. This letter stated that the offer was good for 30 days. See

13    Exhibit "2c" attached hereto and incorporated herein by this reference a true and correct copy of the

14    February 25, 2009 letter.

15           30.     Approximately two weeks later, Plaintiffs received via FedEx a second loan modification

16    application dated March 7, 2009 identical to the first except that $15,426.79 was added to the existing

17    loan amount and the interest only monthly payment was $3,069.82 for 5 years. See Exhibit "2d"

18    attached hereto and incorporated herein by this reference a true and correct copy of the March 7, 2009

19    letter.

20           31.     Upon receiving both loan modification applications, Plaintiffs called Countrywide on

21    March 8, 2009 and spoke with a Charles Wallace who said to disregard the first offer and that there

22    would be no explanation or further information provided to the borrower as to why they received these

23    offers.

24           32.     Plaintiffs did further research on the modifications and determined that the modifications

25    were only a rate adjustment of the minimum interest rate for a period of five years. The minimum

26    interest rate only affected how quickly the negative amortization of interest would accumulate and did

27    not change the overall fully indexed payment or Toxic terms of the loan. Plaintiffs did not sign the

28    offers.

1        33.   Starting in 2010, Plaintiffs started applying for a loan modification with Defendant BOFA

2    who had taken over Countrywide's servicing. Plaintiffs spent months going back and forth with

3    Defendant BOFA as every month or so Defendant BOFA would claim to not have received all the

4    paperwork. This activity continued to February 2012 at which time Plaintiffs were approved for a short

5    sale through the HAFA program. See Exhibit "2e" attached hereto and incorporated herein by this

6    reference a true and correct copy of the Short Sale Approval letter dated February 14, 2012. See also

7    Exhibit "2f", a true and correct copy of the document showing Defendant BOFA's valuation of Plaintiffs'

8    Home at $300,000.00.

9        34.   In 2009, a subdivision was built above the Plaintiffs' Home. Improper drainage as a result

10   of the construction in this subdivision caused severe damage to Plaintiffs' property the following winter.

11   Plaintiffs verbally tried to communicate this damage to Defendant BOFA during the process of getting

12   approved for a loan modification as well as a short sale. This damage not only affected the property

13   value but the marketability of the property as well.

14       35.   After months on the market trying to short sell their water-damaged property, Plaintiffs'

15   took the property off the market and Defendant BOFA offered Plaintiffs an opportunity to apply for

16   another loan modification. See Exhibit "2g" attached hereto and incorporated herein by this reference a

17   true and correct copy of the August 10, 2012 letter from Defendant BOFA.

18       36.   Plaintiffs received a letter from Defendant BOFA dated October 23, 2012 declining their

19   loan modification and provided a copy of the Net Present Value (NPV) Worksheet showing the

20   information used to reach that decision. On the worksheet, the market value is listed as one of the

21   reasons for the decline of the modification. On the worksheet, Defendant BOFA used a property a value

22   of $570,000 in their calculations when the value assigned by Defendant BOFA to the property for the

23   short sale was $300,000. See Exhibit "2h" attached hereto and incorporated herein by this reference a

24   true and correct copy of the October 23, 2012 Decline letter with NPV Worksheet.

25       37.   Plaintiffs timely appealed the denial of their loan modification on November 14, 2012,

26   challenged the NPV used on the worksheet and requested an appraisal. See Exhibit "2i" attached hereto

27   and incorporated herein by this reference a true and correct copy Defendant BOFA's response to

28   Plaintiffs' November 14, 2012 Appeal Letter.

38.     Defendant BOFA thereafter agreed to reevaluate the value of Plaintiffs' Home and sent one of their appraisers to value the property. The appraisal was returned with a market value of $349,000. The Appraiser noted: *"For site comments – external factors the appraiser noted: ... there is evidence of inadequate drainage and significant damage has occurred to the site improvements and to the subject. This condition has created a significant negative impact upon the subject and the subject's marketability."* See Exhibit "2j" attached hereto and incorporated herein by this reference a true and correct copy of the Appraisal dated 12-20-12.

39.     Plaintiffs allege that during this appeal process they tried to engage Defendant BOFA in meaningful talks regarding the damage to their Home. Plaintiffs want to address the issue of the damage with the culpable parties but need to have a solid permanent loan modification in place to proceed.

40.     Plaintiffs allege that due to their appeal and subsequent appraisal, their loan modification application was approved for a trial loan modification on May 30, 2013. The offer stated that after 3 months Plaintiffs could be asked to make one or more payments with no definite time as to when they would be offered a permanent loan modification. The modification did not list any specific details or information regarding the modification. Plaintiffs were and are concerned that this modification would be no different than the previous offers in 2009 that only changed the minimum interest due on the loan and would not address the toxic nature of the underlying loan. After all the issues the Plaintiffs had with proper disclosure of their original loan terms they felt they could not trust the loan modification offer. See Exhibit "2k" attached hereto and incorporated herein by this reference a true and correct copy of the May 30, 2013 Trial Modification Offer.

41.     Plaintiffs allege that they declined the May 30, 2013 offer because they felt it was another attempt by Defendant BOFA to collect payments without any intent of making a permanent loan modification. The Affidavit of William McCaffrey ("AFFIDAVIT"), attached hereto and incorporated herein by this reference as Exhibit "4", includes an Exhibit "A", a copy the loan level detail sheet for Plaintiffs' Loan. A review of Exhibit "A" to the AFFIDAVIT shows that no trial modification was accepted on this loan.

42.     Plaintiffs further allege that Defendant BOFA's refusal to put the terms of the loan modification in writing and fully advise Plaintiffs of the terms of the trial modification and any

1  subsequent permanent loan modification violates the essence and spirit of the HBOR, if not specific

2  language contained therein.

3      43.    Moreover, Plaintiffs allege that Defendants BOFA and SPS, by refusing to provide

4  specific terms for the trial and subsequent permanent loan modifications, were and are continuing to

5  violate the essence and spirit of the HBOR, if not the specific language contained therein.

6      44.    On October 5, 2011, Defendant RECON recorded a Substitution of Trustee ("SOT"),

7  signed by T. Sevillano (SEVILLANO), as "Assistant Vice President" for The Bank of New York Mellon,

8  FKA The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan

9  Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2 by its AIF Bank of America,

10  N.A. Successor by Merger to BAC Home Loans Servicing, LP. See Exhibit "5", attached hereto and

11  incorporated herein by this reference a true and correct copy of the SOT. SEVILLANO's signature on

12  Exhibit "5" was purportedly notarized by Ninoush Samimi ("SAMIMI').

13      45.    SEVILLANO appears to be an employee of Defendant RECONTRUST and has signed

14  documents in California. See Exhibit "6" attached hereto and incorporated herein, a true and correct

15  copy of a LinkedIn page showing a SEVILLANO who works for Defendant RECONTRUST. Plaintiffs

16  allege that contrary to her statements in the SOT Exhibit "5" attached hereto and incorporated herein by

17  this reference, SEVILLANO did not have the requisite authority to sign on behalf of Defendants BONY

18  or BANK OF AMERICA, had no personal knowledge of the facts involved in the SOT, never saw or

19  learned whether Plaintiffs' Loan was actually ever assigned, and never viewed the Note securing the

20  DOT. Plaintiffs further allege that SEVILANO is not and cannot be a co- agent for any of the Bank

21  Defendants herein and therefore her signature is unauthorized and fraudulently recorded with the County

22  of El Dorado Clerk's Office.

23      46.    Plaintiffs further allege that Exhibit "5" was not signed by SEVILLANO and in fact her

24  signature is a forgery, further invalidating the SOT. Attached hereto as Exhibit "7" and incorporated

25  herein by this reference are samples of signatures by SEVILLANO on various documents recorded

26  within the State of California. A comparison of SEVILLANO's signature on Exhibit "5" with the

27  signatures on Exhibit "7" raises issues regarding who actually signed Exhibit "5".

28      47.    Plaintiffs further allege that Exhibit "5" was not signed by SEVILLANO and in fact her

1   signature is a forgery, further invalidating the SOT. Attached hereto as Exhibit "7" and incorporated

2   herein by this reference are samples of signatures by SEVILLANO on various documents recorded

3   within the State of California. A comparison of SEVILLANO's signature on Exhibit "5" with the

4   signatures on Exhibit "7" raises issues regarding who actually signed Exhibit "5".

5        48.   Plaintiffs allege that the notary signature on Exhibit "5" is also forged, further

6   invalidating the SOT. A comparison of SAMIMI's signature on Exhibit "5" with the notary signature of

7   SAMIMI on page 7 of Exhibit"7" raises issues regarding who actually signed and notarized Exhibit "5".

8        49.   Plaintiffs allege that SEVILLANO does not hold the position of "Assistant Vice

9   President" of Defendants BONY or BOFA; SEVILLANO is what has come to be known as a "robo-

10   signer"- an individual who simply signs thousands of non-judicial foreclosure documents on behalf of

11   several different entities without any personal knowledge or corporate authority. Plaintiffs allege that

12   Defendants BONY and BOFA never, in any manner whatsoever appointed SEVILLANO as "Assistant

13   Vice President". *(See* California Civil Code ("CC") § 2299 ["an agency is actual when the agent is really

14   employed by the principal]"). Rather, SEVILLANO is an employee of Defendant RECON.

15        50.   Plaintiffs further allege that they should not have to allege that the signatures alleged to

16   be forgeries have been verified by an expert. That is the reason discovery exists and Plaintiffs maintain

17   they are entitled to conduct discovery to determine this issue of fact.

18        51.   Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any

19   interest under the DOT or Note to Defendant BONY as Trustee for Defendant TRUST 2007-OH2 ever

20   occurred as required, and as set forth more fully below.

21        52.   Plaintiffs further allege that almost immediately upon the recording of the DOT, if not

22   sooner, Plaintiffs' Loan was sold to another entity, possibly CWALT, Inc., Depositor, for the purpose of

23   securitizing this Loan and placing Plaintiffs' Loan into Defendant TRUST 2007-OH2.

24        53.   Plaintiffs further allege that upon the sale of Plaintiffs' Loan to another entity, possibly

25   CWALT, Inc., Depositor, Defendants BONY, TRUST 2007-OH2, BOFA and RECON had no further

26   authority to initiate or complete any non-judicial foreclosure actions regarding Plaintiffs' Home.

27        54.   On October 5, 2011, a Notice of Default ("NOD") was recorded by Defendant RECON,

28   signed by Wally Davidson (DAVIDSON), as "Assistant Vice President ", Agent for Beneficiary. See

1  Exhibit "8", attached hereto and incorporated herein by this reference is a true and correct copy of the

2  NOD. Attached to the NOD and incorporated herein by this reference is a California Declaration, signed

3  by James Renfro (RENFRO).

4      55.    On January 13, 2012 and December 11, 2012, respectively, Defendant RECON recorded

5  NOTS1 signed by Nallely Ochoa-Flores (OCHOA-FLORES), as "Assistant Vice President" and NOTS2

6  signed by Lorena E. Rivera (RIVERA), as Assistant Vice President. See Exhibits "9" and "10",

7  respectively, attached hereto and incorporated herein by this reference, a true and correct copy of

8  NOTS1 and NOTS2.

9                              **A. Invalid Assignment**

10     56.    An Assignment of Deed of Trust ("ADOT") was recorded on June 24, 2011 in the El

11  Dorado County Recorder's Office, which was purportedly executed on June 11, 2011, by "Mercedes

12  Judilla" (JUDILLA) as "Assistant Secretary" of Mortgage Electronic Registration Systems, Inc.

13  ("MERS") as nominee. See Exhibit "11", attached hereto and incorporated herein by this reference, a

14  true and correct copy of the ADOT.

15     57.    This ADOT alleges that for "value received" MERS "does hereby grant, sell, assign,

16  transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,

17  AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN

18  TRUST 2007-OH2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OH2, ... all

19  beneficial interest under that certain Deed of Trust ... together with the note(s) and obligations therein

20  described ..."

21     58.    Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any

22  interest under the DOT or Note to Defendants BONY or TRUST 2007-OH2 ever occurred, on the

23  following grounds: four years after the cutoff date for Loans to be assigned to this trust, MERS as

24  nominee for American Financing Corporation, purportedly recorded the ADOT of the subject loan to

25  Defendant BONY as trustee for Defendant TRUST 2007-OH2.

26     59.    Additionally, Plaintiffs allege that there is no MERS Corporate Resolution authorizing

27  the execution of the ADOT, Exhibit "11" and that the execution of the ADOT, Exhibit "11" is in

28  violation of the April 13, 2011 Cease and Desist Order

1     60.    Attached hereto as Exhibit "12" and incorporated herein by this reference are copies of

2  the Declaration of Attorney Steve Berman who filed the case of *In Re Bank of America Home Affordable*

3  *Modification Program (HAMP) Contract Litigation* in the United States District Court District of

4  Massachusetts, Case No. 1:10-md-2193 RWZ and the corroborating Declarations of William E. Wilson,

5  Simone Gordon and Theresa Terrelonge, former Bank of America ("BOFA") employees who verify that

6  BOFA managers had a business practice known as a twice monthly "blitz". Defendant BOFA ordered

7  case managers and underwriters to "clean out" the backlog of HAMP loan modification applications by

8  denying any file where the financial documents were more than 60 days old, including files where the

9  homeowner had provided all financial documents and fully complied with the terms of a Trial Period

10  Plan. Case managers, underwriters and employees were rewarded handsomely with bonuses and gifts for

11  trashing loan modification documents and indiscriminately foreclosing properties. A single team would

12  "blitz" up to 1500 loan modifications approximately every 2 weeks.

13     61.    Plaintiffs allege that Defendants herein have engaged in the same tactics as identified in

14  Exhibit "12".

15     62.    Plaintiffs allege that JUDILLA does not hold the position of "Assistant Secretary" of

16  MERS, which is located in Virginia. JUDILLA, located in California, is what has come to be known as a

17  "robo-signer"- an individual who simply signs thousands of non-judicial foreclosure documents on

18  behalf of several different entities without any personal knowledge or corporate authority. Plaintiffs

19  allege that JUDILLA was never, in any manner whatsoever, appointed by MERS, as an "Assistant

20  Secretary". *(See* California Civil Code ("CC") § 2299 ["an agency is actual when the agent is really

21  employed by the principal]). Rather, JUDILLA appears to be an employee of Defendant BOFA and

22  signed documents in California. Plaintiffs allege that contrary to her statement in the ADOT, JUDILLA

23  did not have the requisite authority to sign on behalf of MERS, had no personal knowledge of the facts

24  involved in the ADOT, has never seen or learned whether Plaintiffs' Loan was actually ever assigned,

25  and never viewed the Note securing the DOT.

26     63.    Plaintiffs dispute the validity of this ADOT and allege that no legal transfer of any

27  interest under the DOT or Note to Defendant BONY as Trustee for Defendant TRUST 2007-OH2 ever

28  occurred.

1    64.    Plaintiffs allege that Defendant TRUST 2007-OH2 is a common law trust formed in 2007

2  pursuant to New York law. The corpus of Defendant TRUST 2007-OH2 allegedly consists of a pool of

3  residential mortgage notes allegedly secured by liens on residential real estate. Plaintiffs allege that

4  Defendant TRUST 2007-OH2 has no officers or directors and no continuing duties other than to hold

5  assets and to issue the series of certificates of investment. A detailed description of the categories of

6  mortgage loans is included in the Prospectus Supplement ("the Prospectus"). A copy of the Supplement

7  Prospectus can be found at:

8  http://www.sec.gov/Archives/edgar/data/1269518/000114420407035146/v079879_424b5.htm.

9  Defendant TRUST 2007-OH2's Securities and Exchange Commission ("SEC") CIK Code for all SEC

10  filings is 0001404500. The Prospectus lists the following as parties to Defendant TRUST 2007-OH2:

11  CWALT, Inc., Depositor; Countrywide Home Loans, Inc., Sponsor and Seller; Countrywide Home

12  Loans Servicing LP, Master Servicer; and Alternative Loan Trust 2007-OH2, Issuer.

13    65.    The Pooling and Servicing Agreement ("PSA") lists the following as parties to Defendant

14  TRUST 2007-OH2: CWALT, Inc., Depositor; Countrywide Home Loans, Inc., Park Granada, LLC, Park

15  Monaco, Inc., Park Sienna, LLC, Sellers; Countrywide Home Loans Servicing LP, Master Servicer; and

16  Defendant BONY, Trustee.

17    66.    Plaintiffs allege that one purpose of the PSA is to document that in the regular course of

18  business the Defendants originate and acquire loans and desire by the PSA to confirm the terms and

19  conditions under which the Trust will "acquire the mortgage loans" so originated.

20    67.    Defendants, and each of them, knowingly and willfully conspired, engaged in a common

21  enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.

22  The purpose and effect of the conspiracy, common enterprise, and common course of conduct

23  complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging

24  in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common

25  course of conduct by misrepresenting and concealing material information regarding the servicing of

26  loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein.

27  Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise

28  and common course of conduct complained of herein, and was aware of its overall contribution to and

1   furtherance thereof. Defendants' wrongful acts include, inter alia, all of the acts that each of them are

2   alleged to have committed in furtherance of the wrongful conduct of complained of herein.

3          68.    Any applicable statutes of limitations have been tolled by the Defendants' continuing,

4   knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence,

5   Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the

6   wrongdoing complained of herein.

7          69.    Plaintiffs allege that Defendant TRUST 2007-OH2 issued the securities in the mortgage-

8   backed Trust identified herein. Said securities were underwritten by CWALT, Inc., the named Depositor

9   in the PSA. Plaintiffs allege that these securities were duly registered with the SEC on a registration

10  statement bearing file number 333-140962. The registration statement and other reports and information

11  regarding the Defendants BONY and TRUST 2007-OH2 are available at the SEC's Internet site at:

12  http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001404500&action=getcompany

13  The materials are also available to read and copy at the SEC's Public Reference Room at 100 F. Street,

14  N.E., Washington, D.C. 20549.

15         70.    In the ADOT, attached hereto as Exhibit "11" and incorporated herein by this reference,

16  Defendant TRUST 2007-OH2 is listed as the holder and owner of the Note and the beneficiary of the

17  DOT, listing Defendant BONY as Trustee for Defendant TRUST 2007-OH2. The DOT executed by

18  Plaintiffs on May 18, 2007 identifies the Lender as American Financing Corporation and MERS as the

19  beneficiary and nominee for the Lender.

20         71.    Plaintiffs further allege that the Note was not duly endorsed, transferred and delivered to

21  the Defendant TRUST 2007-OH2 prior to the Closing Date, June 29, 2007.

22         72.    Pursuant to Section 2.01 of the PSA, all mortgage files transferred to Defendant TRUST

23  2007-OH2 must be delivered on or before the Closing Date.

24         73.    Pursuant to Section 2.04 Conveyance of Mortgage Pool Assets; Security Interest of the

25  PSA, all mortgage files transferred to the Defendant TRUST 2007-HO2 must be delivered on or before

26  the Closing Date of September 29, 2007 and:

27  "The Company does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the
    Trust, without recourse, all the Company's right, title and interest in and to the Mortgage Pool Assets.

28  The Trust, as payment of the purchase price of the Mortgage Pool Assets, shall, on the Closing Date, (i)

issue the REMIC I Regular Interests and the Class R-1 Residual Interest to the Company and (ii) issue
the Class PPP Certificates to the Company or the Company's designee in Authorized Denominations.
The REMIC I Regular Interests, the Class PPP Certificates and the Class R-1 Residual Interest shall
together be a separate series of beneficial interests in the assets of the Trust consisting of the Mortgage
Pool Assets pursuant to Section 3806(b)(2) of the Statutory Trust Statute.

It is the express intent of the parties hereto that the conveyance of the Mortgage Pool Assets to the
Trust by the Company as provided in this Section 2.04 be, and be construed as, an absolute sale of the
Mortgage Pool Assets. It is, further, not the intention of the parties that such conveyance be deemed the
grant of a security interest in the Mortgage Pool Assets by the Company to the Trust to secure a debt or
other obligation of the Company. However, in the event that, notwithstanding the intent of the parties,
the Mortgage Pool Assets are held to be the property of the Company, or if for any other reason this
Agreement is held or deemed to create a security interest in the Mortgage Pool Assets, then
(a) this Agreement shall constitute a security agreement;
(b) the conveyance provided for in this Section 2.04 shall be deemed to be a grant by the Company to
the Trust of, and the Company hereby grants to the Trust, to secure all of the Company's obligations
hereunder, a security interest in all of the Company's right, title, and interest, whether now owned or
hereafter acquired, in and to:
(I) The Mortgage Pool Assets;
(II) All accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments,
investment property, letter-of-credit rights, letters of credit, money, and oil, gas, and other minerals,
consisting of, arising from, or relating to, any of the foregoing; and
(III) All proceeds of the foregoing.

The Company shall file such financing statements, and the Company, the Servicer and the Trustee
acting on behalf of the Trust at the direction of the Company shall, to the extent consistent with this
Agreement, take such other actions as may be necessary to ensure that, if this Agreement were found to
create a security interest in the Mortgage Pool Assets, such security interest would be a perfected
security interest of first priority under applicable law and will be maintained as such throughout the
term of the Agreement. In connection herewith, the Trust shall have all of the rights and remedies of a
secured party under the Uniform Commercial Code as in force in the relevant jurisdiction.

Section 2.05. Delivery of Mortgage Files.
On the Closing Date, the Company shall deliver to and deposit with, or cause to be delivered to and
deposited with, the Trustee or the Initial Custodian the Mortgage Files, which shall at all times be
identified in the records of the Trustee or the Initial Custodian, as applicable, as being held by or on
behalf of the Trust. ..."

74.    Plaintiffs allege that Defendant TRUST 2007-OH2 was formed under New York law and

therefore New York law governs the operation of the trust. New York Estates, Powers & Trusts Law

section 7-2.4, provides: "If the trust is expressed in an instrument creating the estate of the trustee, every

sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this

article and by any other provision of law, is void."

1    75.    Because Defendant TRUST 2007-OH2 was created by the PSA and that agreement

2    establishes a specific Closing Date of September 29, 2007, Defendant BONY's attempt as Trustee for

3    Defendant TRUST 2007-OH2 to accept a loan after the Closing Date would be void as an act in

4    contravention of the PSA.

5    76.    Plaintiffs allege that the Note in this case was actually transferred or delivered by

6    American Financing Corporation and or MERS to the Depositor, CWALT, Inc.; however, no further

7    transfer or delivery was thereafter made by the Depositor, CWALT, Inc. to the Custodian on behalf of

8    Defendant BONY, Trustee for Defendant TRUST 2007-OH2 prior to the closing.

9    77.    In addition, there is no indication that Plaintiffs' Loan was transferred into Defendant

10    TRUST 2007-OH2 pursuant to the PSA before the Closing Date. Accordingly, Plaintiffs allege that the

11    Note in this case was never lawfully negotiated and physically delivered to the Defendant TRUST 2007-

12    HO2.

13    78.    Plaintiffs allege that the ADOT did not occur by the closing date September 29, 2007, or

14    ninety (90) days thereafter, but rather on June 24, 2011, long after Defendant TRUST 2007-OH2 had

15    closed. Said ADOT was ineffective, as Defendant TRUST 2007-OH2 could not have accepted the DOT

16    after the Closing Date pursuant to the PSA and the requirements for a REMIC Trust. If the ADOT was

17    made after the closing date, the non-compliance with the REMIC statutes would terminate Defendant

18    TRUST 2007-OH2 by extinguishing its tax-exempt status under the REMIC statutes.

19    79.    Moreover, Plaintiffs allege that the ADOT made into Defendant TRUST 2007-OH2, was

20    not made within 20 days of the actual transfer into said Defendant TRUST 2007-OH2, in violation of

21    California Commercial Code §9-312.

22    80.    Plaintiffs allege that this violation of California Commercial Code § 9-312 renders the

23    DOT null and void and the Note is therefore unsecured.

24    81.    Therefore, the attempted foreclosure of Plaintiffs' Home, the NOD, and the NOTS, are

25    and were wrongful and *void ab initio*.

26    82.    Plaintiffs further allege that:

27    a.    Paragraph 22 of the DOT (a complete, true and correct copy is attached hereto as Exhibit

28    "1" and incorporated herein by this reference) authorizes only the lender-beneficiary (or its

SECOND AMENDED COMPLAINT
Page 17 of 40

1   assignee), to (i) accelerate the loan after a default and (ii) elect to cause Plaintiffs' Home to

2   be sold; and

3       b.   A non-holder of the DOT, Defendant BONY as Trustee for Defendant TRUST 2007-OH2,

4          instructed Defendant RECON to initiate the foreclosure.

5       83.   Plaintiffs further allege that Paragraph 20 of the DOT authorizes the Note and DOT to be

6   sold one or more times.

7       84.   The issue for which Plaintiffs are seeking resolution does not include the question of

8   whether or how much they may owe on the loan. The issue needing to be resolved is what entity may

9   actually own the loan and may have the right and standing to enforce the terms of the purported Note

10  and DOT, especially since they were securitized contrary to the terms of the Note and DOT and without

11  the advised consent of Plaintiffs. The Court should not condone the BANK Defendants' fraudulent and

12  predatory lending and servicing practices and allow it to collect money it was and is not owed. Simply

13  put, the Court should not allow the BANK Defendants to trample over 200 years of well-settled property

14  laws just because Plaintiffs may "owe somebody the money".

15      85.   Plaintiffs' allegations are based on: (1) analysis of the Plaintiffs' Home's recorded county

16  records; (2) direct written and oral communication with Defendant BONY as Trustee for Defendant

17  TRUST 2007-HO2 and/or RECON; (3) their counsel's research, experience, and extensive review of

18  depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available

19  securitization documents & practices; (4) a review of the purported recorded documents fraudulently

20  signed; (5) a review of the purported Declaration of Compliance fraudulently signed; (5) a review of the

21  PSA and other documents filed with the SEC for Defendant TRUST 2007-OH2.

22      86.   Plaintiffs allege that none of the BANK Defendants can demonstrate or document that

23  Plaintiffs' Note was ever properly endorsed, and the DOT simultaneously assigned and both ultimately

24  properly perfected and transferred to the Defendants BONY, TRUST 2007-OH2 or any other entity.

25      87.   Plaintiffs relied on the BANK DEFENDANTS' misrepresentations and have been

26  damaged in the following ways: (1) Plaintiffs may have been paying the wrong party for an

27  undetermined amount of time and overpaid interest and other penalties that were miscalculated; (2)

28  Plaintiffs have suffered damage to their credit reports and scores; (3) Plaintiffs have expended

1   significant funds to cover the cost of attorneys' fees and related costs; (4) Plaintiffs have suffered

2   damage to their reputation in the community; (7) Plaintiffs are unable to determine whether they sent

3   monthly mortgage loan payments to the right party; (8) multiple parties may still seek to enforce this

4   debt obligation against Plaintiffs; (9) any would-be buyer of Plaintiffs' Home may find themselves in

5   legal limbo, unable to know with any certainty whether they can safely buy Plaintiffs' Home or get title

6   insurance; (10) Plaintiffs have been denied the opportunity to negotiate the terms of their Loan to cure

7   the default with the proper party; and (11) Plaintiffs are in imminent danger of the loss of their Home

8   and if that occurs, will be irreparably harmed pursuant to CC § 3387.

9        88.   Plaintiffs seek a court ruling as to whether the DOT secured any obligation of Plaintiffs

10   such that BANK Defendants can foreclose on the Plaintiffs' Home or collect Plaintiffs' Loan payments;

11   a final judgment granting Plaintiffs quiet title to their Home; and a final judgment of wrongful non-

12   judicial foreclosure against the BANK Defendants and DOE Defendants.

13        89.   Plaintiffs allege that BANK Defendants have received more than 100% compensation for

14   Plaintiffs' Loan through moneys paid by investors, the FDIC and/or other insurance and have been paid

15   in full by the investors in the Defendant TRUST 2007-OH2, or otherwise.

16        90.   Plaintiffs further allege that BANK Defendants received this compensation in violation of

17   the terms of the Note and DOT because BANK Defendants had no authority to securitize the Note and

18   DOT, only to sell them.

19        91.   For all of the foregoing reasons, Plaintiffs allege a controversy surrounding the title is

20   evident because there is no recorded ADOT to the proper purported Note Holder.

21        92.   Additionally, Plaintiffs claims the BANK Defendants had no authority to initiate non-

22   judicial foreclosure proceedings for lack of standing because said Defendants did not have any perfected

23   security or beneficial interest in the purported Note or DOT. Not only is the creation of this "ADOT" as

24   well as one or more of the documents signed by Bank defendants, fraudulent and deceptive, but an

25   unlawful <u>criminal violation.</u> California Penal Code §115 provides:

26   "[e]very person who knowingly procures or offers any false or forged instrument to be filed,
27   registered, or recorded in any public office within this state, which instrument, if genuine, might be
   filed, registered, or recorded under any law of this state or of the United States, **is guilty of a felony**."
28   (emphasis added).

1    Clearly, Defendants' conduct falls squarely within the guidelines of California Penal Code §115.

2    **B. The Notice of Default, Notice of Sale and Trustee's Deed Are Invalid**

3    93.    California non-judicial foreclosure law requires that the trustee of the beneficiary or their

4    authorized agents follow certain procedures in order to enforce a power of sale clause in a DOT. A

5    foreclosing party must strictly comply with the statutory requirements, otherwise, the sale is invalid.

6    94.    In California, the deed of trust follows the note. Hence, an assignment or transfer of the

7    note carries with it the deed of trust. See CC § 2936. As such, in California, a deed of trust can only be

8    foreclosed by the owner of the note, as a matter of law.

9    95.    Plaintiffs allege that Defendant BOFA could not, and did not assign the Note securing the

10    DOT to Defendants BONY or TRUST 2007-OH2.

11    96.    Plaintiffs further allege that Defendant BONY as Trustee for Defendant TRUST 2007-

12    OH2 was not legally assigned the Note and/or DOT, and neither it nor Defendant RECON had legal

13    authority to exercise the power of sale under CC §§ 2924, et seq.

14    97.    Plaintiffs allege that Defendant RECON, the Trustee foreclosing on the Plaintiffs' Home,

15    is conducting a non-judicial foreclosure without any authority whatsoever. The NOD is void since

16    Defendant RECON recorded the instrument without being Defendants BONY's and TRUST 2007-

17    OH2's "trustee, mortgagee, beneficiary, or authorized agent." Plaintiffs allege that DAVIDSON signed

18    the NOD although he had no agency authority from Defendants BONY or TRUST 2007-OH2, which is

19    required under CC §2924(a).

20    98.    Plaintiffs allege that Defendant RECON, the Trustee who is foreclosing on the Plaintiffs'

21    Home, is conducting a non-judicial foreclosure on Plaintiffs' Home without any authority whatsoever.

22    Therefore all NOTSs are void since Defendant RECON recorded the instruments without being

23    Defendants BONY's or TRUST 2007-OH2's "trustee, mortgagee, beneficiary, or authorized agent".

24    Plaintiffs allege that Defendant RECON's employees signed the NOTSs as Assistant Vice President

25    although they had no agency authority from Defendants BONY or TRUST 2007-OH2, which is required

26    under CC § 2924(a).

27    99.    Plaintiffs allege that Defendant RECON, the Trustee who is attempting to foreclose on

28    Plaintiffs' Home, is doing so without any authority whatsoever. Any TDUS issued would be void since

1   Defendant RECON is not Defendant BONY's or TRUST 2007-OH2's "trustee, mortgagee, beneficiary,

2   or authorized agent".

3       100.   Plaintiffs allege that any TDUS granted to third parties would be Void because the ADOT

4   and NOTS were recorded without the requisite authority required under CC § 2924(a).

5       101.   The title to Plaintiffs' Home is about to be stolen from them and they are entitled to have

6   that title restored or recover damages according to proof.

7       102.   Plaintiffs allege that Defendants BOFA among others, were and are parties to the Consent

8   Judgment reached in the case of *THE UNITED STATES OF AMERICA, et al, v. BANK OF AMERICA*

9   *CORPORATION, et al*, in the United States District Court for the District of Columbia, Case # 1:12-cv-

10   00361-RMC.

11       103.   Plaintiffs further allege that the actions of Defendants BOFA as alleged in this SAC were

12   and are in violation of said Consent Judgment.

13       104.   The conduct of Defendants BONY, TRUST 2007-OH2, SPS, BOFA and RECON and one

14   or more of the DOE Defendants are about to lead to the imminent loss of Plaintiffs' Home and to

15   pecuniary damages. The pecuniary damages include, but are not limited to, the costs of removing the

16   cloud from the title, attorneys' fees and costs, in an amount to be proven at trial.

17       105.   The conduct of Defendants BOFA, TRUST 2007-OH2, BONY, SPS and RECON and one

18   or more of the DOE Defendants' conduct was and is malicious because said Defendants know the

19   identity of the current and true beneficiary of Plaintiffs' Note and DOT, yet still wrongfully recorded the

20   fabricated documents so as to attempt to illegally foreclose, slander the Plaintiffs' credit and title to the

21   Plaintiffs' Home, and make said title unmarketable.

22       106.   The title to Plaintiffs' Home has been rendered unmarketable and unsalable because of

23   the possibility of multiple claims being made against it. If the ADOT, NOD and NOTSs are not

24   cancelled, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the opportunity to identify the

25   true and current creditor and exercise their statutory right to cure any alleged default.

26       107.   Plaintiffs allege that any amount allegedly owed under the Note is subject to equitable

27   offset by the damages owed to Plaintiffs from the Defendants and others yet to be determined.

28       108.   Plaintiffs allege that due to improper procedures conducted by Defendants BOFA,

1   TRUST 2007-OH2, BONY, SPS and RECON and one or more of the DOE Defendants, the true owner

2   of the Note and DOT is certainly not any of these Defendants.

3       109.   Plaintiffs do not allege that Defendants BOFA, TRUST 2007-OH2, SPS, BONY and

4   RECON and one or more of the DOE Defendants must be in "physical possession" or "hold" Plaintiffs'

5   Note to foreclose on the Plaintiffs' Home - a requirement that has been rejected in California. Rather,

6   Plaintiffs allege that prior to demanding mortgage payments from Plaintiffs and recording the NOD,

7   none of the Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON and one or more of the

8   DOE Defendants had, nor presently have, a secured or unsecured, legal or equitable interest in Plaintiffs'

9   Note and/or DOT as required under California law, irrespective of who is actually in physical possession

10   of Plaintiffs' Note.

11       110.   Plaintiffs allege that Defendants BOFA, TRUST 2007-OH2, SPS BONY and RECON are

12   enforcing a debt obligation in which they have no pecuniary, equitable or legal interest. Defendants

13   BOFA, TRUST 2007-OH2, SPS, BONY and RECON and one or more of the DOE Defendants conduct

14   is part of a fraudulent debt collection scheme.

15       111.   Given the competing allegations anticipated by the parties hereto regarding the validity of

16   the ADOT, should the Court deem the ADOT is invalid, Plaintiffs seek a declaratory judgment to

17   establish whether Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON obtained the Note

18   and/or DOT by any other legal means, and the respective rights and obligations of the parties under the

19   Loan.

20       112.   Plaintiffs also seek a declaratory judgment to determine whether, under the circumstances

21   alleged herein, Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON have strictly complied

22   with California's non-judicial foreclosure statutes such that they are able to continues with a non-judicial

23   foreclosure, or whether, as Plaintiffs allege, they must forego a non-judicial foreclosure and conduct a

24   judicial foreclosure.

25       113.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations

26   of the parties because: (1) they will be denied the right to conduct discovery and have Defendants'

27   claims verified by a custodian of records who has personal knowledge of the Loan and all transactions

28   related to it; and (2) they will be denied the opportunity to challenge the ADOT and NOD; 3) they will

1  face improper non-judicial foreclosure; 4) they will be denied the right to peaceful use and enjoyment of
2  this unique real property.

3    114.   Due to the actual case and controversy regarding competing claims and allegations, it is
4  necessary that the Court declare the actual rights and obligations of the parties and make a determination
5  as to (I) whether the ADOT is of any legal effect such that Defendants BOFA, TRUST 2007-OH2, SPS,
6  BONY and RECON had a right to initiate foreclose proceedings on the Plaintiffs' Home; and (2) to the
7  extent the Court finds the ADOT invalid, whether Defendants BOFA, TRUST 2007-HY-05, CHASE,
8  WMMSC and RECON obtained the Note and/or DOT by any other legal means.

9  **FIRST CAUSE OF ACTION**

10  **CANCELLATION OF INSTRUMENTS: CALIFORNIA CIVIL CODE SECTION 3412**

11  **[Against all Defendants, and Doe Defendants]**

12    115.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs
13  as if the same were fully set forth herein.

14    116.   Each of the written instruments described below in this cause of action was recorded in
15  El Dorado County, California. Plaintiffs' Home to which all of the written instruments sought to be
16  cancelled relates is situated in El Dorado County.

17    117.   Plaintiffs allege that the ADOT, NOD and NOTSs are all void for the reasons stated
18  herein.

19    118.   The written instruments sought to be cancelled in this cause of action should be cancelled
20  and Plaintiffs are entitled to attorney's fees. If the written instruments are not canceled Plaintiffs will be
21  deprived of title and possession of their Home, and title to their Home will have been stolen from them.

22  **SECOND CAUSE OF ACTION**

23  **VIOLATION OF CALIFORNIA HOMEOWNERS BILL OF RIGHTS**

24  **(Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON)**

25    119.   Plaintiffs incorporate each and every one of the preceding paragraphs of the SAC into
26  this cause of action, as though fully set forth herein.

27    120.   Governor Jerry Brown signed the California Homeowner Bill of Rights (HBOR) into law
28  to bring fairness, accountability and transparency to the state's mortgage and non-judicial foreclosure

SECOND AMENDED COMPLAINT<br>Page 23 of 40

1  process. CC § 2923.4 sets forth the legislative purpose underlying the HBOR: to ensure that, as part of

2  the non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to

3  obtain, available loss mitigation options such as loan modifications or other alternatives to non-judicial

4  foreclosure.

5      121.  Plaintiff alleges that BANK Defendants have violated the following Home Owners Bill

6  of Rights statutes and as a result are precluded from initiating non-judicial foreclosure action against

7  her:

8  A.  **CC § 2923.5(a)(1)(A)&(B):** a mortgage servicer, mortgagee, trustee, beneficiary or

9      authorized agent many not record a Notice of Default until both:

10      • Either 30 days after initial contact is made (if contact is achieved) or 30 days after

11      satisfying the due diligence requirements set forth in CC § 2923.5(e); and

12      • The mortgage servicer complies with CC § 2924.18(a)(1) if the borrower has

13      provided a complete application defined in CC § 2924.11(f).

14  B.  **CC § 2923.5(e):** A notice of default may be recorded pursuant to CC § 2924 when a

15      mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision

16      (a) provided that the failure to contact the borrower occurred despite the due diligence of

17      the mortgage servicer. For purposes of this section, "due diligence" shall require and mean

18      all of the following:

19      1. A mortgage servicer shall first attempt to contact a borrower by sending a first-

20      class letter that includes the toll-free telephone number made available by HUD to

21      find a HUD-certified housing counseling agency.

22      2. (A) After the letter has been sent, the mortgage servicer shall attempt to contact the

23      borrower by telephone at least three times at different hours and on different days.

24      Telephone calls shall be made to the primary telephone number on file.

25      (B)  A mortgage servicer may attempt to contact a borrower using an automated

26      system to dial borrowers, provided that, if the telephone call is answered, the call

27      is connected to a live representative of the mortgage servicer.

28      (C)  A mortgage servicer satisfies the telephone contact requirements of this

paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

3. If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

4. The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

5. The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

   (A)   Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid non-judicial foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

   (B)   A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding non-judicial foreclosure.

   (C)   A toll-free telephone number for borrowers who wish to discuss options for avoiding non-judicial foreclosure with their mortgage servicer.

   (D)   The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

C.   **CC § 2923.55(a)**: a mortgage servicer, mortgagee, trustee, beneficiary, or authorized recording cannot record a Notice of Default until all the following have occurred:

   • The mortgage servicer must satisfy the requirements of CC § 2923.55(b)(1) by sending the borrower certain required information.

   • Thirty (30) days after initial contact are required for making contact by CC § 2923.55(b)(2) or 30 days after satisfying the due diligence provisions of CC § 2923.55(f)

1             • The mortgage servicer complies with CC § 2923.6(c) if the borrower has provided a

2                complete application as defined in CC § 2923.6(h).

3     D.     **CC § 2923.55(b)(1):** the Mortgage Servicer "shall send" the following information to the

4     borrower in "writing":

5             • A statement that if the borrower is a Service member they are afforded certain

6                rights.

7             • A statement that the borrower may request a copy of: (1) the borrower's promissory

8                note or other evidence of indebtedness; (2) the borrower's deed of trust or

9                mortgage; (3) any assignment, if applicable, of the borrower's mortgage or deed of

10                trust required to demonstrate the right of the mortgage servicer to foreclose; and (4)

11                the borrower's payment history since the borrower was last less then 60 days past

12                due.

13     E.     **CC § 2923.55(b)(2):** A mortgage servicer shall contact the borrower in person or by

14     telephone in order to assess the borrower's financial situation and explore options for the borrower

15     to avoid non-judicial foreclosure. During the initial contact, the mortgage servicer shall advise the

16     borrower that he or she has the right to request a subsequent meeting and, if requested, the

17     mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the

18     borrower's financial situation and discussion of options may occur during the first contact, or at

19     the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided

20     the toll-free telephone number made available by the United States Department of Housing and

21     Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting

22     may occur telephonically.

23     F.     **CC § 2923.55(f):** A notice of default may be recorded pursuant to § 2924 when a

24     mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b),

25     provided that the failure to contact the borrower occurred despite the due diligence of the

26     mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of

27     the following:

28          1. A mortgage servicer shall first attempt to contact a borrower by sending a first-

1   class letter that includes the toll-free telephone number made available by HUD to

2   find a HUD-certified housing counseling agency.

3   2. (A) After the letter has been sent, the mortgage servicer shall attempt to contact the

4   borrower by telephone at least three times at different hours and on different days.

5   Telephone calls shall be made to the primary telephone number on file.

6   (B)  A mortgage servicer may attempt to contact a borrower using an automated

7   system to dial borrowers, provided that, if the telephone call is answered, the call

8   is connected to a live representative of the mortgage servicer.

9   (C)  A mortgage servicer satisfies the telephone contact requirements of this

10   paragraph if it determines, after attempting contact pursuant to this paragraph,

11   that the borrower's primary telephone number and secondary telephone number

12   or numbers on file, if any, have been disconnected.

13   3. If the borrower does not respond within two weeks after the telephone call

14   requirements of paragraph (2) have been satisfied, the mortgage servicer shall then

15   send a certified letter, with return receipt requested, that includes the toll-free

16   telephone number made available by HUD to find a HUD-certified housing

17   counseling agency.

18   4. The mortgage servicer shall provide a means for the borrower to contact it in a

19   timely manner, including a toll-free telephone number that will provide access

20   to a live representative during business hours.

21   5. The mortgage servicer has posted a prominent link on the homepage of its

22   Internet Web site, if any, to the following information:

23   (B)  Options that may be available to borrowers who are unable to afford their

24   mortgage payments and who wish to avoid non-judicial foreclosure, and

25   instructions to borrowers advising them on steps to take to explore those options.

26   (C)  A list of financial documents borrowers should collect and be prepared to

27   present to the mortgage servicer when discussing options for avoiding non-

28   judicial foreclosure.

1    (D)  A toll-free telephone number for borrowers who wish to discuss options for

2    avoiding non-judicial foreclosure with their mortgage servicer.

3    (E)  The toll-free telephone number made available by HUD to find a HUD-

4    certified housing counseling agency.

5    G.    **CC § 2924(a)(6)** provides that "no entity shall record or cause a notice of default to be

6    recorded or otherwise initiate the non-judicial foreclosure process" unless it is:

7    • The holder of the beneficial interest under the mortgage or deed of trust;

8    • The original trustee or the substituted trustee under the DOT; or,

9    • The designated agent of the holder of the beneficial interest. Not agent of the holder

10   of the beneficial interest under the mortgage or DOT, original trustee or substituted

11   trustee under the DOT may record a NOD or otherwise commence the non-judicial

12   foreclosure process except when acting within the scope of authority designated by

13   the holder of the beneficial interest."

14   H.    **CC § 2924.9(a)** Within 5 days after recording a Notice of Default a mortgage servicer

15   that offers one or more non-judicial foreclosure prevention alternatives shall send a written

16   communication to the borrower that includes all of the following information:

17   1. That the borrower may be evaluated for a non-judicial foreclosure prevention

18   alternative or, if applicable, non-judicial foreclosure prevention alternatives.

19   2. Whether an application is required to be submitted by the borrower in order to be

20   considered for a non-judicial foreclosure prevention alternative.

21   3. The means and process by which a borrower may obtain an application for a non-

22   judicial foreclosure prevention alternative.

23   I.    CC§ 2924(a)(6) provides that "no entity shall record or cause a NOD to be recorded or

24   otherwise initiate the non-judicial foreclosure process" unless it is a) the holder of the

25   beneficial interest under the mortgage or DOT, b) the original trustee under DOT c) the

26   designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial

27   interest under mortgage or DOT, original trustee or substitution of trustee under the DOT may

28   record a NOD or otherwise commence the non-judicial foreclosure process except when acting

within the scope of authority designated by the holder of the beneficial interest. Plaintiff alleges BANK Defendants are in violation of CC§ 2924(a)(6) in that the holder of the beneficial interest of his Note and DOT did not authorize the recording of NOD, NOTS or any other document recorded against Plaintiff's Home.

122.   Plaintiff alleges different lenders and their servicers offer a varying set of forbearance, modification, mediation, short sale, or other mitigation options to avoid non-judicial foreclosure. "As a matter of orderly process and fundamental fairness, should not borrowers be eligible to know that the party depriving them of their real estate is legally entitled to do so and to have the opportunity to claim whatever non-judicial foreclosure mitigation procedures that particular lender has adopted? We think they should." Dale A. Whitman & Drew Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note*, 66 Ark. L. Rev. 21, 41 (2013).

123.   Plaintiff alleges that the Declaration of Due Diligence attached to the NOD does not comply with CC § 2923.5 in that: the person who signed the Declaration, RENFRO, does not indicate that he has personal knowledge of the facts stated therein.

124.   Plaintiffs allege that BANK DEFENDANTS are in violation of the HBOR and therefore cannot non-judicially foreclose on Plaintiffs' Home.

125.   Plaintiffs allege that the HBOR provides for a Private Right of Action pursuant to CC § 2924.12(a)(1): "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of CC §§ 2923.5, 2923.7, 2924.11, or 2924.17."

126.   Defendant Bank of America sent a letter to Plaintiffs dated 1/27/2014 notifying that Defendant SPSI, was the new servicer (See Exhibit "13," attached hereto and incorporated herein by reference). Defendant SPSI followed up with its 2/28/2014 letter, (Exhibit "14", attached hereto and incorporated herein by reference).

127.   To Plaintiffs' knowledge, Defendant BONY, as Trustee of DEFENDANT Trust 2007-OH2, remains the alleged owner of the loan serviced by Defendant SPSI.

128.   On or about 4/11/2014, Plaintiffs submitted their loan modification application to Defendant SPSI. On or about 5/1/2014, Plaintiff James Ray called Defendant SPSI and spoke to the Single Point of Contact ("SPOC"), Deborah Watson, who stated that Plaintiffs' loan modification

1   application was received and that Plaintiffs had supplied all documents requested by Defendant SPSI.

2   SPOC Watson also stated that Plaintiffs were to disregard a letter dated 4/29/2014 from Kelly Smith that

3   indicated their application was not complete. Plaintiffs subsequently received a letter from SPOC

4   Watson verifying the fact that their loan modification application was complete. A copy of that letter is

5   attached hereto as Exhibit "15" and incorporated herein by reference. SPOC Watson also stated that the

6   Loan modification process would be completed by law within 30 days, and that Plaintiffs would be

7   contacted regardless of the outcome within that time period. These are the last contacts Plaintiffs had

8   with Defendant SPSI. To date, Plaintiffs have yet to receive any notice whatsoever from Defendants

9   SPSI or BONY regarding the status of their loan modification application, in violation of the California

10  Homeowner's Bill of Rights.

11                              **THIRD CAUSE OF ACTION**

12          **VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200, ET SEQ**

13          **[Against BOFA, TRUST 2007-OH2, RECON, SPS, BONY and Doe Defendants]**

14          129.   Plaintiffs incorporate each and every one of the preceding paragraphs of the SAC into

15  this cause of action, as though fully set forth herein.

16          130.   Plaintiffs allege that in 2011, Defendants misrepresented material information by causing

17  an ADOT to be recorded on June 24, 2011, containing unauthorized signatures.

18          131.   Plaintiffs allege that the Defendants, and each of them, had knowledge of such falsity, as

19  the signatories on the ADOT served as an employee of Defendants RECON, which served as the agent

20  for the remaining Defendants for purposes of executing a non-judicial foreclosure of Plaintiffs' Home.

21          132.   Plaintiffs allege that Defendants further misrepresented to the public at large by using

22  their power to make attempts to transfer Plaintiffs' DOT after the closing date of the PSA, thereby

23  providing false information to the public and financially interested parties, that the Plaintiffs' Home was

24  properly transferred thereby allowing Defendants, and each of them, to attempt to foreclose.

25          133.   Plaintiffs allege that Defendants' acts and practices are likely to deceive, constituting a

26  fraudulent business act or practice. This conduct is ongoing and continues to this date.

27          134.   Specifically, as fully set forth above, Defendants engage in deceptive business practices

28  with respect to the initiation of non-judicial foreclosure proceedings by utilizing falsified documents and

1  recording those documents in an effort to deceive the public at large as to the validity of such

2  documents. In addition, Defendants engaged and continue to engage in deceptive practices by:

3      a.  Instituting improper or premature non-judicial foreclosure proceedings to generate

4         unwarranted fees;

5      b.  Executing and recording false and misleading documents;

6      c.  Executing and recording documents without the legal authority to do so;

7      d.  Failing to disclose the principal for which documents were being executed and recorded

8         in violation of California Civil Code § 1095;

9      e.  Acting as beneficiaries and trustees without the legal authority to do so;

10      f.  Failing to give proper notice of a trustee's sale and the postponement of the sale pursuant

11        to California Civil Code §§ 2924g and 2924h; and

12      g.  Other deceptive business practices.

13      135.  Plaintiffs allege that by engaging in the above described acts and/or practices as alleged

14  herein, Defendants have violated several California laws and regulations and said predicate acts are

15  therefore per se violations of California Business and Professions (B&P) Code §§ 17200, et seq.

16      136.  Plaintiffs allege that Defendants' misconduct, as alleged herein, gave, and have given,

17  Plaintiffs allege that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an

18  unfair competitive advantage over their competitors. The scheme implemented by Defendants is

19  designed to defraud California consumers and enrich the Defendants.

20      137.  The foregoing acts and practices have caused substantial harm to California consumers.

21      138.  Plaintiffs allege that the Defendants' unfair, unlawful, and fraudulent business practices

22  and false and misleading advertising present a continuing threat to members of public in that other

23  consumers will be defrauded into having their Home improperly sold at non-judicial foreclosure.

24  Plaintiffs and other members of the general public have no other adequate remedy of law.

25      139.  Defendants have engaged in unfair, unlawful, and fraudulent business practices in the

26  State of California, as set forth above.

27      140.  By engaging in the above-described acts and practices, Defendants have committed one

28  or more acts of unfair competition within the meaning of B&P Code §§17200, et seq.

141.   B&P Code §§17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

142.   Defendants have violated California Penal Code §115 and §532(f)(a)(4) by filing or causing the ADOT to be filed with the El Dorado County Recorder in connection with Plaintiffs' Loan transaction with knowledge that the ADOT contained deliberate misstatements and misrepresentations, including, inter alia, that Defendants BONY and TRUST 2007-OH2 had been assigned Plaintiffs' Note and DOT.

143.   Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful non-judicial foreclosure proceedings.

144.   Defendants BOFA, TRUST 2007-OH2, SPS and BONY have been acting in a manner to mislead Plaintiffs into believing that they had been assigned an interest in the Loan, and as such had the authority to initiate non-judicial foreclosure proceedings on Plaintiffs' Home.

145.   The conduct described above by Defendants BOFA, TRUST 2007-OH2, SPS and BONY was malicious because they knew that the Note and DOT were not properly assigned. However, despite such knowledge, Defendants BOFA, TRUST 2007-OH2, SPS, RECON and BONY continue to move forward with a non-judicial foreclosure action on Plaintiffs' Home, and engage in other unlawful non-judicial foreclosure practices. Moreover, Defendants BOFA have developed a practice of recording false assignments of deeds of trust in order to initiate non-judicial foreclosure proceedings on California consumers.

146.   As more fully described above, Defendants' acts and practices are unlawful. This conduct is ongoing and continues to this date.

147.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public. This conduct is ongoing and continues to this date.

148.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have. This conduct is ongoing and continues to this date.

149.   Plaintiffs allege that Defendants' misconduct as alleged herein, gave them an unfair

1  competitive advantage over their competitors. The scheme implemented by Defendants is designed to

2  defraud California consumers and enrich Defendants.

3      150.    The foregoing acts and practices have caused substantial harm to California homeowners,

4  including Plaintiffs.

5      151.    Plaintiffs allege that they is aware of the existence of a Foreclosure Transmittal Package

6  originated by one of the parties hereto and distributed to, inter alia, the other parties hereto. Plaintiffs

7  further allege that the information contained in this Foreclosure Transmittal Package includes the names

8  of parties as yet unknown to Plaintiffs and who, if known, would be named as parties to this complaint.

9      152.    Plaintiffs allege that this Foreclosure Transmittal Package contains information verifying

10  the allegations of this complain, that the Defendants do not own the subject loan, do not have the right to

11  foreclose on Plaintiffs' Home and that Defendants will either deny the existence of such information or

12  oppose every effort by Plaintiffs to obtain this information.

13      153.    Plaintiffs allege that they is aware of the existence of a Log Book originated by one of the

14  parties hereto and distributed among, inter alia, the other parties hereto. Plaintiffs further allege that the

15  information contained in this Log Book includes the names of parties as yet unknown to Plaintiffs and

16  who, if known, would be named as parties to this complaint.

17      154.    Plaintiffs allege that this Log Book contains information verifying the allegations of this

18  complaint, that the Defendants do not own the subject loan, do not have the right to foreclose on the

19  subject property and that Defendants will either deny the existence of such information or oppose every

20  effort by Plaintiffs to obtain this information.

21      155.    Plaintiffs intend to propound discovery to obtain copies of the Foreclosure Transmittal

22  Package and Log Book to obtain further proof of Defendants' violations

23      156.    As a direct and proximate result of the actions of Defendants, and each of them, stated

24  above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Home and

25  Defendants have failed to remove this cloud from Plaintiffs' title.

26      157.    As a direct and proximate result of Defendants' violations of B&P Code §§ 17200 et seq

27  and other related sections, Plaintiffs have been damaged in the following ways, inter alia: (1) the title to

28  their Home is threatened to be stolen from them; (2) they is unable to determine whether they sent their

SECOND AMENDED COMPLAINT
Page 33 of 40

1    monthly loan payments to the right party; and (3) they have expended significant funds to cover the cost

2    of attorneys' fees and related costs.

3          158.   Plaintiffs allege that by engaging in the above described acts and/or practices as alleged

4    herein, Defendants violated several laws including B&P Code §§ 17200, et seq. and must pay restitution

5    related to their unfair, unlawful, and deceptive business practices.

6          159.   Plaintiffs are therefore entitled to attorney's fees B&P Code §§ 17200 and related

7    sections. These acts and practices, as described in the previous paragraphs, are unfair and violate B&P

8    Code §17200 because Defendants policies and practices described above violate all statutes previously

9    listed and consequently, constitute and unlawful business act of practice within the meaning of B&P

10   Code § 17200.

11                        **FOURTH CAUSE OF ACTION**

12                        **WRONGFUL FORECLOSURE**

13   **(Against Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON and all Doe Defendants)**

14         160. Plaintiffs incorporate each and every one of the preceding paragraphs of the SAC into

15   this cause of action, as though fully set forth herein.

16         161. Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON were the purported

17   foreclosing parties upon Plaintiffs' Home. Defendants BOFA, TRUST 2007-OH2, BONY, SPS and

18   RECON were the entities that exercised the power of sale within the DOT.

19         162. As set forth above, since the purported status of Defendants BOFA and TRUST 2007-

20   OH2 as beneficiary is *void ab initio*, Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON

21   and/or other defendants did not have the authority to exercise the power of sale within the DOT, and

22   Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON could not initiate non-judicial

23   foreclosure based upon any alleged defaults known or believed to exist.

24         163. Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON initiated non-judicial

25   foreclosure without privilege and with malice, as said Defendants knew that they had no interest in the

26   Note and DOT. As stated, Defendant RECON was not the properly named trustee under the DOT, and

27   Defendants BONY and RECON had no pecuniary interest in the Note and DOT and none of the

28   Defendants were beneficiaries of the Note and DOT. Therefore, despite the fact that said Defendants

1  knew they had no standing to proceed with a non-judicial foreclosure, they proceeded forward with the

2  non-judicial foreclosure sale.

3  164. The Defendants falsely represented to Plaintiffs that if they did not pay, Plaintiffs' Home

4  would be sold at a public auction. Such actions were malicious and fraudulent. In fact, if any sale that

5  takes place, it would be void, for the reasons stated herein.

6  165. Plaintiffs allege said NOD and NOTSs were false, void, and without privilege, for the

7  reasons stated and discussed herein.

8  166. At no point in time did the purported proper beneficiaries of the DOT, properly endorse,

9  assign, sell, transfer or in any way convey any perfected security interest in Plaintiffs' Home to any of

10  the Defendants herein.

11  167. As set forth above, at the time Defendants BOFA, TRUST 2007-OH2, SPS, BONY and

12  RECON commenced non-judicial foreclosure proceedings, they had no legal or equitable interest in the

13  Note and DOT, and thus no amount was owed from Plaintiffs to Defendants BOFA, TRUST 2007-OH2,

14  SPS, BONY and RECON or any other purported beneficiary of the Note and DOT.

15  168. In addition to Defendants BOFA, TRUST 2007-OH2, SPS, and BONY never having the

16  legal authority to non-judicially foreclose, any non-judicial foreclosure is void and cancelled as set forth

17  above due to the security interest in the DOT being nullified by the actions of BOFA and SPS.

18  169. Plaintiffs allege that a fraudulent non-judicial foreclosure is void against all parties,

19  including third parties.

20  170. Plaintiffs further allege that any amount allegedly owing under the Note and DOT is

21  offset by the damages owed to them from all Defendants or any of the Doe Defendants in this.

22  171. The tender rule only applies if the non-judicial foreclosure sale was voidable, not void:

23          a. Plaintiffs allege that any non-judicial foreclosure sale would be VOID, not voidable.

24          b. The rule often requiring "tender or return of consideration … is not inflexible"

25  172.  Even where the general rule is that a tender or return of the consideration be made, it has

26  been recognized that the rule is not inflexible and that there are exceptions thereto. The tender-or-return

27  of consideration requirement may not be imposed where it would be inequitable to do so or where the

28  underlying action is for money damages against which the value of the consideration could be set off

1    against a recovery. A Court may also find strict application of the tender rule inequitable, in its sound

2    discretion, to enforce even legally protected rights where the effect would be prejudicial or contrary to

3    public policy.

4        173.   Accordingly, Plaintiffs hereby request this Court for an order holding that any non-

5    judicial foreclosure sale of Plaintiffs' Home would be legally void and conducted without any right or

6    privilege by Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON or any of the Doe

7    Defendants in this matter. Plaintiffs allege that any third parties would not be not bona fide purchasers

8    and therefore the fraud of the other Defendants would void any TDUS issued to third parties.

9        174.   Plaintiffs allege that CC§ 2924.19(g) applies in this case:

10    (g)      The rights, remedies, and procedures provided by this section are in addition to and
independent of any other rights, remedies, or procedures under any other law. Nothing in this section

11    shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

12        175.   Plaintiffs further allege that she may not be limited to money damages as specified in

13    CC§2924.19(b) because the allegations in this SAC are not solely intended as violations of §§2923.5,

14    2924.17 or 2924.18, as specified in the new HBOR legislation.

15                          **FIFTH CAUSE OF ACTION**

16                               **QUIET TITLE**

17              **(Against all DEFENDANTS & DOES 1-100, Inclusive)**

18        176.   Plaintiffs incorporate each and every one of the preceding paragraphs of the SAC into

19    this cause of action, as though fully set forth herein.

20        177.   Plaintiffs allege that at all relevant times mentioned in this FAC, Defendants, and each of

21    them, claim an interest in the Plaintiffs' Home as follows: that they are the title and/or fee simple

22    owner(s) of the Plaintiffs' Home, and/or that each of the Defendants claims to have perfected a

23    beneficial interest, security interest or other legal claim in the Plaintiffs' Home. Some of the unknown

24    Doe Defendants may also claim an interest or interests in the Plaintiffs' Home adverse to Plaintiffs as

25    assignees, successors or otherwise.

26        178.   Assignments of real property within California must be recorded; otherwise there is no

27    uniform method that would operate to provide constructive notice of the transfer. (CC § 2934).

28        179.   "Under California law, to perfect the transfer of mortgage paper as collateral the owner

1  should physically deliver the note to the transferee". California law requires that a promissory note be

2  unambiguously endorsed and physically delivered to the intended assignee. "Without physical transfer,

3  the sale of the note could be invalid as a fraudulent conveyance [pursuant to CCP § 3440] or as

4  unperfected [under California Commercial Code §§ 9313-9314]." Actual ownership and physical

5  possession is a condition of enforcement of a note.

6      180.   An assignment by endorsement and delivery of the note alone may accomplish a transfer

7  of the security, but is insufficient in that it is without the necessity of a formal assignment of the DOT

8  itself, and the DOT securing a note is a mere incident of the debt secured thereby, but an incident with

9  no independent, separate, or separable ascertainable market value.

10      181.   Assignment of a mortgage [DOT] without a transfer of the indebtedness confers no right,

11  since debt and security are inseparable and the mortgage alone is not a subject of transfer. A mortgagee's

12  purported assignment of the mortgage [DOT] without a joint simultaneous transfer of the debt

13  [promissory note] that is secured is a legal nullity. A DOT possesses no assignable quality independent

14  of the debt; it may be neither assigned nor transferred apart from the debt, and any attempt to assign the

15  DOT without a transfer of the debt is without legal effect.

16      182.   "The note and the mortgage are inseparable; the former as essential, the latter as an

17  incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone

18  is a nullity." A DOT is inseparable from the debt and always abides with the debt; alone it is worthless. A

19  DOT possesses no assignable quality independent of the debt; it may be neither assigned nor transferred

20  apart from the debt, and any attempt to assign the trust deed without a transfer of the debt is without

21  legal effect.

22      183.   California statutory law has been designed to protect mortgage borrower's rights in the

23  non-judicial foreclosure context by requiring the recording of any assignment of mortgage to assignee in

24  order for assignee to foreclose non-judicially. The law is not limited in scope only to assignees of

25  mortgage interests, but also applies to successors and assignees under deeds of trust to mandate the

26  recording of any such transfer of interest in order for the event to meet the legal validity necessary to

27  permit non-judicial foreclosure. (CC § 2932.5)

28      184.   The non-judicial foreclosure "process was created long before things such as the

1   secondary market and mortgage brokers existed. When laws were first enacted, lenders 'originated-to-

2   hold' loans for their portfolio and rarely sold mortgage loans." Under the modern scheme, these

3   requirements, by and large, have become the subject of [unlawful] neglect or deliberate [unlawful]

4   omission.

5       185.   A paramount requirement under long-standing traditional principles of property law

6   requires that the DOT was to "follow the Note." There was virtually no exception. In fact, once the

7   original Note and original DOT were physically separated, their mutually dependent existence was

8   terminated and the DOT became a nullity. Such consequence may appear archaic, but this corollary has

9   served an important function since its inception: protection of the parties. This deep-seated imperative

10   remains sound law today. California law intends the same effect. A purported transferee of a Note does

11   not acquire status as "holder" of that Note where the rights were transferred by separate instrument

12   without valid endorsement or negotiation of the subject note.

13       186.   Plaintiffs seek to quiet title against the claims of Defendants BOFA, TRUST 2007-OH2,

14   SPS, BONY, RECON and anyone else claiming an interest in the Plaintiffs' Home. Defendants BOFA,

15   TRUST 2007-HY-05, SPS, BONY, RECON and any successors or assignees have no right to title or

16   interest in the Plaintiffs' Home and no right to entertain any rights of ownership including rights of

17   possession.

18       187.   Plaintiffs seek to quiet title as of May 22, 2014. As alleged above, Plaintiffs contend that

19   any Trustee's Sale hereafter conducted would be *void ab initio*, as a result of the failure to timely place

20   the loan for Plaintiffs' Home into Defendant TRUST 2007-OH2. Plaintiffs further contend that the

21   parties whose signatures appear on the NOD, ADOT and NOTS were not authorized to sign on behalf of

22   any of the Defendants herein. A copy of Plaintiffs' Grant Deed is attached hereto as Exhibit "16" and

23   incorporated herein by this reference.

24       188.   Plaintiffs seek a judicial declaration that the title to Plaintiffs' Home is vested in Plaintiffs

25   alone, that Defendants and each of them be declared to have no interest estate, right, title or interest in

26   the Plaintiffs and that Defendants, their agents and assigns, be forever enjoined from asserting any

27   estate, right title or interest in Plaintiffs' Home.

28       189.   Plaintiffs allege that Defendants, and each of them, failed to acquire any legal ownership

1  or interest in the Plaintiffs' Home on the date of the Trustee's Sale, as parties having no right title or

2  interest in Plaintiffs' Home initiated the Trustee's Sale. Plaintiffs further allege that Defendants, and each

3  of them, allegedly obtained Plaintiffs' Home through fraud and wrongful conduct, and failed to adhere to

4  the strict statutory requirements to initiate any non-judicial foreclosure sale of the Plaintiffs' Home.

5  Thus, any non-judicial foreclosure sale would be void and invalid. Therefore, Plaintiffs bring this action

6  insure title remains in the true owners - Plaintiffs.

7      190.   Accordingly, the Court should rule that Plaintiffs' Home remains Plaintiffs' Home and

8  award consequential damages as proven at trial, but not less than $1,000,000.

9      Wherefore, Plaintiffs pray for judgment against the Defendants, and each of them, jointly and

10  severally, as follows:

11  1.  For an order compelling Defendants BONY as Trustee for TRUST 2007-OH2 and RECON to

12      remove any instrument, including the ADOT, NOD, and NOTS which does or could be construed

13      as constituting a cloud upon Plaintiffs' title to their Home;

14  2.  For a declaratory judgment determining the rights and obligations of the parties as to Plaintiffs'

15      Home, the Note, DOT, or any other matter based on contract or any of the documents prepared in

16      relation to Plaintiffs' Home;

17  3.  For a court finding that Defendants BOFA, TRUST 2007-OH2, SPS, BONY and RECON, acting

18      prior to the institution of non-judicial foreclosure proceedings on Plaintiffs' Home, violated

19      California statutes regarding non-judicial foreclosure procedures, and that these acts were done

20      fraudulently;

21  4.  For a court finding that Defendant BOFA was and is acting in a manner contrary to the mandates

22      set forth in the *United States v. Bank of America, et al* Consent Judgment rendered in the above

23      referenced case in the District of Columbia;

24  5.  For the Court to issue an order restraining all Defendants, their agents, or employees from

25      continuing or initiating any action against Plaintiffs' Home and enjoining all Defendants, their

26      agents, or employees from doing so during the pendency of this matter;

27  6.  For a declaration that Plaintiffs are the true and rightful owner of the Plaintiffs' Home;

28  7.  For issuance of an Order canceling the NOD, ASOT, and the NOTS;

1    8.  For issuance of an Order quieting title in favor of Plaintiffs and against Defendants;

2    9.  For compensatory, special and general damages in an amount according to proof at trial, but not

3        less than $1,000,000, against all Defendants;

4    10. For punitive damages in an amount to be determined by the Court against all Defendants;

5    11. Pursuant to B&P Code § 17203, that all Defendants, their successors, agents, representatives,

6        employees, and all persons who act in concert with them be permanently enjoined from

7        committing any acts of unfair competition in violation of B & P Code §§ 17200 et al, including,

8        but not limited to, the violations alleged herein;

9    12. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees

10       according to proof;

11   13. For reasonable attorney's fees and costs;

12   14. For reasonable costs of suit and such other and further relief as the Court deems proper.

13   Date: January 23, 2015             By: _____
14                                           Mazen Salfiti, Esq.,
                                            Attorney for Plaintiffs, Deborah and Jim Ray
15

16                                   DEMAND FOR JURY TRIAL
17

18   Plaintiffs, Deborah and Jim Ray, hereby demand a trial by jury on all claims.
19

20   Date: January 23, 2015             By: _____
21                                           Mazen Salfiti, Esq.,
                                            Attorney for Plaintiffs, Deborah and Jim Ray
22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT
Page 40 of 40

## VERIFICATION

1

2      I, Deborah Ann Ray, Plaintiff in the above-entitled action, declare:

3      I have read the foregoing Second Amended Complaint and know the contents thereof. The same

4   is true of my own knowledge, except as to those matters alleged on information and belief, and as to

5   those matters, I believe them to be true.

6      I declare under penalty of perjury under the laws of the State of California that the foregoing is

7   true and correct and that this declaration was executed at Shingle Springs, California.

8   Dated: January 23, 2015                    By: _____/s/_____

9                                                   DEBORAH ANN RAY, Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**VERIFICATION**</u>

I, James Wilfred Ray, Plaintiff in the above-entitled action, declare:

I have read the foregoing Second Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at Shingle Springs, California.

Dated: January 23, 2015                    By: _____/S/_____
                                                JAMES WILFRED RAY, Plaintiff

**EXHIBIT C**

EL DORADO CO. SUPERIOR CT.

FILED    MAR 1 1 2016

BY    E. Dean

Deputy

1   THOMAS A. WOODS (SB #210050)
    tawoods@stoel.com
2   BRYAN L. HAWKINS (SB #238346)
    blhawkins@stoel.com
3   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
4   Sacramento, CA 95814
    Telephone: (916) 447-0700
5   Facsimile: (916) 447-4781

6   Attorneys for Defendants
    Select Portfolio Servicing, Inc. and The Bank of
7   New York Mellon FKA the Bank of New York, as
    Trustee for the Certificateholders of CWALT, Inc.,
8   Alternative Loan Trust 2007-OH2, Mortgage Pass-
    Through Certificate, Series 2007-OH2
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF EL DORADO

12   DEBORAH ANN RAY and JAMES        CASE NO. PC 20130578
     WILFRED RAY, individuals,
13                                    [PROPOSED] ORDER SUSTAINING
                Plaintiffs,           DEFENDANTS SELECT PORTFOLIO
14                                    SERVICING, INC. AND THE BANK OF
                                      NEW YORK MELLON FKA THE
15         v.                         BANK OF NEW YORK, AS TRUSTEE
                                      FOR THE CERTIFICATEHOLDERS
16   SELECT PORTFOLIO SERVICING, INC., in   OF CWALT, INC., ALTERNATIVE
     its capacity as servicer; BANK of AMERICA,   LOAN TRUST 2007-OH2, MORTGAGE
17   N.A., a business entity unknown; THE BANK   PASS-THROUGH CERTIFICATE,
     OF NEW YORK MELLON FKA THE BANK   SERIES 2007-OH2'S DEMURRER TO
18   OF NEW YORK, INDIVIDUALLY AND AS   PLAINTIFFS' SECOND AMENDED
     TRUSTEE FOR THE                   COMPLAINT WITHOUT LEAVE TO
19   CERTIFICATEHOLDERS OF CWALT,      AMEND
     INC., ALTERNATIVE LOAN TRUST 2007-
20   OH2, MORTGAGE PASS-THROUGH
     CERTIFICATE, SERIES 2007-OH2, a   Hearing Date:
21   business entity unknown; RECONTRUST   Date:    February 26, 2016
     COMPANY, ALL PERSONS UNKNOWN,     Time:    8:30 a.m.
22   CLAIMING ANY LEGAL OR EQUITABLE   Dept:    9
     RIGHT, TITLE, ESTATE, LIEN, OR    Judge:   Warren C. Stracener
23   EQUITABLE INTEREST IN THE
     PROPERTY DESCRIBED IN THE
24   COMPLAINT ADVERSE TO PLAINTIFFS'
     TITLE, OR ANY CLOUD ON PLAINTIFFS'
25   TITLE THERETO and, DOES, 1 THROUGH
     100, inclusive,
26
                Defendants.
27

28

FILED BY FAX

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

                            [PROPOSED] ORDER

81790535.1 0052161-01775

1        **[PROPOSED] ORDER**

2        On February 26, 2016, at 8:30 a.m., in Department 9 of the above-entitled Court located at

3    3321 Cameron Park Drive, Cameron Park, California 95682, Defendants Select Portfolio

4    Servicing, Inc. and The Bank of New York Mellon FKA the Bank of New York, as Trustee for

5    the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OH2, Mortgage Pass-

6    Through Certificate, Series 2007-OH2's ("Defendants") demurrer to Plaintiffs Deborah Ann Ray

7    and James Wilfred Ray's Second Amended Complaint came on for hearing.

8        Upon consideration of the pleadings, papers, the arguments of counsel, and with good

9    cause shown, the Court finds as follows:

10       After sustaining the demurrers to the 1st amended complaint with ten days leave to

11   amend, plaintiffs filed a 2nd amended complaint asserting causes of action to cancel instruments,

12   for violation of the homeowner bill of rights, for violation of Business and Professions Code, §§

13   17200, et seq, wrongful foreclosure, and to quiet title.

14       Defendants Bank of New York Mellon and Select Portfolio Servicing, Inc. demur to all

15   causes of action on the following grounds: the wrongful foreclosure and quiet title causes of

16   action are fatally defective in that they fail to allege credible tender; plaintiffs have failed to

17   allege how they were prejudiced by any alleged flaw in the foreclosure proceedings and any harm

18   was caused by the plaintiffs' inability to make the mortgage payments; plaintiffs lack standing to

19   assert a challenge to their foreclosure on an alleged "flawed" transfer or securitization of their

20   loan to the Trust; the robo-signing allegation does not apply to the moving defendants; to the

21   extent that plaintiffs seek to cancel the 2012 notices of trustee's sale, the claims are moot, because

22   Civil Code, § 2924g(c)(2) provides that a notice of trustee's sale is only valid for a period of 365

23   days and more than 365 days have elapsed since they were recorded; plaintiffs fail to allege

24   sufficient facts to support the alleged information and belief that the documents were robo-signed

25   and plaintiffs failed to allege harm from the alleged robo-signing; the Homeowners' Bill of

26   Rights statutes (HBOR) does not apply to the foreclosure documents, because those documents

27   predate the effective date of the HBOR statutes; the HBOR violation cause of action is defective

28   in that plaintiffs have not alleged a specific provision that was violated, there is no requirement to

1    produce the note, there is no requirement to prove authority to foreclose prior to initiating

2    nonjudicial foreclosure proceedings, and there is no explicit requirement of personal knowledge

3    to execute a declaration of due diligence that is required under Civil Code, § 2923.5; inasmuch as

4    the Unfair Business Practices, wrongful foreclosure, and quiet title causes of action are based on

5    an alleged improper foreclosure, those causes of action also fail due to the failure to allege an

6    improper foreclosure; and the quiet title cause of action fails, because plaintiffs have not set forth

7    sufficient facts to support their claim to title to the subject property. Defendants request that the

8    demurrers be sustained without leave to amend.

9        Plaintiffs oppose the demurrers on the following grounds: plaintiffs have validly rescinded

10   the note and deed of trust by mailing a notice of rescission under the Truth in Lending Act on

11   August 5, 2015, thereby leaving defendants without standing or capacity to defend the action; the

12   demurrers are invalid, because there is no verification signed under penalty of perjury filed with

13   the court, which states that the defense attorneys are authorized to speak for the demurring

14   parties; and there is no valid loan contract, because none of the defendants signed the deed of

15   trust, therefore, defendants Bank of New York Mellon and Select Portfolio Servicing, Inc. have

16   no standing.

17       Defendants Bank of New York Mellon and Select Portfolio Servicing, Inc. replied to the

18   opposition.

19       Amicus Briefs Filed in Other Cases

20       Plaintiff filed a nine page memorandum of points and authorities in opposition to the

21   motion. In that memorandum, plaintiff incorporated by reference legal arguments, points, and

22   authorities contained within two amicus briefs filed in an appeal to the Supreme Court concerning

23   another case, consisting of 45 pages. The opposition is limited by Rules of Court, Rule 3.1113(d)

24   to 15 pages. Although exhibits are not included in that page limitation, the court finds that

25   attaching legal briefs as exhibits and then incorporating them by reference is a transparent attempt

26   to circumvent the 15 page limitation for points and authorities in opposition. The court declines

27   the plaintiffs' invitation to consider the additional points and authorities in the amicus legal briefs

28   attached as exhibits.

1    "Contract" with the Court

2        Plaintiffs contend that there is a valid "contract" between the plaintiffs and the court for a

3    fair, just and valid administration of the law and justice. Plaintiffs argue without citation to any

4    authority that defense counsel is mandated to submit declarations executed by each of the

5    defendants under penalty of perjury that confirm that defense counsel was authorized to represent

6    the defendants in order for the court to consider the demurrers on their merits.

7        The court rejects this line of argument.

8    Standing of Defendants

9        Plaintiffs argue without any citation to authority that defendants Bank of New York

10   Mellon and Select Portfolio Servicing, Inc. cannot prove standing or consideration, because there

11   was no signed contract by any alleged lender or any defendant in this matter that obligates

12   plaintiff to any party in this action.

13       The plaintiffs essentially admit they executed the subject deed of trust wherein they

14   confirmed their obligation under a promissory note to repay the principal amount of $670,000 and

15   that the deed of trust secured that note. Plaintiffs allege in paragraph 11 of the 2nd amended

16   complaint that they executed that promissory note and concede in paragraph 84 that plaintiffs are

17   not seeking resolution of the question of whether or how much they may owe on the loan, thereby

18   admitting that they received a loan as consideration for the execution of the binding deed of trust.

19       The court rejects the argument that there is no lender who can enforce the deed of trust

20   merely because the deed of trust is only executed by borrowers who concede they obligated

21   themselves to repay a $670,000 loan represented by a promissory note.

22       Furthermore, as named defendants in this action, Bank of New York Mellon and Select

23   Portfolio Servicing, Inc. have standing to demur to the 2nd amended complaint.

24   Exhibits Attached to 2nd Amended Complaint

25       The court notes the following documents attached as exhibits to the 2nd amended

26   complaint: the subject deed of Trust, which was recorded on May 25, 2007, which expressly

27   provides that MERS is the beneficiary of the deed of trust (2nd Amended Complaint, Exhibit 1.);

28   the assignment of the deed of trust, which was recorded on June 24, 2011, is executed by MERS,

1    and states the deed of trust was assigned to Bank of New York Mellon (2nd Amended Complaint,

2    Exhibit 11.); the substitution of trustee executed by Bank of New York Mellon was recorded on

3    October 5, 2011 and designates Recontrust as the new trustee of the deed of trust (2nd Amended

4    Complaint, Exhibit 5.); the notice of default executed by Recontrust as agent for the beneficiary,

5    which was recorded on October 5, 2011 (2nd Amended Complaint, Exhibit 8.); the notice of

6    trustee's sale executed by Recontrust, which was recorded on January 13, 2012 (2nd Amended

7    Complaint, Exhibit 9.); and the notice of trustee's sale executed by Recontrust, which was

8    recorded on December 12, 2012 (2nd Amended Complaint, Exhibit 10.).

9        In ruling on a demurrer, the court can consider the facts appearing in exhibits attached to

10   the complaint. (*Picton v. Anderson Union High School Dist.* (1996) 50 Cal.App.4th 726, 733.)

11       <u>Truth in Lending Act (TILA) and Purported Rescission of Note and Deed of Trust</u>

12       Plaintiffs contend the recent U.S. Supreme Court case opinion in *Jesinoski v. Countrywide*

13   *Home Loans, Inc.* (2015) – U.S. – , 135 S.Ct. 790 supports their argument that their alleged

14   mailing of a notice of rescission letter to defendant Bank of New York Mellon, defendant Select

15   Portfolio Servicing, Inc., and others on August 5, 2015 and the passage of 20 days without

16   defendants providing documentation that establish proper TILA disclosures were provided to

17   plaintiffs in relation to the subject loan transaction automatically renders the deed of trust and

18   promissory note void and unenforceable.

19       Under the Truth in Lending Act (TILA) borrowers have a statutory conditional right to

20   rescind a loan transaction for up to three years after the consummation of the transaction and are

21   not required to tender the loan amount in order to effectuate the rescission under the provisions of

22   TILA. The three year period is not a statute of limitations preventing a lawsuit from being filed

23   more than three years after the transaction is consummated. Only notice of rescission as provided

24   in TILA is required within three years. The Supreme Court recently held: "The Truth in Lending

25   Act gives borrowers the right to rescind certain loans for up to three years after the transaction is

26   consummated. The question presented is whether a borrower exercises this right by providing

27   written notice to his lender, or whether he must also file a lawsuit before the 3–year period

28   elapses. On February 23, 2007, petitioners Larry and Cheryle Jesinoski refinanced the mortgage

1  on their home by borrowing $611,000 from respondent Countrywide Home Loans, Inc. Exactly
2  three years later, on February 23, 2010, the Jesinoskis mailed respondents a letter purporting to
3  rescind the loan. Respondent Bank of America Home Loans replied on March 12, 2010, refusing
4  to acknowledge the validity of the rescission. On February 24, 2011, the Jesinoskis filed suit in
5  Federal District Court seeking a declaration of rescission and damages. Respondents moved for
6  judgment on the pleadings, which the District Court granted. The court concluded that the Act
7  requires a borrower seeking rescission to file a lawsuit within three years of the transaction's
8  consummation. Although the Jesinoskis notified respondents of their intention to rescind within
9  that time, they did not file their first complaint until four years and one day after the loan's
10  consummation. 2012 WL 1365751, *3 (D.Minn., Apr. 19, 2012). The Eighth Circuit affirmed.
11  729 F.3d 1092, 1093 (2013) (per curiam ).

12       Congress passed the Truth in Lending Act, 82 Stat. 146, as amended, to help consumers
13  "avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair
14  credit billing." 15 U.S.C. § 1601(a). To this end, the Act grants borrowers the right to rescind a
15  loan "until midnight of the third business day following the consummation of the transaction or
16  the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor,
17  in accordance with regulations of the [Federal Reserve] Board, of his intention to do so." §
18  1635(a) (2006 ed.).* This regime grants borrowers an unconditional right to rescind for three
19  days, after which they may rescind only if the lender failed to satisfy the Act's disclosure
20  requirements. But this conditional right to rescind does not last forever. Even if a lender never
21  makes the required disclosures, the "right of rescission shall expire three years after the date of
22  consummation of the transaction or upon the sale of the property, whichever comes first." §
23  1635(f). The Eighth Circuit's affirmance in the present case rested upon its holding in *Keiran v.*
24  *Home Capital, Inc.*, 720 F.3d 721, 727–728 (2013) that, unless a borrower has filed a suit for
25  rescission within three years of the transaction's consummation, § 1635(f) extinguishes the right
26  to rescind and bars relief. That was error. Section 1635(a) explains in unequivocal terms how the
27  right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind ... by
28  notifying the creditor, in accordance with regulations of the Board, of his intention to do so "

1   (emphasis added). The language leaves no doubt that rescission is effected when the borrower

2   notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies

3   within three years after the transaction is consummated, his rescission is timely. The statute does

4   not also require him to sue within three years.  Nothing in § 1635(f) changes this conclusion.

5   Although § 1635(f) tells us when the right to rescind must be exercised, it says nothing about how

6   that right is exercised. Our observation in *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 118

7   S.Ct. 1408, 140 L.Ed.2d 566 (1998), that § 1635(f) "govern[s] the life of the underlying right" is

8   beside the point. That case concerned a borrower's attempt to rescind in the course of a

9   foreclosure proceeding initiated six years after the loan's consummation. We concluded only that

10  there was "no federal right to rescind, defensively or otherwise, after the 3-year period of §

11  1635(f) has run," id., at 419, 118 S.Ct. 1408, not that there was no rescission until a suit is filed.

12  Respondents do not dispute that § 1635(a) requires only written notice of rescission. Indeed, they

13  concede that written notice suffices to rescind a loan within the first three days after the

14  transaction is consummated. They further concede that written notice suffices after that period if

15  the parties agree that the lender failed to make the required disclosures. Respondents argue,

16  however, that if the parties dispute the adequacy of the disclosures—and thus the continued

17  availability of the right to rescind—then written notice does not suffice.  Section 1635(a) nowhere

18  suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit

19  would be required for the latter." (Emphasis added.) (*Jesinoski v. Countrywide Home Loans, Inc.*

20  (2015) – U.S. – 135 S.Ct. 790, 791-792.)

21          Plaintiffs admit that the subject note was executed by them on or around May 18, 2007

22  and it was secured by a deed of trust. (2nd Amended Complaint, paragraph 11.) The deed of trust

23  is attached as Exhibit 1 to the 2nd amended complaint, is executed by plaintiffs, and was recorded

24  on May 25, 2007. Over eight years after the loan transaction was consummated, plaintiffs

25  allegedly served their notice of rescission under the provisions of TILA. Jesinoski, supra,

26  expressly states that the notice of rescission must be provided within three years of consummation

27  of the transaction. The plaintiff's rescission is admittedly untimely and provides no basis to

28  support the claims in the 2nd amended complaint. The untimely notice of rescission also provides

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-6-

[PROPOSED] ORDER

1    no basis for granting leave to amend the 2nd amended complaint to state a cause of action for

2    rescission under TILA.

3         Plaintiffs Lack Standing to Raise the Issue of the Validity of the Assignment of Their

4    Deed of Trust to a Securitized Trust.

5         The opinion of the California Court of Appeal, 4th District in *Jenkins v. JP Morgan Chase*

6    *Bank, N.A.* (2013) 216 Cal.App.4th 497 found that borrowers, as unrelated third parties to the

7    alleged securitization and any other subsequent transfers of the beneficial interest under the

8    promissory note, lacked standing to enforce any agreements relating to such transactions,

9    including the investment trust's pooling and servicing agreement. (*Jenkins v. JP Morgan Chase*

10   *Bank, N.A.* (2013) 216 Cal.App.4th 497, 515.)

11        In affirming a New York U.S. District Court judgment of dismissal of an action brought

12   by several borrowers, the U.S. Court of Appeals, Second Circuit, recently held that the weight of

13   the New York authorities on the subject have found that a failure to assign a deed of trust in a

14   manner that complies with the requirements to create the securitized trust and/or trust agreement

15   does not result in a void assignment that gives the borrower who executed the subject deed of

16   trust standing to challenge that assignment, even where the borrower seeks restitution of loan

17   payments the borrower allegedly made to the party to whom the deed of trust was allegedly

18   invalidly assigned. The Second Circuit found that the weight of New York legal authorities on the

19   issue essentially held that the trustee's conduct resulted in an assignment that was merely

20   voidable, and not void, and the trust pool beneficiaries could consent to or ratify the allegedly

21   unauthorized acceptance of the assignment of the deeds of trust by acceptance of the trustee's act

22   and/or agreement with the act and such acceptance and/or agreement may be given either after or

23   before the trustee's act. (*Rajamin v. Deutsche Bank Nat. Trust Co.* (2nd Cir. 2014) 757 F.3d 79,

24   83, 87-89.)

25        The Second Circuit in *Rajamin*, supra, faced an alleged situation wherein the plaintiffs

26   were persons who owned homes in California that were subject to over $3.7 million in deeds of

27   trust that were assigned to Deutsche Bank, which were allegedly fatally defective for the

28   following alleged reasons: the assignments allegedly failed to comply with the provisions of the

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-7-

81790535.1 0052161-01775

1   assignment agreements; the plaintiffs' deeds of trust were not specifically listed in mortgage loan

2   schedules or other attachments to the assignment agreements; the assignments by First Franklin to

3   Deutsche Bank of four of plaintiffs' deeds of trust were executed and publicly recorded in 2009 or

4   2010, after First Franklin had ceased operations and years after the securitization transactions

5   took place; and two of the pooling and service agreement provisions concerning the documents

6   that were to accompany the conveyance of loans and mortgages to the trusts were not complied

7   with at the time of the securitization transactions. (*Rajamin v. Deutsche Bank Nat. Trust Co.* (2nd

8   Cir. (N.Y.), 2014) 757 F.3d 79, 81-83.)

9        The Second Circuit held: "In an effort to circumvent their lack of standing to make their

10   contract arguments, plaintiffs argue that assignments failing to comply with the PSAs violated

11   laws governing trusts. They rely on a New York statute that provides: "If the trust is expressed in

12   the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee

13   in contravention of the trust, except as authorized by ... law, is void." N.Y. Estates, Powers and

14   Trusts Law ("EPTL") § 7–2.4 (McKinney 2002). Here, the PSAs are the instruments creating the

15   trust estates, and plaintiffs argue that the PSAs were "contraven[ed]" by the Trustee's acceptance

16   of mortgage loans conveyed in a manner that did not comply with the procedural formalities that

17   the PSAs specified, thereby rendering those conveyances void under the statute. (E.g., Plaintiffs'

18   brief on appeal at 12.) Plaintiffs' reliance on trust law is misplaced. First, as the district court

19   concluded, this argument depends on plaintiffs' contention that parties to the assignment

20   agreements violated the terms of the PSAs. If those agreements were not breached, there is no

21   foundation for plaintiffs' contention that any act by the trusts' trustee was unauthorized. But as

22   discussed above, plaintiffs, as nonparties to those contracts, lack standing to assert any

23   nonperformance of those contracts.  Second, under New York law, only the intended beneficiary

24   of a private trust may enforce the terms of the trust. *See, e.g., Matter of the Estate of McManus*,

25   47 N.Y.2d 717, 719, 417 N.Y.S.2d 55, 56, 390 N.E.2d 773 (1979) (" *McManus* ") (persons who

26   "were not beneficially interested in the trust ... lack[ed] standing to challenge the actions of its

27   trustee"); *Cashman v. Petrie*, 14 N.Y.2d 426, 430, 252 N.Y.S.2d 447, 450, 201 N.E.2d 24 (1964)

28   (mere incidental beneficiaries of a trust "cannot maintain a suit to enforce the trust"); *Naversen v.*

1    *Gaillard*, 38 A.D.3d 509, 509, 831 N.Y.S.2d 258, 259 (2d Dep't 2007); *see also* Restatement

2    (Third) of Trusts § 94(1) (2012) ("A suit against a trustee of a private trust to enjoin or redress a

3    breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a

4    co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."); *cf.*

5    *Rajamin's California case*, 2012 WL 5448401, at *2 ("A homeowner who gives a deed of trust to

6    secure his repayment of a home loan does not have standing to challenge the foreclosing party's

7    authority to act on behalf of the deed of trust's beneficiary."). Where the challengers to a trustee's

8    actions are not beneficiaries, and hence lack standing, the court "need not decide whether the

9    conduct of the trustee comported with the terms of the trust." *McManus*, 47 N.Y.2d at 719, 417

10   N.Y.S.2d at 56, 390 N.E.2d 773. Third, even if plaintiffs had standing to make an argument

11   based on EPTL § 7-2.4, on the theory that a mortgagor has standing to "challenge[ ] a mortgage

12   assignment as invalid, ineffective, or void," *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354

13   (1st Cir.2013) (internal quotation marks omitted), the weight of New York authority is contrary to

14   plaintiffs' contention that any failure to comply with the terms of the PSAs rendered defendants'

15   acquisition of plaintiffs' loans and mortgages void as a matter of trust law. Under New York law,

16   unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries. See

17   *King v. Talbot*, 40 N.Y. 76, 90 (1869) ("[t]he rule is perfectly well settled, that a cestui que trust is

18   at liberty to elect to approve an unauthorized investment, and enjoy its profits, or to reject it at his

19   option"); *Mooney v. Madden*, 193 A.D.2d 933, 933–34, 597 N.Y.S.2d 775, 776 (3d Dep't) ("

20   Mooney ") ("A trustee may bind the trust to an otherwise invalid act or agreement which is

21   outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the

22   trustee's ultra vires act or agreement ...."), lv. dismissed, 82 N.Y.2d 889, 610 N.Y.S.2d 153, 632

23   N.E.2d 463 (1993); *Washburn v. Rainier*, 149 A.D. 800, 803–04, 134 N.Y.S. 301, 304 (2d Dep't

24   1912); *Hine v. Hine*, 118 A.D. 585, 592, 103 N.Y.S. 535, 540 (4th Dep't 1907); *English v.*

25   *McIntyre*, 29 A.D. 439, 448–49, 51 N.Y.S. 697, 704 (1st Dep't 1898) ("where the trustee has

26   engaged with the trust fund in an unauthorized business ... the rule is that the cestui que trust may

27   ratify the transactions of the trustee and take the profits, if there are profits"). Moreover,

28   "beneficiary consent may be express or implied from the acceptance of the trustee's act or

1    agreement and may be given either after or before the trustee's act ...." *Mooney*, 193 A.D.2d at

2    934, 597 N.Y.S.2d at 776. To be an effective ratification, however, "all of the beneficiaries" must

3    "expressly or impliedly" agree. *Id.* at 933, 597 N.Y.S.2d at 776; see also id. at 934, 597 N.Y.S.2d

4    at 776 (remanding for determination of whether "remainder persons who also [we]re

5    beneficiaries" had "consented ... and/or ratified"). The principle that a trustee's unauthorized acts

6    may be ratified by the beneficiaries is harmonious with the overall principle that only trust

7    beneficiaries have standing to claim a breach of trust. If a stranger to the trust also had such

8    standing, the stranger would have the power to interfere with the beneficiaries' right of

9    ratification. Because, as the above authorities demonstrate, a trust's beneficiaries may ratify the

10   trustee's otherwise unauthorized act, and because "a void act is not subject to ratification,"

11   *Aronoff v. Albanese*, 85 A.D.2d 3, 4, 446 N.Y.S.2d 368, 370 (2d Dep't 1982), such an

12   unauthorized act by the trustee is not void but merely voidable by the beneficiary." (*Rajamin v.*

13   *Deutsche Bank Nat. Trust Co.* (2nd Cir. 2014) 757 F.3d 79, 87-89.)

14          The plaintiffs do not have standing to challenge the assignment of the deed of trust to the

15   Bank of New York Mellon, which was recorded on June 24, 2011. Therefore, plaintiffs have no

16   standing to claim that the assignment is void, or that the assignment and documents dependent

17   upon such an assignment are subject to cancellation as being void.

18          <u>Cancellation of Instruments Cause of Action</u>

19          There does not appear to be sufficient allegations of fact to support the claims of lack of

20   authority and forgery of the documents sought to be cancelled.

21          Plaintiffs seek to have cancelled the following recorded instruments: the assignment of the

22   deed of trust, the substitution of trustee, the notice of default, and the two notices of trustee's sale.

23   Plaintiffs allege: plaintiffs executed a promissory in the amount of $670,000 and the note is

24   secured by the subject deed of trust; the substitution of trustee was not signed by a person with

25   authority to sign it on behalf of Bank of New York Mellon, because the signatory, T. Sevillano,

26   appears to work for Recontrust; Sevillano can not be a co-agent for any of the bank defendants,

27   therefore, her signature is unauthorized and fraudulently recorded; the substitution of trustee was

28   not signed by T. Sevillano and was a forgery, because other documents were executed in different

1   manners, sometimes by initials "T.S." and sometimes by "T. Sevillano"; the notary signature on

2   the substitution of trustee is forged as established by comparison of the notary signature in

3   Exhibit 5, the substitution of trustee, and the signature of the notary on another document attached

4   as Exhibit 7; T. Sevillano is a known robo-signer, defendants Bank of New York Mellon and

5   Bank of America never appointed T. Sevillano as an assistant vice-president, and Sevillano is an

6   employee of Recontrust; plaintiff is free to allege forgery as a lay person without having to

7   support the allegation with an expert reviewing the alleged forged signatures; there was no legal

8   transfer of the deed of trust to defendant Bank of New York; the subject loan was sold to

9   CWALT, Inc. acting as depositor for securitization of the loan and placement of the loan in the

10   exact same securitized trust as the loan was assigned to when assigned to the Bank of New York

11   Mellon Trust; the sale of the loan to another entity left defendants Bank of America, Bank of New

12   York and Recontrust without authority to initiate and conduct nonjudicial foreclosure

13   proceedings; Mercedes Judilla who executed the assignment of deed of trust was not assistant

14   secretary of MERS, she appears to be employed by Bank of America, and was not authorized to

15   execute the assignment; Mercedes Judilla is a robo-signer; the pooling and servicing agreement

16   was violated by the transfer of the deed of trust to Bank of New York Mellon, therefore, the

17   assignment is invalid; the failure to effectuate the assignment of the deed of trust within 20 days

18   of the actual transfer of the deed of trust violated Commercial Code, § 9-312 [sic], which

19   rendered the deed of trust null and void and the debt unsecured; the notice of default and notice of

20   sale are invalid, because the note secured by the deed of trust could not and was not assigned to

21   the Bank of New York Mellon; the Bank of New York Mellon not being assigned the deed of

22   trust or note, it was not authorized to exercise the power of sale; Recontrust is not defendant Bank

23   of America's trustee, mortgagee, beneficiary or authorized agent and the notice of default was

24   signed without authority by someone who was not an agent of defendant Bank of New York

25   Mellon; and the notices of sale are similarly void due to lack of authority of Recontrust. (2nd

26   Amended Complaint, paragraphs, 11, 44-53, 62, 64-80, and 95-101.)

27

28

1    In ruling on demurrers, the court need not treat as true contentions, deductions or

2  conclusions of fact or law. (*Picton v. Anderson Union High School Dist.* (1996) 50 Cal.App.4th

3  726, 732-733.)

4    <u>Commercial Code Provisions are Inapplicable to Nonjudicial Foreclosure Proceeding.</u>

5    The allegations that Commercial Code, § 9-312 [sic] was violated, thereby making the

6  deed of trust null and void and the debt unsecured by operation of law do not support cancellation

7  of the deed of trust or any of the other recorded documents. The provisions of the Commercial

8  Code simply do not apply to nonjudicial foreclosure proceedings.

9    The court presumes that plaintiffs are referring to Commercial Code, § 9312 related to the

10  perfection of security interests in chattel paper, deposit accounts, documents, goods covered by

11  documents, instruments, investment property, letter of credit rights, money, and insurance.

12    An appellate court has stated the following with regards to claims that the Commercial

13  Code negotiable instruments provisions concerning possession of the note apply to nonjudicial

14  foreclosure proceedings: "As the parties recognize, many federal courts have rejected this

15  position, applying California law. All have noted that the procedures to be followed in a

16  nonjudicial foreclosure are governed by sections 2924 through 2924k, which do not require that

17  the note be in the possession of the party initiating the foreclosure. (*See, e.g., Geren v. Deutsche*

18  *Bank National* (E.D.Cal.2011) 2011 WL 3568913; *Kolbe v. JP Morgan Chase Bank, N.A.*

19  (N.D.Cal.2011) 2011 WL 4965065; *Hague v. Wells Fargo Bank, N.A.* (N.D.Cal.2011) 2011 WL

20  3360026, 3; *Impink v. Bank of America* (S.D.Cal.2011) 2011 WL 3903197.) We likewise see

21  nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not

22  possess the original promissory note. They set forth "a comprehensive framework for the

23  regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of

24  trust. The purposes of this comprehensive scheme are threefold: (1) to provide the

25  creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting

26  debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to

27  ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide

28  purchaser." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal.Rptr.2d 777.) Notably,

section 2924, subdivision (a)(1), permits a notice of default to be filed by the "trustee, mortgagee, or beneficiary, or any of their authorized agents." The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid. Plaintiff's reliance on the Commercial Code provisions pertaining to negotiable instruments is misplaced. "The comprehensive statutory framework established [in sections 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive." (*Moeller v. Lien*, supra, 25 Cal.App.4th at p. 834, 30 Cal.Rptr.2d 777; *see also I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285, 216 Cal.Rptr. 438, 702 P.2d 596 ["These provisions cover every aspect of exercise of the power of sale contained in a deed of trust"].) "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." (*Lane v. Vitek Real Estate Indus. Group* (E.D.Cal.2010) 713 F.Supp.2d 1092, 1098; accord, *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154–1157, 121 Cal.Rptr.3d 819 [no statutory right to sue to determine authority of a lender's nominee to initiate foreclosure; and in any event, plaintiff agreed in deed of trust that nominee had such authority].) "There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale." (*Lane v. Vitek Real Estate Indus. Group*, supra, 713 F.Supp.2d at p. 1099.) Likewise, we are not convinced that the cited sections of the Commercial Code (particularly section 3301) displace the detailed, specific, and comprehensive set of legislative procedures the Legislature has established for nonjudicial foreclosures. (*See Spence v. Wells Fargo Bank*, 16 N.A., 2011 WL 1668320, at 2 (E.D.Cal. May 03, 2011) [Commercial Code section 3301 has "no application in the instant context of real property financing"]; accord, *Das v. WMC Mortg. Corp.* (N.D.Cal.2011) 2011 WL 2847412, 2011 U.S. Dist. LEXIS 77414; *see also Padayachi v. IndyMac Bank* (N.D.Cal.2010) 2010 WL 4367221, 2010 U.S. Dist. LEXIS 120963 ["Although Article 3 of the UCC governs negotiable instruments, it does not apply to nonjudicial foreclosure under deeds of trust"]; accord, *Germon v.*

-13-

1    *BAC Home Loans Servicing, L.P.* (S.D.Cal.2011) 2011 WL 719591, 2011 U.S. Dist. LEXIS

2    17084.)" (Emphasis added.) (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th

3    433, 440-441.)

4         The same rationale holds true with regards to the Commercial Code provisions concerning

5    perfection of security interests in chattel paper, deposit accounts, documents, goods covered by

6    documents, instruments, investment property, letter of credit rights, money, and insurance. The

7    plaintiffs have not cited any authority and the court is unable to find anywhere in the

8    comprehensive statutory framework established for nonjudicial foreclosure proceedings any

9    authority for the proposition that an assignment of a deed of trust must be recorded within 20 days

10   of the actual transfer of the deed of trust or by operation of law the security is rendered null and

11   void and the power of sale agreed to in that recorded deed of trust becomes unenforceable,

12   leaving the debt unsecured. Commercial Code, § 9312 does not displace the exhaustive, detailed,

13   specific, and comprehensive set of legislative procedures the Legislature has established for

14   nonjudicial foreclosures. Therefore, any alleged failure to assign the deed of trust within 20 days

15   of the actual transfer of the deed of trust does not make the assignment void on its face or provide

16   any basis for cancellation of the assignment or the underlying deed of trust.

17        Conclusions of Law or Fact Unsupported by Allegations of Fact

18        Claims of forgery, robo-signing, and lack of authority are conclusions of fact or law.

19   There are no allegations of fact in the 2nd amended complaint that allege the subject signatures

20   on the specific recorded documents related to the foreclosure proceedings involving plaintiff's

21   property were examined by an expert and found to be forgeries. Plaintiff merely supports the

22   conclusion of forgery based upon inviting the lay comparison of signatures and a legal conclusion

23   that plaintiff need not justify such a conclusion by reference to the manner and method of how

24   plaintiffs came to the conclusion that the signatures were forgeries. (See 2nd Amended

25   Complaint, paragraphs 44-50.) The 2nd amended complaint fails to allege that the signatures on

26   any of the document exemplars were examined by experts and found to be the person's signature

27   and that signature is inconsistent with the signatures on the recorded documents that are the

28   subject of this litigation. There are no allegations of fact that the signatures on one or more of the

1   exemplar exhibits to the complaint are the true signatures to be compared with the signatures of

2   the persons on the documents recorded related to the foreclosure proceedings that are the subject

3   of this action. The allegations of the complaint just conclude that the subject recorded documents

4   are forgeries and point to signatures on other documents involving other properties. The

5   allegations of fact and the exhibits are insufficient to support the conclusion of forgery.

6          In addition, the allegations of lack of agency and lack of authority are mere legal

7   conclusions that must be supported by sufficient factual allegations. The allegations fall short of

8   supporting such conclusions.

9          <u>Alleged Robo- Signing</u>

10         Even assuming for the sake of argument only that the allegations are sufficient to support

11  a claim of robo-signing and signing the assignment by different persons using the same name,

12  plaintiffs lack standing to raise that as a ground to invalidate the assignment.

13         The U.S. District Court, Central District of California held that even where different

14  surrogates executed documents using the same name without reading or understanding them, the

15  borrowers lacked standing to challenge the recorded assignment, substitution of trustee and notice

16  of trustee's sale, because the borrowers were not parties to the assignment and suffered no

17  damages as a result of the "robo-signing" due to an admission by the borrowers that they were in

18  default on their loan and would have lost their property in foreclosure anyway. The District Court

19  stated: "Javaheri contends finally that the Substitution of Trustee is invalid because it was robo-

20  signed. (SAC ¶ 39.) According to Javaheri, surrogate signers allegedly signed several documents

21  on behalf of and in the name of Deborah Brignac, without reading or understanding the

22  documents' contents. (Gillies Decl. Ex. 4.) Indeed, for the purposes of this Motion, the Court

23  finds that the signature of Deborah Brignac on the Substitution of Trustee was signed by a

24  different person than that purporting to be Deborah Brignac on the Notice of Trustee's Sale.

25  (Gillies Decl. Ex. 6.) While the allegation of robo-signing may be true, the Court ultimately

26  concludes that Javaheri lacks standing to seek relief under such an allegation. District Courts in

27  numerous states agree. *See, e.g., Repokis v. Deutsche Bank Nat'l Trust Co.*, No. 11–15145, 2012

28  WL 2373350, at *2 (E.D.Mich. June 25, 2012); *In re Mortgage Electronic Registration Systems*

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

[PROPOSED] ORDER

81790535.1 0052161-01775

1   *(MERS) Litigation*, No. CV 10–1547–PHX–JAT, 2012 WL 932625, at *3 (D.Ariz. Mar.20,

2   2012)see also *See Bleavins v. Demarest*, 196 Cal.App.4th 1533, 1542, 127 Cal.Rptr.3d 580

3   (2011) ("Someone who is not a party to a contract has no standing to challenge the performance

4   of the contract ...." (internal quotation marks and alterations omitted)).  Only someone who

5   suffered a concrete and particularized injury that is fairly traceable to the substitution can bring an

6   action to declare the assignment of CRC as void. In re Mortgage Electronic Registration Systems

7   (MERS) Litigation, 2012 WL 932625, at *3. The Substitution of Trustee in this case replaces

8   Chicago Title Company with CRC as trustee of the Deed of Trust. (Snedden Decl. Ex. 1.)

9   Javaheri was not party to this assignment, and did not suffer any injury as a result of the

10  assignment. Instead, the only injury Javaheri alleges is the pending foreclosure on his home,

11  which is the result of his default on his mortgage. The foreclosure would occur regardless of what

12  entity was named as trustee, and so Javaheri suffered no injury as a result of this substitution. See

13  Bridge v. Aames Capital Corp., No. 1:09 CV 2947, 2010 WL 3834059, at *4 (N.D.Ohio Sept.29,

14  2010) ("Plaintiff is still in default on [his] mortgage and subject to foreclosure. As a consequence,

15  Plaintiff has not suffered any injury as a result of the assignment.")  In sum, Javaheri fails to

16  establish that JPMorgan is not the owner, holder, or beneficiary of the Note or that it lacked the

17  authority to foreclose, and he lacks standing to assert his robo-signing contentions. The Court

18  therefore GRANTS JPMorgan's Motion on Javaheri's wrongful foreclosure claim as it pertains to

19  the Wellworth Property." (Emphasis added.) (Javaheri v. JPMorgan Chase Bank, N.A. (C.D. Cal.,

20  2012) 2012 WL 3426278, *6, aff'd, (9th Cir. 2014) 561 Fed.Appx. 611.)

21      Rejecting an argument that robo-signing makes the recorded documents void and finding

22  that plaintiff borrowers lack standing to assert such claims, the U.S. District Court, Northern

23  District of California stated: "...numerous courts have found that where a plaintiff alleges that a

24  document is void due to robo-signing, yet does not contest the validity of the underlying debt, and

25  is not a party to the assignment, the plaintiff does not have standing to contest the alleged

26  fraudulent transfer. [Footnote omitted.] Maynard v. Wells Fargo Bank, N.A., 2013 WL 4883202,

27  at *9 (S.D.Cal. Sept. 11, 2013) (citing Kuc v. Bank of Am., NA, 2012 WL 1268126, at *2

28  (D.Ariz. Apr. 16, 2012) ("[P]laintiff, as a third-party borrower, does not have standing to

1  challenge the validity of any allegedly 'robosigned' recorded assignments."); Javaheri v.

2  JPMorgan Chase Bank N.A., 2012 WL 3426278, at *6 (C.D.Cal. Aug. 13, 2012) (accepting

3  allegations of robo-signing as true, but holding that plaintiff lacked standing to challenge

4  substitution of trustee agreement)). [Footnote omitted.] As in Javaheri, the Court agrees that even

5  if Plaintiffs' robo-signing allegations are true, Plaintiffs lack standing to seek relief under such an

6  allegation. Id. at *6. Moreover, to the extent that an assignment was in fact robo-signed, it would

7  be voidable, not void, at the injured party's option. Maynard, 2013 WL 4883202, at *9. Here, the

8  injured party would be Wells Fargo Bank, not Plaintiffs. See id. (citing Bateman v. Countrywide

9  Home Loans, 2012 WL 5593228, at *4 (D.Haw. Nov. 14, 2012) ("The reason debtors generally

10  lack standing to challenge assignments of their loan documents is that they have no interest in

11  those assignments, and the arguments they make do not go to whether the assignments are void ab

12  initio, but instead to whether the various assignments are voidable. Debtors lack standing to

13  challenge voidable assignments; only the parties to the assignments may seek to avoid such

14  assignments.") (citing Williston on Contracts § 74:50 (4th ed.)). The substitution of trustee

15  ("SOT") in this case adds N DeX as trustee of the DOT. FAC ¶ 39. "[Plaintiffs] w[ere] not party

16  to this assignment, and did not suffer any injury as a result of the assignment. Instead, the only

17  injury [Plaintiffs] allege[ ] is the pending foreclosure on [their] home, which is the result of [their]

18  default on [their] mortgage[s]. The foreclosure would occur regardless of what entity was named

19  as trustee, and so [Plaintiffs] suffered no injury as a result of this substitution." Javaheri, 2012

20  WL 3426278, at *6. Relying on Chan Tang v. Bank of America, N.A., 2012 WL 960373

21  (C.D.Cal. Mar. 19, 2012), Plaintiffs argue that their allegations of robo-signing "state a facially

22  plausible claim that Defendants slandered title by recording foreclosure documents they had no

23  authority to execute in the first place." Opp'n at 13. District courts have consistently found that

24  conclusory allegations of robo-signing are insufficient to state a claim, absent some factual

25  support. Rivac v. Ndex West LLC, 2013 WL 6662762, at *6 (N.D.Cal. Dec. 17, 2013)

26  (conclusory allegations made on "information and belief" that documents were signed by robo-

27  signers without proper authority to execute those documents insufficient to state a claim) (citing

28  Baldoza v. Bank of America, N.A., 2013 WL 978268 at *13 (N.D.Cal. Mar. 12, 2013); Chan

1   Tang, 2012 WL 960373, at *10–11; Sohal v. Fed. Home Loan Mortg. Corp., 2011 WL 3842195,

2   at *5 (N.D.Cal. Aug. 30, 2011); Chua v. IB Property Holdings, LLC, 2011 WL 3322884, at *2

3   (C.D.Cal. Aug. 1, 2011))." (Pratap v. Wells Fargo Bank, N.A. (N.D. Cal. 2014) 63 F.Supp.3d

4   1101, 1108-1110.)

5          Plaintiffs concede the following: they executed a note and deed of trust for a $670,000

6   loan; they are not seeking resolution of the question of whether or how much they owe on the

7   loan; and plaintiffs only made interest payments from August 2007 to fall 2010. (2nd Amended

8   Complaint, paragraphs 11, 28, 84 and Exhibit 1.) There is no allegation that plaintiffs are current

9   in their obligations on the subject loan.

10         In short, plaintiffs do not have standing to challenge the validity of the assignments and

11   other documents allegedly robo-signed.

12         Plaintiffs had three opportunities to sufficiently allege a cause of action to cancel

13   documents and has failed. There does not appear to be a reasonable possibility that the pleading

14   can be cured by amendment, the 2nd amended complaint appears to be incapable of amendment

15   to cure the defect, and plaintiff has not sufficiently demonstrated how the 2nd amended complaint

16   can be amended to cure the defect. (See Roman v. County of Los Angeles (2000) 85 Cal.App.4th

17   316, 322.) The demurrer to the cause of action for cancellation of documents is sustained without

18   leave to amend.

19         Tender – Wrongful Foreclosure and Quiet Title Causes of Action

20         "To bring an action to quiet title a plaintiff must allege he or she has paid any debt owed

21   on the property. (Shimpones v. Stickney (1934) 219 Cal. 637, 649, 28 P.2d 673["[A] mortgagor

22   cannot quiet his title against the mortgagee without paying the debt secured."].)" (Ferguson v.

23   Avelo Mortg., LLC (2011) 195 Cal.App.4th 1618, 1623.) A quiet title action requires that a

24   plaintiff allege tender or offer of tender of the amounts admittedly borrowed. (Montoya v.

25   Countrywide Bank, F.S.B. (N.D.Cal.,2009) 2009 WL 1813973, 11.)

26         An allegation of tender of the amount of the secured indebtedness is required in order to

27   maintain any cause of action for irregularity in the sale procedure. (Abdallah v. United Savings

28   Bank (1996) 43 Cal.App.4th 1101, 1109.) "…[I]n the context of overcoming a voidable sale, the

-18-

1   debtor must tender any amounts due under the deed of trust. (*See Karlsen v. American Sav. &*

2   *Loan Assn.* (1971) 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851; *Py v. Pleitner* (1945) 70

3   Cal.App.2d 576, 582, 161 P.2d 393.) This requirement is based on the theory that one who is

4   relying upon equity in overcoming a voidable sale must show that he is able to perform his

5   obligations under the contract so that equity will not have been employed for an idle purpose.

6   (*Karlsen v. American Sav. & Loan Assn.*, supra, 15 Cal.App.3d at p. 118, 92 Cal.Rptr. 851.)"

7   (*Dimock v. Emerald Properties LLC* (2001) 81 Cal.App.4th 868, 877-878.) The U.S. District

8   Court, Northern District of California has determined in an unpublished case that tender is

9   required even if the foreclosure is merely pending. (*Alicea v. GE Money Bank* (N.D. Cal 2009)

10   2009 WL 2136969, 3.) This court agrees that tender is a critical allegation in any action for

11   wrongful foreclosure, whether the action is brought pre-foreclosure sale or post-foreclosure sale.

12   An action for irregularities in the statutory nonjudicial foreclosure proceedings at any stage of the

13   foreclosure proceedings is an action for irregularity in the statutory sale procedures whether or

14   not the foreclosure sale has occurred.

15       However, tender is not required where the sale is void on its face. The appellate court in

16   *Dimock v. Emerald Properties LLC* (2000) 81 Cal.App.4th 868 held that where the original

17   trustee completed the trustee's sale after being replaced by a new trustee, the sale was void on its

18   face, rather than merely voidable, because the original trustee did not have the power to convey

19   the property at the time of sale due to the substitution of trustee; and the plaintiff was not required

20   to do equity by tendering the amounts due and owing prior to seeking to vacate the foreclosure

21   sale. The appellate court stated: "As Dimock points out, because Commonwealth had no power to

22   convey his property its deed to Emerald was void as opposed to merely voidable." (*Dimock v.*

23   *Emerald Properties LLC* (2000) 81 Cal.App.4th 868, 876.) The appellate court in *Dimock*, supra,

24   further stated: "Here, although the deed of trust Dimock executed states that a recital in a trustee's

25   deed "of any matters of fact shall be conclusive proof of the truthfulness thereof," the deed

26   Commonwealth gave Emerald following the foreclosure sale contains no statement that

27   Commonwealth's power to act as trustee had survived any recorded substitution. Rather, by its

28   terms the Commonwealth deed merely conveyed to Emerald "such interest as Trustee has in"

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

81790535.1 0052161-01775

1    Dimock's property.  The only factual recitals in the deed are to Commonwealth's compliance with

2    the requirements of section 2924 et seq. and the deed of trust. Section 2924 et seq. sets forth the

3    notice which must be provided to the debtor and junior lienholders and the means by which the

4    sale must be conducted; the deed of trust sets forth similar requirements with respect to notice and

5    conduct of the sale. These factual recitals, relating to the notice given Dimock and the conduct of

6    the sale, cannot be interpreted as making any representation as to whether a conflicting

7    substitution of trustee had been recorded.  Because there was no recital in the Commonwealth

8    deed to Emerald which undermined the Calmco substitution, the deed to Emerald did not create

9    any conclusive presumption that Commonwealth continued to act as trustee. Accordingly, in

10   attacking the Commonwealth deed Dimock was not required to rely upon equity in setting aside a

11   merely voidable deed. (*Little v. CFS Service Corp.*, supra, 188 Cal.App.3d at p. 1359, 233

12   Cal.Rptr. 923.) Rather, he could rely on the face of the record to show that the Commonwealth

13   deed was void. (*Ibid.*)  Because Dimock was not required to rely upon equity in attacking the

14   deed, he was not required to meet any of the burdens imposed when, as a matter of equity, a party

15   wishes to set aside a voidable deed. (*See Little v. CFS Service Corp.*, supra, 188 Cal.App.3d at p.

16   1359, 233 Cal.Rptr. 923.) In particular, contrary to the defendants' argument, he was not required

17   to tender any of the amounts due under the note." (Emphasis added.) (*Dimock v. Emerald*

18   *Properties LLC* (2000) 81 Cal.App.4th 868, 877-878.)

19          The plaintiffs claim in the 2nd amended complaint that the nonjudicial foreclosure

20   proceedings are wrongful and plaintiff is entitled to quiet title, because the recorded documents

21   are void due to lack of authority, forgery, and untimely assignment to a securitized trust. As stated

22   earlier in this ruling, plaintiffs do not have standing to attack the validity of the assignment of the

23   deed of trust to the Bank of New York Mellon securitized trust; they do not have standing to

24   challenge documents allegedly robo-signed; the allegations of lack of authority and forgery are

25   merely conclusions of fact or law that are not supported by sufficient allegations of fact; and the

26   other allegations of the 2nd amended complaint fall short of establishing the nonjudicial

27   foreclosure proceedings are facially void. Furthermore, as stated later in this ruling, the plaintiffs'

28   claim that personal knowledge is required in order to execute a Civil Code, § 2923.5 statement of

1    due diligent attempts to contact plaintiffs about alternatives to foreclosure that accompanies the

2    notice of default lacks merit; the statement does not require personal knowledge, because the

3    "declaration" need not be made under penalty of perjury; and even if the statement was defective,

4    plaintiffs admit that the contacts required by Section 2923.5 actually occurred during loan

5    modification application proceedings prior to filing the notice of default, thereby complying with

6    the requirements of Section 2923.5. In other words, the notice of default is not facially void and

7    the face of the 2nd amended complaint indicates that the notice of default is not void.

8         In summary, tender is required. Plaintiffs not having alleged tender, the wrongful

9    foreclosure and quiet title causes of action are fatally defective.

10        Plaintiffs have had three opportunities to sufficiently allege causes of action for wrongful

11   foreclosure and to quiet title and have failed. There does not appear to be a reasonable possibility

12   that the pleading can be cured by amendment, the 2nd amended complaint appears to be

13   incapable of amendment to cure the defect, and plaintiff has not sufficiently demonstrated how

14   the 2nd amended complaint can be amended to cure the defect. (*See Roman v. County of Los*

15   *Angeles* (2000) 85 Cal.App.4th 316, 322.) The demurrers to the wrongful foreclosure and quiet

16   title causes of action are sustained without leave to amend.

17        <u>Violation of Homeowners Bill of Rights (HBOR) Cause of Action</u>

18        Plaintiffs allege that HBOR was violated in the following manner: the notice of default's

19   declaration of due diligent attempts to contact plaintiff failed to comply with Civil Code, §

20   2923.5, because it does not indicate that the person executing the declaration had personal

21   knowledge; the bank defendants are in violation of HBOR and cannot foreclose on plaintiff's

22   home; the single point of contact for plaintiffs' 2014 loan modification application admitted in

23   correspondence that the loan modification application was complete; that correspondence was

24   dated April 28, 2014; and plaintiffs have not heard anything more about the application since that

25   time. (2nd Amended Complaint, paragraphs 123, 124, and 128; and Exhibit 15.)

26        The allegation of paragraph 124 that the bank defendants violated HBOR and can not

27   nonjudicially foreclose on plaintiffs' home is merely a conclusion of law or fact that the court is

28

1   not required to take as true for the purposes of demurrer. (*Picton v. Anderson Union High School*

2   *Dist.* (1996) 50 Cal.App.4th 726, 732-733.)

3            Personal Knowledge re: Civil Code, § 2923.5 Statement

4            Personal knowledge is required for a declaration or affidavit executed under penalty of

5   perjury. However, there is appellate authority for the proposition that Section 2923.5 does not

6   require the statement of due diligent attempts to contact the borrowers be stated by one person

7   under penalty of perjury.

8            The appellate court in *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208 stated: "In

9   addition to the substantive act of contacting the borrower, section 2923.5 requires a statement in

10  the notice of default. The statement is found in subdivision (b), which we quote here: "(b) A

11  notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee,

12  beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to

13  contact the borrower as required by this section, or that no contact was required pursuant to

14  subdivision (h)." (Italics added.)  The idea that this "declaration" must be made under oath must

15  be rejected. First, ordinary English usage of the word "declaration" imports no requirement that it

16  be under oath. In the Oxford English Dictionary, for example, numerous definitions of the word

17  are found, none of which of require a statement under oath or penalty of perjury. In fact, the

18  second legal definition given actually juxtaposes the idea of a declaration against the idea of a

19  statement under oath: "A simple affirmation to be taken, in certain cases, instead of an oath or

20  solemn affirmation." (4 Oxford English Dict. (2d. ed. 1991) at p. 336.)  Second, even the

21  venerable Black's Law Dictionary doesn't define "declaration" to necessarily be under oath. Its

22  very first definition of the word is: "A formal statement, proclamation or announcement, esp. one

23  embodied in an instrument." (Black's Law Dict. (9th ed. 2009) at p. 467.)  Third, if the

24  Legislature wanted to say that the statement required in section 2923.5 must be under penalty of

25  perjury, it knew how to do so. The words "penalty of perjury" are used in other laws governing

26  mortgages. (E.g., § 2941.7, subdivision (b) ["The declaration provided for in this section shall be

27  signed by the mortgagor or trustor under penalty of perjury."].)  And, finally—back to our point

28  about the inherent individual operation of the statute—the very structure of subdivision (b) belies

1    any insertion of a penalty of perjury requirement. The way section 2923.5 is set up, too many

2    people are necessarily involved in the process for any one person to likely be in the position

3    where he or she could swear that all three requirements of the declaration required by subdivision

4    (b) were met. We note, for example, that subdivision (a)(2) requires any one of three entities (a

5    "mortgagee, beneficiary, or authorized agent") to contact the borrower, and such entities may

6    employ different people for that purpose. And the option under the statute of no contact being

7    required (per subdivision (h)) [Footnote omitted.] further involves individuals who would, in any

8    commercial operation, probably be different from the people employed to do the contacting. For

9    example, the person who would know that the borrower had surrendered the keys would in all

10   likelihood be a different person than the legal officer who would know that the borrower had filed

11   for bankruptcy.   The argument for requiring the declaration to be under penalty of perjury relies

12   on section 2015.5 of the Code of Civil Procedure, but that reliance is misplaced. We quote all of

13   section 2015.5 in the margin. [Footnote omitted.] Essentially the statute says if a statement in

14   writing is required to be supported by sworn oath, making the statement under penalty of perjury

15   will be sufficient. The key language is: "Whenever, under any law of this state ... made pursuant

16   to the law of this state, any matter is required ... to be ... evidenced ... by the sworn ... declaration

17   ... in writing of the person making the same ... such matter may with like force and effect be ...

18   evidenced ... by the unsworn ... declaration ... in writing of such person which recites that it is ...

19   declared by him or her to be true under penalty of perjury...." (Italics added.) The section sheds

20   no light on whether the declaration required in section 2923.5, subdivision (b) must be under

21   penalty of perjury." (Emphasis added.) (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208,

22   232-234.)

23         Therefore, there is no requirement that the due diligence statement certify that it was made

24   upon personal knowledge under penalty of perjury.

25         In any event, plaintiffs have admitted in the 2nd amended complaint that there was

26   sufficient contact with the lender to discuss loan modifications with plaintiffs prior to the

27   recording of the notice of default, which satisfies the contact requirements of Section 2923.5.

28

1    <u>Admitted Contacts With Plaintiffs Prior to Recording a Notice of Default</u>

2    The notice of default was recorded on October 5, 2011. (2nd Amended Complaint, Exhibit

3    8.) Plaintiffs admit the following: starting in 2010 plaintiffs applied for a loan modification with

4    defendant Bank of America, who had taken over servicing the loan; and plaintiffs spent months

5    going back and forth with defendant Bank of America concerning the loan modification

6    application. (2nd Amended Complaint, paragraph 33.)

7    Where the complaint admits contacts between the lender and borrower related to a loan

8    modification, the facts pleaded actually negate a claim that section 2923.5 was violated and

9    dismissal of a cause of action for violation of Section 2923.5 is appropriate. (*Davenport v. Litton*

10   *Loan Servicing, LP* (N.D. Cal. 2010) 725 F.Supp.2d 862, 877.)

11   Plaintiffs have admitted that there is no viable claim that section 2923.5 was violated by

12   defendants' failure to contact plaintiffs to explore alternatives to foreclosure prior to the recording

13   of the notice of default.

14   <u>HBOR not Retroactive</u>

15   The 2nd amended complaint alleges: The Notice of Default was recorded on October 5,

16   2011; and the Notices of Trustee Sale were recorded on January 13, 2012 and December 11, 2012

17   (2nd Amended Complaint, paragraphs 54 and 55.)

18   "The HBOR took effect on January 1, 2013. *See Sabherwal v. Bank of New York Mellon*,

19   2013 WL 4833940, at *10 (S.D.Cal. Sept. 10, 2013). "California courts comply with the legal

20   principle that unless there is an express retroactivity provision, a statute will not be applied

21   retroactively unless it is very clear from extrinsic sources that the Legislature ... must have

22   intended a retroactive application." *Id.* (quoting *Myers v. Philip Morris Cos., Inc.*, 28 Cal.4th 828,

23   841, 123 Cal.Rptr.2d 40, 50 P.3d 751 (2002)). The HBOR does not state that it has retroactive

24   effect. Id. Plaintiffs have not identified any extrinsic sources indicating that the California

25   legislature intended a retroactive application. Accordingly, the Court addresses only documents

26   submitted after January 1, 2013." (*Rockridge Trust v. Wells Fargo, N.A.* (N.D.Cal. 2013) 985

27   F.Supp.2d 1110, 1152.)

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-24-

[PROPOSED] ORDER

81790535.1 0052161-01775

1   Inasmuch as the notice of default and notices of trustee sale were recorded prior to the

2   effective date of HBOR, the provisions of HBOR do not apply to the recording of such

3   documents and cannot provide any basis for a claim of violation of HBOR by recording such

4   documents.

5   <u>Failure to Notify Plaintiffs of Action Taken on 2014 Loan Modification Application</u>

6   Plaintiffs do not allege in the list of alleged HBOR violations set forth in paragraph 121 of

7   the 2nd amended complaint that Civil Code, § 2923.6 was violated in any manner by defendant's

8   failure to provide plaintiffs with a written decision on their 2014 loan modification application.

9   Even if plaintiffs were provided an opportunity to amend the pleading to add that statute to the

10   laundry list of asserted HBOR violations, plaintiffs have not asserted in the three pleadings in this

11   case or in the opposition to the instant demurrers that they can amend the complaint to allege the

12   property was sold at a foreclosure sale despite defendants' alleged pending loan modification

13   application.

14   "(c) If a borrower submits a complete application for a first lien loan modification offered

15   by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee,

16   beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a

17   trustee's sale, while the complete first lien loan modification application is pending. A mortgage

18   servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default

19   or notice of sale or conduct a trustee's sale until any of the following occurs: (1) The mortgage

20   servicer makes a written determination that the borrower is not eligible for a first lien loan

21   modification, and any appeal period pursuant to subdivision (d) has expired.  (2) The borrower

22   does not accept an offered first lien loan modification within 14 days of the offer.  (3) The

23   borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the

24   borrower's obligations under, the first lien loan modification." (Emphasis added.) (Civil Code, §

25   2923.6(c).)

26   Plaintiffs admit that the notice of default was recorded on October 5, 2011 (2nd Amended

27   Complaint, paragraph 54.), long before the effective date of HBOR and long before plaintiffs

28   allege that a completed loan modification application was acknowledged as having been received

-25-

1   on or about May 1, 2014 (2nd Amended Complaint, paragraph 128.). Notices of Trustee's Sales

2   were recorded on January 13, 2012 and December 11, 2012 prior to acknowledgement that a

3   complete 2014 loan modification application was received. (See 2nd Amended Complaint,

4   paragraph 55 and Exhibits 9 and 10.) Plaintiffs fail to allege that a notice of sale was recorded or

5   trustee's sale was conducted after May 1, 2014. Therefore, the failure to provide a written

6   determination that the borrower is or is not eligible for a first lien loan modification does not state

7   a cause of action for an HBOR violation.

8        Plaintiffs have had three opportunities to sufficiently allege a violation of HBOR cause of

9   action and have failed. There does not appear to be a reasonable possibility that the pleading can

10   be cured by amendment, the 2nd amended complaint appears to be incapable of amendment to

11   cure the defect, and plaintiff has not sufficiently demonstrated how the 2nd amended complaint

12   can be amended to cure the defect. (See Roman v. County of Los Angeles (2000) 85 Cal.App.4th

13   316, 322.) The demurrer to the violation of HBOR cause of action is sustained without leave to

14   amend.

15        <u>Violation of Business and Professions Code, §§ 17200, et seq. (Unfair Business Practices)</u>

16   <u>Cause of Action</u>

17        "A distinguishing feature of the UCL is that it does not provide a private action for

18   damages or other legal remedies. Instead, the UCL provides an equitable means to prevent unfair

19   practices in the future and restore money or property to victims of those practices. (*Cel–Tech*

20   *Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179, 83

21   Cal.Rptr.2d 548, 973 P.2d 527.) Thus, remedies are limited to injunctive relief and restitution.

22   Unlawful practices are practices "forbidden by law, be it civil or criminal, federal, state, or

23   municipal, statutory, regulatory, or court-made." (*Saunders v. Superior Court* (1994) 27

24   Cal.App.4th 832, 838–839, 33 Cal.Rptr.2d 438.) To state a cause of action based on an unlawful

25   business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation

26   of some underlying law." (*Prakashpalan v. Engstrom, Lipscomb and Lack* (2014) 223

27   Cal.App.4th 1105, 1133.)

28

1    The Unfair Business Practices cause of action is premised upon alleged violations of law

2  by the conduct alleged in the prior causes of action. The plaintiffs not having adequately alleged

3  any of those causes of action, the unfair business practices cause of action is similarly defective.

4    Plaintiffs have had three opportunities to sufficiently allege a violation of Business and

5  Professions Code, §§ 17200, et seq. cause of action and have failed. There does not appear to be a

6  reasonable possibility that the pleading can be cured by amendment, the 2nd amended complaint

7  appears to be incapable of amendment to cure the defect, and plaintiff has not sufficiently

8  demonstrated how the 2nd amended complaint can be amended to cure the defect. (See Roman v.

9  County of Los Angeles (2000) 85 Cal.App.4th 316, 322.) The demurrer to the violation of

10  Business and Professions Code, §§ 17200, et seq. cause of action is sustained without leave to

11  amend.

12  **IT IS SO ORDERED**

13  DATED: **MAR 1 1 2016**                    **Warren C. Stracener**

14  _____           _____

15                                              Judge of the Superior Court

16

17

18

19

20

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO
81790535.1 0052161-01775

-27-

[PROPOSED] ORDER

**EXHIBIT D**

1　THOMAS A. WOODS (SB #210050)
　　tawoods@stoel.com
2　BRYAN L. HAWKINS (SB #238346)
　　blhawkins@stoel.com
3　STOEL RIVES LLP
　　500 Capitol Mall, Suite 1600
4　Sacramento, CA 95814
　　Telephone: (916) 447-0700
5　Facsimile: (916) 447-4781

6　Attorneys for Defendants
　　Select Portfolio Servicing, Inc. and The Bank of
7　New York Mellon FKA the Bank of New York, as
　　Trustee for the Certificateholders of CWALT, Inc.,
8　Alternative Loan Trust 2007-OH2, Mortgage Pass-
　　Through Certificate, Series 2007-OH2
9

**FILED**

APR 0 6 2016

EL DORADO CO. SUPERIOR COURT
BY_____ (DEPUTY)

10　　　　　SUPERIOR COURT OF THE STATE OF CALIFORNIA

11　　　　　　　　　COUNTY OF EL DORADO

12　DEBORAH ANN RAY and JAMES　　　CASE NO. PC 20130578
　　WILFRED RAY, individuals,
13　　　　　　　　　　　　　　　　　　　[~~PROPOSED~~] JUDGMENT OF
　　　　　　　　　　　　　　　　　　　DISMISSAL
14　　　　　Plaintiffs,

15　　　　v.

16　SELECT PORTFOLIO SERVICING, INC., in
　　its capacity as servicer; BANK of AMERICA,
17　N.A., a business entity unknown; THE BANK
　　OF NEW YORK MELLON FKA THE BANK
18　OF NEW YORK, INDIVIDUALLY AND AS
　　TRUSTEE FOR THE
19　CERTIFICATEHOLDERS OF CWALT,
　　INC., ALTERNATIVE LOAN TRUST 2007-
20　OH2, MORTGAGE PASS-THROUGH
　　CERTIFICATE, SERIES 2007-OH2, a
21　business entity unknown; RECONTRUST
　　COMPANY, ALL PERSONS UNKNOWN,
22　CLAIMING ANY LEGAL OR EQUITABLE
　　RIGHT, TITLE, ESTATE, LIEN, OR
23　EQUITABLE INTEREST IN THE
　　PROPERTY DESCRIBED IN THE
24　COMPLAINT ADVERSE TO PLAINTIFFS'
　　TITLE, OR ANY CLOUD ON PLAINTIFFS'
25　TITLE THERETO and, DOES, 1 THROUGH
　　100, inclusive,
26　　　　　Defendants.

27

28

F
I
L
E
D

B
Y

F
A
X

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-1-

NOTICE OF HEARING

76738586.1 0052161-01775

1    The demurrer of Defendants Select Portfolio Servicing, Inc. and The Bank of New York

2    Mellon FKA the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc.,

3    Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificate, Series 2007-OH2's

4    ("Defendants"), having been sustained without leave to amend by this Court on or about February

5    26, 2015 with Order thereto entered on March 11, 2016.

6         **IT IS ORDER, ADJUDGED AND DECREED** that:

7         1.    The case is dismissed with prejudice against Defendants;

8         2.    Judgment is hereby entered in favor of Defendants and against Plaintiffs Deborah

9    Ann Ray and James Wilfred Ray ("Plaintiffs");

10        3.    Plaintiff shall recover nothing against Defendants; and

11        4.    Defendants are entitled to recover from Plaintiff the costs of suit in this action.

12   Defendants are allowed to file a memorandum of costs.

13        IT IS SO ORDERED.

14   Dated:  4-6-16

15                              THE HONORABLE WILLIAM C. STRACENER

16              APR 0 6 2016       **Warren C. Stracener**

17

18

19

20

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-1-

76738586.1 0052161-01775

**EXHIBIT E**

1 | JAMES WILFRED RAY AND DEBORAH ANN RAY
3190 Carlson Drive

2 | Shingle Springs, CA 95682
Phone: 530-676-1486

3 | Email: theray6@sbcglobal.net

EL DORADO CO. SUPERIOR CT.

FILED   DEC 13 2016

BY _____
          Deputy

4

5 | JAMES WILFRED RAY AND DEBORAH ANN RAY, IN PRO PER

Assigned to
Judge Warren C. Stracener
For all purposes

6

7

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

8

### FOR THE COUNTY OF EL DORADO

9

10 | JAMES WILFRED RAY AND

11 | DEBORAH ANN RAY, individuals,

12 | Plaintiff(s),

13 | vs.

14 | THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, individually and

15 | AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF CWALT, INC. ALTERNATIVE

16 | LOAN TRUST 2007-OH2 MORTGAGE PASS-
THROUGH CERTIFICATE, SERIES 2007-OH2,

17 | THE BANK OF NEW YORK, SELECT
PORTFOLIO SERVICING, INC., BANK OF

18 | AMERICA, N.A., RECONTRUST COMPANY,
MORTGAGE ELECTRONIC REGISTRATION

19 | SYSTEM, INC. AMERICAN FINANCING
CORPORATION, COUNTRYWIDE HOME

20 | LOANS dba BANK OF AMERICA HOME
LOANS, NATIONAL DEFAULT SERVICING

21 | CORPORATION, REED SMITH LLP,
DOES 1 TO 100

22

23

24 | Defendant(s).

Case No.:   **PC   20160566**

**CIVIL ACTION, COMPLAINT FOR CANCELLATION, FOR QUITE TITLE, AND DECLARATORY JUDGEMENT**

**TRIAL BY JURY CONTRACT**

**COMPAINT VERIFIED AS CHARGING AFFIDAVIT**

25

26 | Jurisdiction over this matter is established as required under California Code Civil Procedure 307,

27 | this case at law and in equity involving title to real property identified herein.

28 | CONTRACT TERMS, Minimums.



- 1 -

1   Trial by Jury deciding all the facts is required by California Constitution, Article 1, Section 7, due

2   process prior to taking; Section 12 Authority of law required for invading privacy of home; Section

3   16 Trial by Jury; Section 24, all Rights reserved: Section 26, Constitution mandatory, California

4   Code of Civil Procedure 631, Trial by Jury of ALL contested facts.

5   EVIDENCE taken or presented under California Evidence Code generally and specifically Chapter

6   5. Venue is correct under California Code of Civil Procedure.

7   PARTIES

8   PLAINTIFF

9   James Wilfred Ray and Deborah Ann Ray is Plaintiff in this purchased Civil Action Contract for

10  honest government services to be provided by the State of California.

11  Plaintiff is the only true owner of the property located at 3190 Carlson Drive, Shingle Springs

12  within the State of California and El Dorado County.

13  Plaintiff at all times relevant to this civil action is the owner of title duly registered on El Dorado

14  County Clerk and Recorders Office records since 2001.

15  DEFENDANTS

16    A. The Bank of New York Mellon fka the Bank of New York as trustee for the Certificate

17       Holders of CWALT, Inc. Alternative Loan Trust 2007OH2, Mortgage Pass-Through

18       Certificate Series 2007-OH2, c/o Bank of America, N.A., 400 National Way, Simi Valley,

19       CA 93065

20    B. The Bank of New York, Attn: Mortgage Backed Securities Group, CWALT, Inc. Series

21       2007-OH2, 101 Barclay Street, 4 West, New York, NY 10286

22    C. Select Portfolio Servicing, Inc., P.O. Box65277, Salt Lake City, UT 84165-2077

23    D. Bank of America N.A., 450 Boundry Street, Chapin, SC 29036

24    E. Recontrust Company, 1800 Tapo Canyon Road, Simi Valley, CA 93063

25    F. Mortgage Electronic Registration System, Inc. Nominee for America Financing

26       Corporation, Nominee for American Financing Corporation, P.O. Box 2026, Flint, MI

27       48501-2026

28    G. American Financing Corporation, 3161 S. Vaughn Way #500, Aurora, CO 80014

- 2 -

1      H. Countrywide Home Loans, dba Bank of America Home Loans, 4500 Park Granada Blvd.,

2         Calabasas, CA 91302

3      I. National Default Servicing Corporation 7720 North 16th Street, Suite 300, Phoenix, AZ

4        85020

5      J. Reed Smith LLP, 20 Stanwix Street, Suite 1200, Pittsburgh PA 15222

6  All Defendants identified above to business with in the exterior boundaries of California State and

7  within El Dorado County.

8

9  All Defendants identified above claim that they are duly licensed entities registered to do business

10  in California admitting they are subject to California law.

11

12  Plaintiffs has no knowledge as to whether the above identified defendants as commercial enterprises

13  are properly licensed or authorized to do business in California. Plaintiffs will advise the court of

14  any information related to the standing capacity of the defendants to operate in California State.

15

16  Plaintiff is informed and believes that all of the addresses cited above for the defendants and their

17  contact points are correct. In the event other information clarifying location and contact points for

18  Defendants becomes available it will be amended to this complaint.

19

20  However, defendant appeared to be playing football with various documents, addresses, and in

21  particular positions related to the property at issue here in. It is impossible for the Plaintiff to track

22  all of these changes in positions and parties. When plaintiff becomes aware of any information to

23  clarify any of defendants positions, standings or capacities said information will be filed for record.

24

25  Plaintiff is ignorant of the true names, the positions, standings or capacities of Does 1 to 100

26  inclusive and therefore does not name them specifically. If and when plaintiff is made aware of

27  specific capacities, standing, or impairments same will be filed for record as amended.

28

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1   Plaintiff is ignorant of the true names, positions, standings or capacities or impairments of each and
2   all of the Defendants identified above and therefore sues each in the fictitious names identified.
3   Plaintiff will advise the court through amendment in the event true capacities, positions, standing or
4   impairments are disclosed or found by Plaintiff.

5

6   Plaintiff is informed and believes and there on alleges that at all times here in relevant or
7   mentioned, each of the Defendants sued herein was the agent and or employee of each of the
8   remaining defendants and was and are at all times acting within the purpose of the scope of such
9   agency and or employment.

10

11   Plaintiff is informed and believes and there on alleges that, at all times here in relevant or mention,
12   ALL Defendants acting in concert and conspiracy with each of the other Sharing a single purpose
13   and goal.

14

15   The purpose of this Civil Action Complaint Contract is to require ALL Defendants to prove their
16   alleged claims and show explicit and specific compliance with all laws related to the taking of a
17   property under any circumstance whatsoever related to a consumer contract.

18

19   Plaintiff is now and at all times mentioned and relevant the owner and entitled to possession of the
20   property located at 3190 Carlson Drive, Shingle Springs, State of California, County of El Dorado.

21

22   Plaintiff is informed and believes and thereupon alleges that, each of the Defendants willfully and
23   intentionally state false claims of interest in the property adverse to that the Plaintiff herein.
24   However, the claim of each defendant is without any right whatsoever at law or in equity, and said
25   joy defendants have not legal or equitable right, claim or interest in said property.

26

27   Plaintiff alleges and states under the penalty of perjury that on August 5, 2015 the TILA RECISION
28   was executed Jesinoski v Countrywide Home Loans, Inc. et.al. execution of the standing federal law

- 4 -

1  protecting consumers and standing Supreme Court of The United States orders was duly served on
2  each and every Defendant and filed  for public record in the following identified actions 1. PC
3  20130578, 2. 16-23707. Public record filings Annexed for mandatory judicial notice.

4

5  Plaintiff alleges and states under penalty of perjury that ALL Defendants have not only ignored but
6  acted in contempt of standing Supreme Court orders, federal truth in lending, consumer protection,
7  debt collection practices federal laws as well as State of California laws covering same.

8

9  Plaintiff alleges on belief and information available from public record that ALL Defendants know
10  and have always known that their positions have been canceled, annulled, MADE VOID by
11  operation of law yet choose to ignore it and act in contempt of same.

12

13  Plaintiff alleges and states under penalty of perjury and that during all time relevant and or
14  mentioned herein NONE of the Defendants have presented any documentation or record whatsoever
15  supporting, ratifying, certifying RIGHT TO PAYMENT under any given circumstance relevant
16  hereto.

17

18  Plaintiff alleges and states under the penalty of perjury that during all times relevant or mentioned
19  herein NONE of the Defendants EVER produced any record proving any contract establishing the
20  right to payment from Plaintiff.  Plaintive does not believe there exists nor is there any evidence of
21  contract whatsoever between Defendants and Plaintiff.

22

23  Plaintiff alleges and states under penalty of perjury that during all times relevant or mentioned
24  herein NONE of the Defendants EVER produced any record proving, showing copies or originals,
25  identifying any of the following to Plaintiff:

26    1.  Property alleged to be loaned to Plaintiff.

27

28

- 5 -

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

2. Identification of ownership, history of ownership and source of ownership of any property alleged to be loaned to Plaintiff along with transfer documents and records with tax record reporting exchanges or transfer of assets of any nature or kind.

3. Exemption from Consumer Protection Law, Truth in Lending Law, Fair Debt Collection Practices Law, Business Ethics Law, Federal Bank Regulations, Constitution of California, the United States Constitution.

4. Documented public or private records showing compliance with each of the governing provisions under the law identified in 3 above.

WHEREFORE: Plaintiff Demands its judgement against Defendants and each of them follows:

For an order compelling said Defendants, and each of them, to file proper complete releases of any and all claims against the property subject herein on El Dorado County Clerk and Recorders records;

For a declaration and determination that the Plaintiff is the rightful holder of title to the property and that Defendants herein and each of them be declared to have no estate, right, title or interest in said property;

For a declaration and determination that there exists no legal relations between Plaintiff and any Defendants;

For a declaration and determination that each and every Defendant is required by operation of law to prove conclusively complete compliance with the all law through proper public certified records in order to be able to invoke the jurisdiction of this court or any court and to state a claim;

For a judgement forever injoining said Defendants, and each of them, from claiming any estate right, title or interest in the subject property and that they are barred from transferring their current positions forever more;

For cost of the suit here incurred;

For such other and further relief as the court may deem proper under recognition of federal law and standing Orders by the United States Supreme Court.

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1  I, James Wilfred Ray and Deborah Ann Ray, are Plaintiffs in the above-entitled action. I have read

2  the foregoing Complaint and know the contents thereof. The same is true of my own knowledge,

3  except as to those matters which are therein alleged on information and belief, and as to those

4  matters, I believe it to be true.

5

6  I declare under penalty of perjury that the foregoing is true and correct and that this declaration was

7  executed at Shingle Springs, California.

8

9  DATED: November 22, 2016

10                                                          _____
                                                            JAMES WILFRED RAY
11                                                          In Pro Per

12

13                                                          DEBORAH ANN RAY
                                                            In Pro Per

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ E l Dorado _____ )

PUBLIC

On _ November 23, 16 _ before me, _ FARIDA Z. NOORANI NOTARY _
(insert name and title of the officer)

personally appeared _ Deborah Ann Ray & James Wilfred Ray _.
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

FARIDA Z. NOORANI
Commission # 2136902
Notary Public - California
El Dorado County
My Comm. Expires Dec 14, 2019

Signature _ Farida Z. Norrani _     (Seal)

**EXHIBIT F**

MC–050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Pavel Ekmekchyan (SBN 223222) Veronica Rotter (SBN 307902) Yu Mohandesi, LLP 633 W. Fifth Street, Suite 2800 Los Angeles, CA 90071 | |

TELEPHONE NO: 213.985.2007   FAX NO *(Optional)*
E-MAIL ADDRESS *(Optional)*: pavel@yumollp.com
ATTORNEY FOR *(Name)*: Defendants Select Portfolio Servicing, Inc.; et al

SUPERIOR COURT OF CALIFORNIA, COUNTY OF El Dorado
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Cameron Park, California 95682
BRANCH NAME:

CASE NAME:
Ray v. The Bank of New York Mellon, et al

| SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | CASE NUMBER: PC20160566 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name)*: Select Portfolio Servicing, Inc. makes the following substitution:

1. Former legal representative ☐ Party represented self ☑ Attorney *(name)*: Stoel Rives LLP
2. New legal representative ☐ Party is representing self ☑ Attorney
   a. Name Pavel Ekmekchyan   b. State Bar No. *(if applicable)*: 223222
   c. Address *(number, street, city, ZIP, and law firm name, if applicable)*:
      Yu Mohandesi LLP, 633 W. Fifth St., Suite 2800, Los Angeles CA 90071

   d. Telephone No. *(include area code)*: 213.985.2007
3. The party making this substitution is a ☐ plaintiff ☑ defendant ☐ petitioner ☐ respondent ☐ other *(specify)*:

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

| ◦ Guardian | • Personal Representative | ◦ Guardian ad litem |
|---|---|---|
| ◦ Conservator | • Probate fiduciary | ◦ Unincorporated |
| ◦ Trustee | • Corporation | association |

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4. I consent to this substitution.
   Date:
   Select Portfolio Servicing, Inc.
   _____
   (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY)

5. ☑ I consent to this substitution.
   Date: 7/21/2017
   Thomas A. Woods  Brian Hawkins
   (TYPE OR PRINT NAME)                                    (SIGNATURE OF FORMER ATTORNEY)

6. ☑ I consent to this substitution.
   Date: 7/21/2017
   Pavel Ekmekchyan
   (TYPE OR PRINT NAME)                                    (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)                                    Page 1 of 2

| Form Adopted For Mandatory Use Judicial Council of California MC-050 [Rev. January 1, 2009] | SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | Code of Civil Procedure, §§ 284(1), 285; Cal. Rules of Court, rule 3.1362 www.courtinfo.ca.gov |
|---|---|---|

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Yu | Mohandesi LLP, 633 West Fifth Street, Suite 2800, Los Angeles, CA 90071. On September 11, 2017, I served the following document(s) by the method indicated below:

**SUBSTITUTION OF ATTORNEY FOR SELECT PORTFOLIO SERVICING, INC.**

| | |
|---|---|
| | by transmitting via facsimile on this date the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was ordered by the Court. The transmitting fax machine complies with Cal.R.Ct. 2.301(3). |
| X | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. |
| | by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. |
| | by having the document(s) listed above hand-delivered to the person(s) at the address(es) set forth below. |
| | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business to the address(es) set forth below. |
| | by emailing the document(s) listed above to the person(s) at the address(es) set forth below. |

| | |
|---|---|
| *Plaintiffs:*<br>James Wilfred Ray<br>Deborah Ann Ray<br>3190 Carlson Drive<br>Shingle Springs, CA 95682 | *Attorneys for BANK OF AMERICA, N.A., et al.*<br>Mark Joseph Kenney<br>Jason M. Richardson<br>SEVERSON & WERSON, APC<br>One Embarcadero Center<br>Suite 2600<br>San Francisco, CA 94111 |
| Thomas A. Woods<br>Bryan L. Hawkins<br>STOEL RIVES LLP<br>500 Capitol Mall, Suite 1600<br>Sacramento, CA 95814 | *Former Legal Representatives for SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YORK MELLON, et al.; MORTGAGE ELECTRONIC SYSTEMS, INC.; and NATIONAL DEFAULT SERVICING CORPORATION* |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on September 11, 2017, at Los Angeles, California.

Catia Pintado

**EXHIBIT G**

1   JAMES WILFRED RAY AND DEBORAH ANN RAY
    3190 Carlson Drive
2   Shingle Springs, CA  95682
    Phone: 530-676-1486
3   Email: theray6@sbcglobal.net

    Sandra D. Hurley
    Hurley Legal Services
    Legal Document Asst.
    LIC# P15-01
    Ph: 530-748-3244
    Em: sandy@hurleylegal.com

    EL DORADO CO. SUPERIOR CT.

    FILED   NOV 27 2017

    BY   **J. Dawes**
              Deputy

4   JAMES WILFRED RAY AND DEBORAH ANN RAY, IN PRO PER

5

6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                         **FOR THE COUNTY OF EL DORADO**

10

11  JAMES WILFRED RAY AND            )   Case No.: PC20160566
    DEBORAH ANN RAY, individuals,    )
12                                   )   **SECOND AMENDED COMPLAINT FOR**
                Plaintiff(s),        )   **VIOLATION OF THE TRUTH IN**
13                                   )   **LENDING ACT, THE HOME**
            vs.                      )   **OWNERSHIP & EQUITY PROTECTION**
                                     )   **ACT OF 1994, FRAUD AND BREACH OF**
14  THE BANK OF NEW YOR MELLON FKA   )   **CONTRACT**
    THE BANK OF NEW YORK, individually and )
15  AS TRUSTEE FOR THE CERTIFICATE   )   **DEMAND FOR JURY TRIAL**
    HOLDERS OF CWALT, INC. ALTERNATIVE )
16  LOAN TRUST 2007-OH2 MORTGAGE PASS- )
    THROUGH CERTIFICATE, SERIES 2007-0H2, )
17  THE BANK OF NEW YORK, SELECT     )
    PORTFOLIO SERVICING, INC., BANK OF )
18  AMERICA, N.A., RECONTRUST COMPANY, )   Complaint filed: December 13, 2016
    MORTGAGE ELECTRONIC REGISTRATION )
19  SYSTEM, INC. AMERICAN FINANCING  )
    CORPORATION, COUNTRYWIDE HOME
20  LOANS dba BANK OF AMERICA HOME
    LOANS, NATIONAL DEFAULT SERVICING
21  CORPORATION, REED SMITH LLP, STOEL
    RIVES LLP. SEVERSON & WERSON, YU
22  MOHANDESI, LLP, DOES 1 THROUGH 100

23
                    Defendant(s).
24

25  _____

26      Plaintiffs, DEBORAH AND JAMES RAY, hereinafter referred to as "Plaintiff's", submit

27  their Second Amended Complaint against Defendant  SELECT PORTFOLIO SERVICING, INC.,

28  hereinafter referred to as "SPS", a business entity unknown, in its capacity as servicer for Defendant

                                    - 1 -

BANK OF AMERICA, N.A., hereinafter referred to as "BOFA", a business entity unknown, Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, hereinafter referred to as "BONY", individually and AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007—OH2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OH2, hereinafter referred to as TRUST 2007-OH2, a business entity unknown, RECONTRUST COMPANY, N.A., hereinafter referred to as "RECON", a business entity unknown, all collectively sometimes referred to as BANK Defendants, who plead as follows:

1.  Plaintiffs allege that Defendant's and each of them, did not disclose to Plaintiff's that the lender of record did not risk any of its own capital under the transaction with Plaintiff's which is in violation of The Truth In Lending Act, hereinafter referred to as "TILA", (See Exhibit 1, Page 16).

2.  Plaintiffs allege that Defendants, and each of them violated The Home Ownership and Equity Protection act of 1994, hereinafter referred to as "HOEPA", by not adhering to the substantive limitations on closed-end mortgage loans bearing rates above a certain percentage amount.

3.  Plaintiffs allege that Defendants failed to notify Plaintiff that a transfer of ownership had occurred in violation of Title 15 USC, 1641(g), and in breach of their contract with Defendants, (See Exhibit 1, Page 18).

4.  Plaintiff alleges that Defendants, did not convey the loan into the TRUST 2007 OH2, the loan was never endorsed or signed therefore if Defendant cannot prove that the loan was conveyed into the Trust, Plaintiff's should be granted Quite Title of the residence located at 3190 Carlson Drive, Shingle Springs, CA 95682.

5.  Plaintiffs allege that Defendant BONY did not purchase the property located at 3190 Carlson Drive, Shingle Springs, CA  95682 at public auction on November 15, 2016.

On or around May 18, 2007, Plaintiffs executed a promissory note, hereinafter referred to as "Note", in the amount of $670,000.  Defendant's failed to disclose to Plaintiff's the structure of the loan and that Defendants were not risking any of their own capital as illustrated in Exhibit 1, Page 16. As a result, Plaintiffs were ultimately unable to maintain the loan and suffered monetary damages.

Defendants violated the HOEPA, by charging fees and percentage rates on the loan with Plaintiffs  in excess of what is required by law.  As a result, Plaintiffs suffered monetary damages.

Defendants failed to notify Plaintiffs when a transfer of ownership had occurred in violation of Title 15 USC, 1641(g).  As a result, it is unclear which, if any Defendant, ever had ownership of the loan.  Plaintiffs believe and allege that they are the only owners and should be given Quite Title due to Defendant's failure to give proper notice to Plaintiffs whenever the note changed ownership.

Defendants, SPS, BOFA, BONY and TRUST 2007-OH2, failed to convey the NOTE for the residence located at 3190 Carlson Drive, Shingle Springs, CA  95682.  As a result, it is unclear which entity if any actually holds title to the property (See Exhibit 1, Explanation of Important Concepts for the Countrywide Alternative Loan Trust 2007-OH2).  Exhibit 1 attached hereto and incorporated herein is an analysis of the TRUST 2007-OH2 that explains how Defendants and each of them defrauded borrowers causing them to lose their homes.  Plaintiffs intend to call the writer of this Prospectus as an expert at trial to prove to the court the fraud, miss representation and breach of contract by Defendants and each of them.

On November 15, 2017, Plaintiff JAMES RAY, attended the foreclosure auction at the courthouse located at 495 Main Street, Placerville, CA , for the sale of the residence located at 3190 Carlson Drive, Shingle Springs, CA  95682.  No person or entity bid on the residence that date.  There was no representative from BONY bidding on the residence.  The auctioneer had Plaintiff JAMES RAY, sign an affidavit stating that no person or entity bid of the residence that is a part of this litigation.  If BONY was not at the auction that day, then how were they able to obtain ownership of the property?  Plaintiffs allege that BONY purchased the residence through fraudulent means and therefore the sale should be null and void.

Wherefore, Plaintiffs pray for judgment against the Defendants and each of them, as follows:

1.   Plaintiffs shall be awarded the sum of $2,010,000 for punitive damages resulting from Defendants actions.

2.  Plaintiffs shall be awarded Quite Title of the residence located at 3190 Carlson Drive, Shingle Springs, CA  95682.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and if called to testify, could competently thereto.

Dated: 11/27/17

DEBORAH RAY
Plaintiff in Pro Per

Dated: 11-22-17

JAMES W. RAY
Plaintiff in Pro Per

- 3 -

July 7, 2011    *SEC DOCUMENT REVIEW*

# Explanation of Important Concepts for the [Counrtywide Alternative Loan Trust 2007-OH-2]

*Analysis of the Prospectus Supplement, Trust Agreement [Or Analysis of the Prospectus Supplement and Pooling and Servicing Agreement]*

*Secured Document Research*

*By Jim Macklin*          Fax   530   820  /526

*Created on October 30, 2011*

*Review of the following documents should be construed as a guideline for a variety of possible defaults, infractions, breaches of trust, violations of state and/or Federal laws, Codes, Regulations, and statutes. Nothing contained herein should be construed as legal advice or opinion. The authors are not licensed attorneys and are not offering any legal opinion, expressed or implied.*

*It is the opinion of the authors of this research that the original loan transaction(s) related to this specific research project was and is solely reliant upon the securitization, and subsequent conversion into a segregated bond form, of the asset Note used as evidence of an obligation by the Borrower. This opinion is based upon the "step transaction doctrine", as adopted by the courts, as a measure of any given transactions' interrelated and interdependent characteristics. Simply put, the bundling and selling of mortgage-backed securities is 100% reliant upon the market for borrowers to apply for and be approved for the mortgage loans which are funded by the willing participants in these investments (Hedge Fund Managers, etc..). The true "Creditors" of these transactions are the investors who equitably funded the purchase of the loans through the mechanism of certificated securities interests. However, due to the consumer lending laws and regulations, and the seemingly contradictive language of the controlling securitization documents, as filed for record with the United States Securities and Exchange Commission, there appear to be significant contractual differences in the terms and conditions as conveyed by the intermediary parties (Depositor, Sponsor, Warehouse Lender, Underwriter, Trustee) to the borrower and the opposing "Creditor"/investor.*

*Parties involved in this particular mortgage loan trust should consult their local County Recorders' Office for a complete review of all material filings as they relate to the subject property secured by the*



Exhibit 1

 **SEC DOCUMENT REVIEW**

alleged Deed of Trust, which is an incident to the Note. Conversely, all securitization documents related to the mortgage loan trust referenced herein should be immediately confirmed and certified by interested parties through a request from the S.E.C. (information available at: certified@sec.gov). Because litigation may be imminent in the instant matter, it is incumbent upon the interested parties that competent counsel be consulted. The complexity of the relationship between the loan transaction(s) and the supporting securitization of the Note demand the attention of a qualified representative in order that all manner of consumer relief is examined.

The authors have extrapolated information from public sources which they believe to be critical to understanding the true nature of the entire transaction(s) as they relate to the subject mortgage loan trust and the asset Note as allegedly signed by the Borrower. Many contributing factors are present in this examination such as: indispensible parties to the transaction, Primary Mortgage Insurance, current loan level files as reported to the mortgage loan trust, warranties and representations of the necessary parties, hold harmless clauses, duties and responsibilities of trust participants and Trustees, rights of certificateholders, conveyance of asset Notes, accountability of indispensible parties, successors in interest, controlling foreign laws, etc. These issues are crucial to the understanding of what rights, duties and responsibilities all parties to this transaction have toward one another.

The authors have made no assumptions as to legality or authenticity of the information contained herein, rather, they have relied solely upon the information provided within the scope of the public sources as it is written and filed for record. The plain meaning of the words are construed by the authors as meaning what they would under average and widely accepted terms, unless the definitions provided within the text of the documents instructs otherwise.

*Authors' Note: Please consult with qualified counsel for any and all legal questions regarding any of the information contained herein or the implications they may have on your personal property.  The following information was obtained at:  www.sec.gov and the file information is derived directly from these records as reported on this site. All commentary is strictly the opinion of the author and is not legal advice or opinion. Sections of the document have been interjected with commentary by the researcher and noted as: [commentary]. These "bracketed" comments are strictly the opinion of the author and is not legal advice or opinion, nor is it part of the original document as derived from the SEC's website. Any highlighted areas without "brackets" are a part of the original text of the document and are highlighted merely as a convenience for the reader.



 **SEC DOCUMENT REVIEW**

---

| Table of Contents |
|---|

15-15D..............................................................................................................................................3

Prospectus .................................................................................... *Error! Bookmark not defined.*

Pooling and Servicing Agreement.....................................................................................................

---

| **15-15D Form** |
|---|

```
<DOCUMENT>
<TYPE>15-15D
<SEQUENCE>1
<FILENAME>efc8-0135_6487812fm1515d.txt
<TEXT>
```

                    UNITED STATES
        SECURITIES AND EXCHANGE COMMISSION
              Washington, D.C. 20549


                     FORM 15

CERTIFICATION  AND NOTICE OF TERMINATION OF REGISTRATION  UNDER SECTION 12(g) OF
THE SECURITIES  EXCHANGE ACT OF 1934 OR SUSPENSION OF DUTY TO FILE REPORTS UNDER
SECTIONS 13 AND 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.

                                      Commission File Number 333-140962-16

                                                         ----------
---


                     CWALT, Inc.
-------------------------------------------------------------------------------
---

          (Exact name of registrant as specified in its charter)

                    4500 Park Granada
          Calabasas, California 91302 (818) 225-3000
-------------------------------------------------------------------------------
---

          (Address, including zip code, and telephone number, including
           area code, of registrant's principal executive offices)

                Alternative Loan Trust 2007-OH2,
          Mortgage Pass-Through Certificates, Series 2007-OH2

---

*July 2, 2009*    **SEC DOCUMENT REVIEW**

---------------------------------------------------------------------------
---
                    (Title of each class of securities covered by this Form)

                                    None
---------------------------------------------------------------------------
---
            (Titles of all other classes of securities for which a duty to
                file reports under section 13(a) or 15(d) remains)

            Please place an X in the box(es) to designate the appropriate rule
provision(s) relied upon to terminate or suspend the duty to file reports:

                Rule 12g-4(a)(1)(i)   [ ]    Rule 12h-3(b)(1)(ii) [ ]

                Rule 12g-4(a)(1)(ii) [ ]     Rule 12h-3(b)(2)(i)  [ ]

                Rule 12g-4(a)(2)(i)   [ ]    Rule 12h-3(b)(2)(ii) [ ]

                Rule 12g-4(a)(2)(ii) [ ]     Rule 15d-6           [X]

                Rule 12h-3(b)(1)(i)   [ ]

            Approximate number of holders of record as of the certification or
notice date:  1

<PAGE>


        Pursuant to the requirements of the Securities Exchange Act of 1934,
CWALT, Inc. has caused this certification/notice to be signed on its behalf by
the undersigned duly authorized person.



DATE:   January 24, 2008              BY:  /s/ Darren Bigby
                                           -----------------
                                           Darren Bigby
                                           Executive Vice
President


**[This form has been filed for record as of the date: Jan. 24, 2008. Under the Investment Co. Act of 1940, § 7, it would be a violation of the Act to attempt to transfer a security, or an interest in a security (deed/note) after this date if the Trust qualifies as an investment Co. under the Act. Counsel should review the trusts' qualifications and determine the legal question appropriate for the court in any action. Then verify the assignment date as recorded at the county recorders' office for the exact date of assignment into this trust.]**

*Secured Document Research | [Alt. Loan Trust 2007-OH-2* 

SEC DOCUMENT REVIEW

> **424 B5 Prospectus**

424B5 1 v079879_424b5.htm

Filed Pursuant to Rule 424b5
Registration File No. 333-140962

**PROSPECTUS SUPPLEMENT**
(To Prospectus dated June 27, 2007)

$984,602,100
(Approximate)
**CWALT, INC.**
Depositor



**HOME LOANS**

Sponsor and Seller
**Countrywide Home Loans Servicing LP**
Master Servicer
**Alternative Loan Trust 2007-OH2**
Issuing Entity
**Mortgage Pass-Through Certificates, Series 2007-OH2**
Distributions payable monthly, beginning July 25, 2007

The issuing entity will issue certificates, including the following classes of certificates that are offered pursuant to this prospectus supplement and the accompanying prospectus:

| | Initial Class Certificate Balance (1) | Pass-Through Rate(2) | | Initial Class Certificate Balance (1) | Pass-Through Rate(2) |
|---|---|---|---|---|---|
| Class A-1-A | $ 364,264,000 | Floating | Class M-1 | $ 12,546,000 | Floating |
| Class A-1-B | $ 200,000,000 | Floating | Class M-2 | $ 11,040,000 | Floating |
| Class A-2-A | $ 165,110,000 | Floating | Class M-3 | $ 5,520,000 | Floating |
| Class A-2-B | $ 70,000,000 | Floating | Class M-4 | $ 5,019,000 | Floating |
| Class A-3 | $ 141,067,000 | Floating | Class M-5 | $ 5,018,000 | Floating |
| Class A-R | $ 100 | Variable | Class M-6 | $ 5,018,000 | Floating |

**Consider carefully the risk factors beginning on page S-17 in this prospectus supplement and on page 2 in the**

(1) This amount is subject to a permitted variance in the aggregate of plus or minus 10%.

(2) The classes of certificates offered by this prospectus supplement, together with their pass-through rates, the index on which the pass-through rates are based and their initial ratings, are listed in the tables under "*Summary—Description of the Certificates*" beginning on page S-4 of this prospectus supplement.



 **SEC DOCUMENT REVIEW**

prospectus.

The certificates represent obligations of the issuing entity only and do not represent an interest in or obligation of CWALT, Inc., Countrywide Home Loans, Inc. or any of their affiliates.

This prospectus supplement and the accompanying prospectus relate only to the offering of the certificates listed above and not to the other classes of certificates that will be issued by the issuing entity. The certificates represent interests in a pool consisting primarily of 30-and 40-year conventional, hybrid negative amortization mortgage loans secured by first liens on one- to four-family residential properties.

Credit enhancement for the certificates consists of:

- Overcollateralization,
- Excess Cashflow, and
- Subordination.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

The credit enhancement for each class of certificates varies. Not all credit enhancement is available for every class. The credit enhancement for the certificates is described in more detail in this prospectus supplement.

The senior and subordinate certificates (other than the Class A-R Certificates) will have the benefit of an interest rate swap contract. Each of the Class A-1-B and Class A-2-B Certificates also will have the benefit of a separate interest rate swap contract.

*[Notice the distinction between the parties at the top of this document page 1: the Depositor is CWALT, Inc, a separate entity from the Sponsor/Seller, Countrywide Home Loans. The Master Servicer is Countrywide Home Loans Servicing LP, another separate entity. The Issuing Entity is the trust itself, Countrywide ALT 2007-OH2, a separate entity as well. These four different and separate entities all look and sound similar but are distinct in their capacities and functions under the Pooling and Servicing Agreement that attaches to this Prospectus. This necessary chain of entities shall become extremely important in the recorded chain of title as it is filed for record at the county in which the subject real property lies, which is the subject and "Res" of this trust...the monthly payment flow of funds from all of the loans as assets of this trust, if the loan, as an asset, ever properly and legally conveyed.]*

Summary

This summary highlights selected information from this document and does not contain all of the information that you need to consider in making your investment decision. To understand all of the terms of an offering of the certificates, read carefully this entire document and the accompanying prospectus.

While this summary contains an overview of certain calculations, cash flow priorities and other information to aid your understanding, you should read carefully the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus before making any investment decision.

*Issuing Entity*



July 7, 2010   *SEC DOCUMENT REVIEW*

Alternative Loan Trust 2007-OH2, a common law trust formed under the laws of the State of New York.

*See "The Issuing Entity" in this prospectus supplement.*

**Depositor**

CWALT, Inc., a Delaware corporation, is a limited purpose finance subsidiary of Countrywide Financial Corporation. Its address is 4500 Park Granada, Calabasas, California 91302, and its telephone number is (818) 225-3000.

*See "The Depositor" in the prospectus.*

**Sponsor and Sellers**

Countrywide Home Loans, Inc. will be the sponsor of the transaction and a seller of a portion of the mortgage loans. The remainder of the mortgage loans will be sold directly to the depositor by one or more special purpose entities that were established by Countrywide Financial Corporation or one of its subsidiaries, which acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.

*See "Servicing of Mortgage Loans—Countrywide Home Loans" in this prospectus supplement.*

**Originators**

Countrywide Home Loans, Inc. and Flagstar Bank, FSB originated approximately 72.66% and 23.18%, respectively, of the mortgage loans. The remainder of the mortgage loans were originated by various other originators, which, individually, originated less than 10% of the mortgage loans.

*See "The Mortgage Pool—Underwriting Process" in this prospectus supplement.*

**Master Servicer**

Countrywide Home Loans Servicing LP

*See "Servicing of Mortgage Loans—Countrywide Home Loans Servicing LP" in this prospectus supplement.*

**Trustee**

The Bank of New York

*See "Description of the Certificates—The Trustee" in this prospectus supplement.*

**Certificate Swap Counterparty**

Lehman Brothers Special Financing Inc.

*See "Description of the Certificates—Certificate Swap Contract" in this prospectus supplement.*

**NDI Swap Counterparty**

BNP Paribas



 **SEC DOCUMENT REVIEW**

See "*Description of the Certificates—NDI Swap Contracts*" in this prospectus supplement.

**The NIM Insurer**

After the closing date, a separate trust or trusts (or other form of entity) may be established to issue net interest margin securities secured by all or a portion of the Class C-P Certificates. Those net interest margin securities may have the benefit of one or more financial guaranty insurance policies that guaranty payments on those securities. The insurer or insurers issuing these financial guaranty insurance policies are referred to in this prospectus supplement as the "NIM Insurer." The references to the NIM Insurer in this prospectus supplement apply only if the net interest margin securities are so insured.

S-1

Any NIM Insurer will have a number of rights under the pooling and servicing agreement that will limit and otherwise affect the rights of the holders of the offered certificates. Any insurance policy issued by a NIM Insurer will not cover, and will not benefit in any manner whatsoever, the offered certificates.

See "*Risk Factors—Rights of the NIM Insurer*" in this prospectus supplement.

**Pooling and Servicing Agreement**

The pooling and servicing agreement among the sellers, the master servicer, the depositor and the trustee, under which the issuing entity will be formed.

**Cut-off Date**

For any mortgage loan, the later of June 1, 2007 and the date of origination of that mortgage loan (referred to as the "*cut-off date*").

**Closing Date**

On or about June 29, 2007.

**The Mortgage Loans**

The mortgage pool will consist of 30-year and 40-year conventional, hybrid negative amortization mortgage loans secured by first liens on one-to-four family residential properties. The mortgage rate on each mortgage loan is fixed for a period of five years after origination. Thereafter, the interest rate on each mortgage loan adjusts semi-annually or annually based on a specified index.

The statistical information presented in this prospectus supplement regarding the mortgage loans is as of the cut-off date. The depositor believes that the information set forth in this prospectus supplement regarding the mortgage loans as of the cut-off date is representative of the characteristics of the mortgage loans that will be delivered on the closing date. However, certain mortgage loans may prepay or may be determined not to meet the eligibility requirements for inclusion in the final mortgage pool. A limited number of mortgage loans may be substituted for the mortgage loans that are described in this prospectus supplement. Any substitution will not result in a material difference in the mortgage pool although the cut-off date information regarding the actual mortgage loans may vary somewhat from the information regarding the mortgage loans presented in this prospectus supplement.



 **SEC DOCUMENT REVIEW**

As of the cut-off date, the mortgage loans in the mortgage pool had the following characteristics:

| | |
|---|---|
| regate Current Principal Balance | $1,003,671,995 |
| iber of Mortgage Loans | 8 |
| rage Current Principal Balance | ?,458 |
| ge of Current Principal Balances | 140 to 00,000 |
| ghted Average Mortgage Rate less Lender Paid Mortgage Insurance | 6% |
| ghted Average Mortgage Rate | 6% |
| ge of Mortgage Rates | 5.250% to 9.875% |
| ghted Average Minimum Mortgage Rate | 5% |
| ghted Average Maximum Mortgage Rate | 28% |
| ghted Average Original Loan-to-Value Ratio | 2% |
| entage of Mortgage Loans with Original Loan-to-Value Ratios Greater than 80% | % |
| graphic Concentrations in excess of 10%: | |
| alifornia | 7% |
| ghted Average Original Term to Stated Maturity | months |
| ghted Average Remaining Term to Stated Maturity | months |
| entage of Mortgage Loans with Prepayment Charges | 5% |
| imum FICO Score | |
| .imum FICO Score | |
| ghted Average FICO Score of Mortgage Loans with known FICO score | |
| iber of Mortgage Loans with Unknown FICO Score | |
| entage of Mortgage Loans with Unknown FICO Score | % |
| ghted Average Gross Margin | 7% |
| :imum Negative Amortization: | |
| 105% | % |
| 110% | % |
| 115% | 0% |

*[All of the parties to the transaction are identified herein, along with the critical dates and descriptions. The cut-off date is a critical factor in determining whether or not the subject loan was effectively conveyed into the trust. If an opposing or different date of assignment is found in the record chain, counsel should review the New York Laws to determine if a triable issue of fact is present. See: NY CLS EPTL §7-2.4, Conveyances in contravention to the trust.*



 **SEC DOCUMENT REVIEW**

*Further, notice the inclusion of the mortgage loans themselves as a necessary party to the Summary of parties. Under the "Step Transaction Doctrine", as adopted by the courts, it appears that the transactions contemplated hereunder are interdependent of one another and would not exist if not for all necessary elements to the transactions, including the consumer credit transaction known as a mortgage loan...which are the alleged assets of the resulting trust.]*

*Fees and Expenses*

The amounts available for distributions on the certificates on any distribution date generally will not include the following amounts:

- □  □   the master servicing fee and additional servicing compensation (as described in this prospectus supplement under "*Servicing of Mortgage Loans—Servicing Compensation and Payment of Expenses*" and "*Description of the Certificates—Priority of Distributions Among Certificates*") due to the master servicer;

- □  □   the trustee fee due to the trustee;

- □  □   lender paid mortgage insurance premiums, if any;

- □  □   the amounts in reimbursement for advances previously made and other amounts as to which the master servicer and the trustee are entitled to be reimbursed from the Certificate Account pursuant to the pooling and servicing agreement;

- all prepayment charges (which are distributable only to the Class C-P Certificates); and

- all other amounts for which the depositor, a seller, the master servicer or any NIM Insurer is entitled to be reimbursed.

Any amounts paid from the amounts collected with respect to the mortgage loans will reduce the amount that could have been distributed to the certificateholders.

*Servicing Compensation*

*Master Servicing Fee:*

The master servicer will be paid a monthly fee (referred to as the master servicing fee) with respect to each mortgage loan equal to one-twelfth of the stated principal balance of that mortgage loan multiplied by a per annum rate (referred to as the master servicing fee rate) which equals 0.375%. The amount of the master servicing fee is subject to adjustment with respect to certain prepaid mortgage loans, as described under "*Servicing of Mortgage Loans—Adjustment to Servicing Compensation in Connection with Certain Prepaid Mortgage Loans*" in this prospectus supplement.

*Additional Servicing Compensation:*

The master servicer is also entitled to receive, as additional servicing compensation, all late payment fees, assumption fees and other similar charges (excluding prepayment charges) and all reinvestment income earned on



 **SEC DOCUMENT REVIEW**

amounts on deposit in certain of the issuing entity's accounts and excess proceeds with respect to mortgage loans as described under *"Description of the Certificates—Priority of Distributions Among Certificates"* in this prospectus supplement.

*Source and Priority of Payments:*

The master servicing fee and the additional servicing compensation described above will be paid to the master servicer from collections on the mortgage loans prior to any distributions on the certificates.

*See "Servicing of Mortgage Loans—Servicing Compensation and Payment of Expenses" and "Description of the Certificates—Payments on Mortgage Loans; Accounts" in this prospectus supplement.*

*[Since the fees are not available as payments to the equitable investors and the sole source of payment derives from the Borrowers in the form of monthly payments, these fees were never disclosed to the Borrower as fees directly attributable under the HUD-1 settlement statement. Even the "lender paid" mortgage insurance payments were not derived from the lender, rather, they are calculated as a percentage of the Borrowers' monthly payments, which may be construed as the Borrower being the third party beneficiary of the insurance guarantees issued to the certificate holders.]*

*Applied Realized Loss Amounts*

After the credit enhancement provided by excess cashflow and overcollateralization (if any) has been exhausted, collections otherwise payable to the subordinated classes will comprise the sole source of funds from which credit enhancement is provided to the senior certificates. Realized losses on the mortgage loans will be allocated in the following order of priority:

- □ □ to the subordinated certificates in the reverse order of their distribution priority, beginning with the class of subordinated certificates outstanding with the lowest distribution priority, until their respective class certificate balances are reduced to zero,

- □ □ to the Class A-3 Certificates, until its class certificate balance is reduced to zero,

- □ □ concurrently, to the Class A-2-A and Class A-2-B Certificates and the Class A-2-B swap principal amount, pro rata, until their respective class certificate balances or amount, as applicable, are reduced to zero, and

S-11

*[This is the sole method for the trust, as the real party in interest, to calculate a realized loss on all of the mortgage loans. The net calculated realized loss to the trust must be present prior to any Notice of default being valid as a publically recorded document as it relates the individual loan. If the trust has not experienced a loss, how is there any controversy in which to base any action under the law?]*

*Secured Document Research | [Alt. Loan Trust 2007-OH-2* 

**SEC DOCUMENT REVIEW**

*Credit Enhancement*

Credit enhancement provides limited protection to holders of certain certificates against shortfalls in payments received on the mortgage loans. This transaction employs the following forms of credit enhancement:

*Overcollateralization*

"Overcollateralization" refers to the amount by which the aggregate stated principal balance of the mortgage loans exceeds the sum of the aggregate class certificate balance of the LIBOR Certificates and the aggregate NDI swap principal amount, if any.

On the closing date, the aggregate stated principal balance of the mortgage loans is expected to exceed the initial aggregate class certificate balance of the LIBOR Certificates by approximately 0.90% of the aggregate stated principal balance of the mortgage loans as of the cut-off date.

The mortgage loans are expected to generate more interest than is needed to pay the net certificate swap payments to the certificate swap counterparty, the NDI swap fees, interest on the applicable interest-bearing classes of certificates, interest on the NDI swap principal amounts and the fees and expenses payable by the issuing entity.

On any distribution date, the amount of overcollateralization (if any) will be available to absorb the losses from liquidated mortgage loans if those losses are not otherwise covered by excess cashflow (if any). The required level of overcollateralization may change over time.

*See "Description of the Certificates—Overcollateralization Provisions" in this prospectus supplement.*

*Excess Cashflow*

Excess cashflow generally refers to the remaining amounts (if any) available for distribution to the certificates after interest funds and principal funds have been distributed.

On any distribution date, the excess cashflow (if any) will be distributed in the following order:

- ☐ to each NDI swap account (up to the related NDI swap principal amount) and to the classes of certificates that are entitled to receive principal on that distribution date to the extent necessary to restore or maintain the required level of overcollateralization;

- ☐ to the classes of senior certificates and to the NDI swap accounts in the following order:

  - concurrently, to the Class A-1-A and Class A-1-B Certificates and to the Class A-1-B swap account, pro rata based on the unpaid realized loss amount allocated to such classes and the Class A-1-B swap principal amount, respectively, in an amount up to the unpaid realized loss amount allocated to such classes and such amount, respectively,

  - concurrently, to the Class A-2-A and Class A-2-B Certificates and to the Class A-2-B swap account, pro rata based on the unpaid realized loss amount allocated to such classes and the Class A-2-B swap principal amount, respectively, in an amount up to the unpaid realized loss amount allocated to each such class and such amount, respectively, and

  - to the Class A-3 Certificates, in an amount up to the unpaid realized loss amount allocated for such class,



**SEC DOCUMENT REVIEW**

• ☐   ☐   sequentially, in order of their distribution priorities, to each class of subordinated certificates, in each case first in an amount up to any interest carry forward amount and then in an amount up to the unpaid realized loss amount for each such class;

• ☐   ☐   concurrently, to each class of LIBOR Certificates, pro rata based on their respective class certificate balances to the extent needed to pay any net rate carryover for each such class; and then any excess cashflow remaining will be distributed to each class of certificates with respect to which there remains any unpaid net rate carryover, pro rata, based on the amount of such remaining unpaid net rate carryover; *provided, however*, that, prior to the termination of an NDI swap contract, any amounts of unpaid net rate carryover that would be distributed to the related class of NDI swap certificates in the absence of the related NDI swap contract will instead be distributed to the related NDI swap account and, *provided further*, if an NDI swap termination payment (other than an NDI swap termination payment due to an NDI swap counterparty trigger event) is due to the NDI swap counterparty, then any amounts of unpaid net rate carryover that would be distributed to the related class of NDI swap certificates in the absence of such NDI swap termination payment will instead be distributed, up to the amount of such NDI swap termination payment, to the related NDI swap account;

S-12

• ☐   ☐   concurrently, to the certificate swap account and each NDI swap account, up to the amount of any unpaid certificate swap termination payment and unpaid related NDI swap termination payment due to the certificate swap counterparty and the NDI swap counterparty, respectively, as a result of a certificate swap counterparty trigger event or an NDI swap counterparty trigger event, as applicable, pro rata, based upon the respective amounts of such unpaid payments; and

• ☐   ☐   to the Class C-P and Class A-R Certificates, as specified in the pooling and servicing agreement.

### Subordination

The issuance of senior certificates and subordinated certificates by the issuing entity is designed to increase the likelihood that senior certificateholders will receive regular distributions of interest and principal.

The senior certificates will have a distribution priority over the subordinated certificates. Within the classes with an "M" designation, the distribution priority is in numerical order.

Once the protection provided by excess cashflow and overcollateralization is exhausted, subordination is designed to provide the holders of certificates having a higher distribution priority with protection against losses realized when the remaining unpaid principal balance of a mortgage loan exceeds the proceeds recovered upon the liquidation of that mortgage loan. In general, this loss protection is accomplished by allocating the realized losses on the mortgage loans first, among the subordinated certificates, beginning with the class of subordinated certificates then outstanding with the lowest distribution priority, and second to the senior certificates in accordance with the priorities set forth above under "—*Applied Realized Loss Amounts*."

*See "Description of the Certificates—Allocation of Losses" in this prospectus supplement and "Credit Enhancement" in the prospectus.*

### The Certificate Swap Contract

Countrywide Home Loans, Inc. has entered into an interest rate swap contract, which will be assigned to The Bank of New York, in its capacity as swap contract administrator, on the closing date. On each distribution date on or

*Secured Document Research | [Alt. Loan Trust 2007-OH-2* 

 **SEC DOCUMENT REVIEW**

prior to the certificate swap contract termination date, the certificate swap contract administrator will be obligated to pay to the certificate swap counterparty an amount equal to the product of (i) 5.35% per annum, (ii) the certificate swap contract notional balance for that distribution date and (iii) the number of days in the related calculation period (calculated on the basis of a 360-day year of twelve 30-day months), divided by 360. In addition, on the business day preceding each distribution date on or prior to the certificate swap contract termination date, the certificate swap counterparty will be obligated to pay to the certificate swap contract administrator an amount equal to the product of (i) one-month LIBOR (as determined by the certificate swap counterparty), (ii) the certificate swap contract notional balance for that distribution date, and (iii) the actual number of days in the related calculation period, divided by 360.

To the extent that the payment payable by the certificate swap contract administrator exceeds the payment payable by the certificate swap counterparty, the trustee will be required to deduct from the available funds the amount of that excess and, in its capacity as trustee of the certificate swap trust, to remit that excess to the certificate swap contract administrator for payment to the certificate swap counterparty. To the extent that the payment payable by the certificate swap counterparty exceeds the payment payable by the certificate swap contract administrator, the certificate swap counterparty will be required to pay to the certificate swap contract administrator the amount of that excess. Any net certificate swap payment received by the certificate swap contract administrator from the certificate swap counterparty will be remitted to the certificate swap trust only to the extent necessary to cover unpaid current interest, net rate carryover and unpaid realized loss amounts on the LIBOR Certificates and to maintain or restore overcollateralization. The remaining portion of any net certificate swap payment received by the certificate swap contract administrator from the certificate swap counterparty will be paid to Countrywide Home Loans, Inc. and will not be available to cover any amounts on any class of certificates.

S-13

See *"Description of the Certificates — Certificate Swap Contract" in this prospectus supplement*

*Advances*

The master servicer will make cash advances with respect to delinquent payments of principal and interest on the mortgage loans to the extent the master servicer reasonably believes that the cash advances can be repaid from future payments on the mortgage loans. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses.

See *"Servicing of Mortgage Loans—Advances" in this prospectus supplement.*

*Repurchase, Substitution and Purchase of Mortgage Loans*

The sellers may be required to repurchase, or substitute with a replacement mortgage loan, any mortgage loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of that mortgage loan that materially and adversely affects the interests of the certificateholders in that mortgage loan.

The master servicer may purchase from the issuing entity any mortgage loan that is delinquent in payment by 151 days or more. In addition, if a mortgage loan becomes subject to a repurchase obligation of an unaffiliated seller to Countrywide Home Loans due to a delinquency on a scheduled payment due on or prior to the first scheduled payment owing to the issuing entity regardless of current pay status, the master servicer will have the option to purchase that mortgage loan until the 270th day following the date on which that mortgage loan becomes subject to that repurchase obligation.



 **SEC DOCUMENT REVIEW**

If a borrower requests a reduction to the mortgage rate for the related mortgage loan, the master servicer is required to agree to that reduction if Countrywide Home Loans, Inc., in its corporate capacity, agrees to purchase that mortgage loan from the issuing entity. Countrywide Home Loans, Inc. will be obligated to purchase that mortgage loan upon modification of the mortgage rate by the master servicer. *See "Servicing of Mortgage Loans—Certain Modifications and Refinancings" in this prospectus supplement.*

The purchase price for any mortgage loans repurchased by a seller or purchased by the master servicer will generally be equal to the stated principal balance of the mortgage loan plus interest accrued at the applicable mortgage rate (and in the case of purchases by the master servicer, less the master servicing fee rate).

*See "The Mortgage Pool—General", "—Assignment of the Mortgage Loans" and "Description of the Certificates—Optional Purchase of Defaulted Loans and Certain Delinquent Loans" in this prospectus supplement and "Loan Program—Representations by Sellers; Repurchases" in the prospectus.*

**Optional Termination**

The holder of the largest percentage interest of the Class C-P Certificates (the directing holder) will have the right to instruct the trustee to conduct an auction of all of the remaining assets of the issuing entity on any distribution date on or after the first distribution date on which the aggregate stated principal balance of the mortgage loans and any related real estate owned by the issuing entity is less than or equal to 10% of the aggregate stated principal balance of the mortgage loans as of the cut-off date. If the first auction is unsuccessful, the auction process may be repeated periodically at the direction of the directing holder until a successful auction is conducted. In addition, if the first auction is unsuccessful, or if the directing holder does not request an auction, then the master servicer will have the option to purchase all of the remaining assets of the issuing entity. Any successful auction of all of the remaining assets of the issuing entity or any purchase of those assets by the master servicer will result in the early retirement of the certificates. The NIM Insurer may also have the right to purchase all of the remaining assets in the issuing entity.

*See "Description of the Certificates—Optional Termination" in this prospectus supplement.*

*[The highlighted section under Credit Enhancements illustrates the use of the Borrowers' money to facilitate certain payment guarantees against the possible default of all of the Loans, collectively. It is considered a part of this transaction, of which, the subject mortgage loan may be construed as a third party beneficiary under the Step Transaction Doctrine. Counsel should vigorously review this section and seek all remedy available to the Borrower. If the trust has not experienced a loss, how would the invocation of the non-judicial foreclosure statute be possible?]*

*Summary of Transaction Parties*





[*This transaction schematic is a simple overview of the parties who were involved and the subsequent transfers and conveyances that would be necessary to facilitate the assignment and endorsement chain...if the trust were to assert a claim of the loan as an asset. If one were to reverse the flow of the loans, one would find the true equitable investors as the source of funds used to "loan" money in the transaction. The lender of record never appears to risk one cent of its own capital under this transaction, a fact that was not disclosed to the Borrower. The terms and conditions of this transaction were never disclosed to the Borrower. See: TILA provisions. If the loan transaction was never properly described in the Note and Deed of Trust signed by the Borrower, is the Obligation described thereunder the true Obligation that arose? The term "Summary of Transaction Parties" is used in this section. The Mortgage loans are specifically named as Parties in this schematic, which was drafted by the Lender, Countrywide, or its agent(s)*]



 **SEC DOCUMENT REVIEW**

**Inability To Replace Master Servicer Could Affect Collections And Recoveries On The Mortgage Loans**

The structure of the master servicing fee might affect the ability to find a replacement master servicer. Although the trustee is required to replace the master servicer if the master servicer is terminated or resigns, if the trustee is unwilling (including for example because the master servicing fee is insufficient) or unable (including for example, because the trustee does not have the systems to service mortgage loans), it may be necessary to appoint a replacement master servicer. Because the master servicing fee is structured as a percentage of the stated principal balance of each mortgage loan, it may be difficult to replace the master servicer at a time when the balance of the mortgage loans has been significantly reduced because the fee may be insufficient to cover the costs associated with servicing the mortgage loans and related REO Properties remaining in the pool. The performance of the mortgage loans may be negatively impacted, beyond the expected transition period during a servicing transfer, if a replacement master servicer is not retained within a reasonable amount of time.

*[The fees paid to the Master Servicer are clearly a product of the Borrowers' monthly payment...a fact never disclosed to the Borrower.]*

**The Mortgage Pool**

General

The depositor, CWALT, Inc. (the "*depositor*"), will purchase the mortgage loans in the mortgage pool (which are collectively referred to as the "*Mortgage Loans*") from Countrywide Home Loans, Inc. ("*Countrywide Home Loans*") and one or more other sellers affiliated with Countrywide Financial Corporation (each of which is referred to as a "*seller*" and together they are referred to as the "*sellers*") pursuant to a pooling and servicing agreement, dated as of June 1, 2007 (the "*pooling and servicing agreement*"), among the sellers, Countrywide Home Loans Servicing LP, as master servicer (the "*master servicer*"), the depositor and The Bank of New York, as trustee (the "*trustee*"), and will cause the Mortgage Loans to be assigned to the trustee for the benefit of the holders of the certificates. Each seller, other than Countrywide Home Loans, will be a special purpose entity established by Countrywide Financial Corporation or one or more of its subsidiaries, which will sell mortgage loans previously acquired from Countrywide Home Loans.

Under the pooling and servicing agreement, Countrywide Home Loans will make certain representations, warranties and covenants to the depositor relating to, among other things, the due execution and enforceability of the pooling and servicing agreement and certain characteristics of the Mortgage Loans. In addition, each of the sellers will represent and warrant that, prior to the sale of the related Mortgage Loans to the depositor, the applicable seller had good title to the Mortgage Loans sold by it, was the sole owner of those Mortgage Loans free and clear of any pledge, lien, encumbrance or other security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign those Mortgage Loans pursuant to the pooling and servicing agreement. Subject to the limitations described in the next sentence and under "—*Assignment of the Mortgage Loans*," Countrywide Home Loans (or the related seller, in the case of the representation regarding good title) will be obligated to repurchase or substitute a similar mortgage loan for any Mortgage Loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of that Mortgage Loan that materially and adversely affects the interests of the certificateholders in that Mortgage Loan. Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the Mortgage Loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect adversely the interests of the certificateholders. *See "Loan Program—Representations by Sellers; Repurchases" in the prospectus.*



 **SEC DOCUMENT REVIEW**

Under the pooling and servicing agreement, the depositor will assign all of its right, title and interest in the representations, warranties and covenants (including the sellers' repurchase or substitution obligations) to the trustee for the benefit of the certificateholders. The depositor will represent that following the transfer of the Mortgage Loans to it by the sellers, the depositor had good title to the Mortgage Loans and that each of the mortgage notes was subject to no offsets, defenses or counterclaims. The depositor will make no other representations or warranties with respect to the Mortgage Loans and will have no obligation to repurchase or substitute Mortgage Loans with deficient documentation or which are otherwise defective. The sellers are selling the Mortgage Loans without recourse and will have no obligation with respect to the certificates in their respective capacities as sellers other than the repurchase or substitution obligations described above. The obligations of the master servicer with respect to the certificates are limited to the master servicer's contractual servicing obligations under the pooling and servicing agreement.

*[Under these terms, the Seller(s), Countrywide or its affiliates, will "sell" the mortgage loans to the Depositor, CWALT, Inc. This means that, under Title 15 USC, 1641(g), the Depositor had an obligation to Notice the Borrower that a transfer of ownership had occurred. Also, the Depositor must have recorded their interest by assignment at the recorders' office and must be evident in the chain of assignments and endorsements that confirms the full and legal conveyance into this trust. If not, the laws of New York may have been broken, along with the laws of the state of California (2932.5, etc..). A second assignment from the Depositor to the trust, or trustee on behalf of the trust, must have been endorsed and recorded in order to be qualified as an asset of this trust...all within 90 days of the closing date(June 29, 2007). See: IRS Rule 860D(a)(4).*

No Mortgage Loan had a Loan-to-Value Ratio at origination of more than 100%. Generally, each Mortgage Loan with a Loan-to-Value Ratio at origination of greater than 80% will be covered by a primary mortgage guaranty insurance policy issued by a mortgage insurance company acceptable to Fannie Mae or Freddie Mac. The policy provides coverage in an amount equal to a specified percentage multiplied by the sum of the remaining principal balance of the related Mortgage Loan, the accrued interest on it and the related foreclosure expenses. Generally, the specified coverage percentage for mortgage loans with terms to maturity of between 25 and 30 years is,

S-37

- ○   12% for Loan-to-Value Ratios between 80.01% and 85.00%,

- ○   25% for Loan-to-Value Ratios between 85.01% and 90.00%,

- ○   30% for Loan-to-Value Ratios between 90.01% and 95.00%, and

- ○   35% for Loan-to-Value Ratios between 95.01% and 100%.

Generally, the specified coverage percentage for mortgage loans with terms to maturity of up to 20 years ranges from



*SEC DOCUMENT REVIEW*

- 6% to 12% for Loan-to-Value Ratios between 80.01% and 85.00%,

- 12% to 20% for Loan-to-Value Ratios between 85.01% and 90.00%, and

- 20% to 25% for Loan-to-Value Ratios between 90.01% and 95.00%.

The required coverage percentage of mortgage insurance is determined by the type, term and Loan-to-Value Ratio of the mortgage loan and may also vary based on occupancy type. However, under certain circumstances, the specified coverage level may vary from the foregoing. With regard to approximately 4.20% of the Mortgage Loans, by aggregate Stated Principal Balance of the Mortgage Loans as of the cut-off date, the lender (rather than the borrower) acquired the primary mortgage guaranty insurance and charged the related borrower an interest premium. Except for these lender acquired mortgage insurance Mortgage Loans, no primary mortgage guaranty insurance policy will be required with respect to any Mortgage Loan if maintaining the policy is prohibited by applicable law or after the date on which the related Loan to Value Ratio is 80% or less or, based on a new appraisal, the principal balance of the Mortgage Loan represents 80% or less of the new appraised value. The primary mortgage guaranty insurance policy will be maintained for the life of the lender acquired mortgage insurance mortgage loans, unless otherwise provided in the mortgage note or otherwise prohibited by law.

*[Under this section, it is clear that the Borrower was charged for mortgage insurance which covered, in most instances, 35% of the principal balance of their loan amount. Coupled with loan loss insurance, credit default swaps, NIMS insurance, and so on, the remaining principal balance of the subject may less than 20% of the principal balance...all based on Borrowers' payments as the source of the insurance policies. If the net aggregate loan balance was $600,000.00, the average balance after the default insurance is reduced to $390,000.00. This amount does not reflect the amounts being represented to the Borrower(s). Many other ancillary forms of credit enhancement were used as a hedge against losses to the investors, who were the creditors, and are the only parties entitled to make a claim against the Borrower(s) through the trustee.]*

**Assignment of the Mortgage Loans**

Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2007-OH2, including all principal and interest received on or with respect to the Mortgage Loans, but not any principal and interest due on or before the cut-off date.

In connection with the transfer and assignment of a Mortgage Loan, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, the mortgage file, which contains among other things,

- the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse, except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost,

- the original instrument creating a first lien on the related mortgaged property with evidence of recording indicated thereon or a copy of such instrument,





**SEC DOCUMENT REVIEW**

- an assignment in recordable form of the mortgage or a copy of such assignment,

- the original or a copy of the title policy with respect to the related mortgaged property, and

S-39

- if applicable, all recorded intervening assignments of the mortgage or copies thereof and any riders or modifications to the mortgage note and mortgage or copies thereof (except for any documents not returned from the public recording office, which will be delivered to the trustee as soon as the same is available to the depositor).

With respect to up to 50% of the Mortgage Loans, the depositor may deliver all or a portion of each related mortgage file to the trustee not later than thirty days after the closing date. Assignments of the Mortgage Loans to the trustee (or its nominee) will be recorded in the appropriate public office for real property records, except in states where, in the opinion of counsel, recording is not required to protect the trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the depositor or any seller or a transferor, as the case may be. The depositor expects that substantially all of the assignments of the Mortgage Loans will not be recorded based on an opinion of counsel.

*[This section specifically spells out the intent and knowledge of the parties that a defined method for assignment and endorsement must be followed in order for the asset loan to be conveyed into this trust. Under the record, this was not followed. It appears that the loan was never endorsed or assigned per this trust agreement. When a loan closes, there is a reason that there is a gap between the time a loan is closed and the time the first payment is due. Simply, the money has been floated to escrow using credit lines established by the Wall St. firms that have a selling interest in the securities. Then, the investor money is sent to the Depositor which, in turn, replenishes the "lenders" line of credit. Thus, the "purchase" of the loans is bankruptcy remote and the lender is paid a fee (2nd tier yield spread premium that was also never disclosed to the Borrower) at a discount to the principal amount of the loan. None of the banking intermediaries ever risk the principal amount...that burden is carried by the mortgage-backed securities investors, who thought they were buying "AAA" rated securities!]*

The trustee will hold the mortgage loan documents in trust for the benefit of the holders of the certificates in accordance with its customary procedures, including storing the documents in fire-resistant facilities. The trustee will review each mortgage file relating to the Mortgage Loans within 90 days of the closing date (or promptly after the trustee's receipt of any document permitted to be delivered after the closing date). If any document in a mortgage file is found to be missing or defective in a material respect and Countrywide Home Loans does not cure the defect within 90 days of notice of the defect from the trustee (or within such longer period not to exceed 720 days after the closing date as provided in the pooling and servicing agreement in the case of missing documents not returned from the public recording office), Countrywide Home Loans will be obligated to repurchase the related Mortgage Loan from the issuing entity at the purchase price described in the prospectus under "Loan Program—

*Secured Document Research | [Alt. Loan Trust 2007-OH-2* 

 **SEC DOCUMENT REVIEW**

Representations by Sellers; Repurchases." Rather than repurchase the Mortgage Loan as provided above, Countrywide Home Loans may remove the Mortgage Loan (referred to as a "*deleted mortgage loan*") from the issuing entity and substitute in its place another mortgage loan (referred to as a "*replacement mortgage loan*"); however, such a substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the trustee to the effect that such a substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Internal Revenue Code of 1986, as amended (the "*Code*"). Any replacement mortgage loan generally will, on the date of substitution, among other characteristics set forth in the pooling and servicing agreement,

- have a principal balance, after deduction of all scheduled payments due in the month of substitution, not in excess of, and not more than 10% less than, the Stated Principal Balance of the deleted mortgage loan (the amount of any shortfall to be deposited by Countrywide Home Loans in the Certificate Account and held for distribution to the certificateholders on the related Distribution Date (referred to as a "*Substitution Adjustment Amount*")),

- have a Maximum Mortgage Rate not more than 1% per annum higher or lower than the Maximum Mortgage Rate of the deleted mortgage loan,

- have a Minimum Mortgage Rate specified in its related mortgage note not more than 1% per annum higher or lower than the Minimum Mortgage Rate of the deleted mortgage loan,

- have the same Mortgage Index, reset period, payment cap and recast provisions as the deleted mortgage loan and a Gross Margin not more than 1% per annum higher or lower than that of the deleted mortgage loan,

- have a Mortgage Rate not lower than, and not more than 1% per annum higher than that of the deleted mortgage loan,

- have a Loan-to-Value Ratio not higher than that of the deleted mortgage loan,

- have a remaining term to maturity not greater than (and not more than one year less than) that of the deleted mortgage loan, and

- comply with all of the representations and warranties set forth in the pooling and servicing agreement as of the date of substitution.

S-40

---

This cure, repurchase or substitution obligation constitutes the sole remedy available to certificateholders or the trustee for omission of, or a material defect in, a mortgage loan document.

*[This disclosure is very important to the Borrower. If the sole remedy of a predatory loan, or a loan that was never properly conveyed into this trust, then foreclosure is not an option available to the trust...period.]*



 **SEC DOCUMENT REVIEW**

## Advances

Subject to the following limitations, the master servicer will be required to advance before each Distribution Date, from its own funds or funds in the Certificate Account that do not constitute Available Funds for the Distribution Date, an amount equal to:

- the aggregate of payments of principal and interest on the Mortgage Loans (net of the related Master Servicing Fee) that were due on the related Due Date and that were delinquent on the related Determination Date; and

- an amount equivalent to interest (net of the Master Servicing Fee Rate) on each Mortgage Loan as to which the related mortgaged property has been acquired by the issuing entity through foreclosure or deed-in-lieu of foreclosure (net of any net income on the property).

The "*Determination Date*" is the 22nd day of each month or, if that day is not a business day, the preceding business day; provided that the Determination Date in each month will be at least two business days before the related Distribution Date.

Advances are intended to maintain a regular flow of scheduled interest and principal payments on the certificates rather than to guarantee or insure against losses. The master servicer is obligated to make advances with respect to delinquent payments of principal of or interest on each Mortgage Loan to the extent that the advances are, in its reasonable judgment, recoverable from future payments and collections or insurance payments or proceeds of liquidation of the related Mortgage Loan. If the master servicer determines on any Determination Date to make an advance, the advance will be included with the distribution to certificateholders on the related Distribution Date. Any failure by the master servicer to make a deposit in the Certificate Account as required under the pooling and servicing agreement, including any failure to make an advance, will constitute an event of default under the pooling and servicing agreement if the failure remains unremedied for five days after written notice of the event of default. If the master servicer is terminated as a result of the occurrence of an event of default, the trustee or the successor master servicer will be obligated to make any advance, in accordance with the terms of the pooling and servicing agreement.

An Advance will be reimbursed from the payments on the Mortgage Loan with respect to which the Advance was made. However, if an Advance is determined to be nonrecoverable and the master servicer delivers an officer's certificate to the trustee indicating that the Advance is nonrecoverable, the master servicer will be entitled to withdraw from the Certificate Account an amount equal to the nonrecoverable Advance. Reimbursement for Advances and nonrecoverable Advances will be made prior to distributions on the certificates.

*[The servicer has volunteered in advance and in complete understanding to make advances of all principal and interest to the trust in the event of a default or delinquency of any and all of the subject loans. This appears to be a form of surety or guarantee to the creditors on behalf of the Borrowers...see section 9 of the Borrowers' note, or under the heading "obligations of all persons under this Note".]*

## Fees and Expenses

The following summarizes the related fees and expenses to be paid from the assets of the issuing entity and the source of payments for the fees and expenses:



July 27, 2011  **SEC DOCUMENT REVIEW**

| Type / Recipient (1) | Amount | General Purpose | Source (2) | Frequency |
|---|---|---|---|---|
| **Fees** | | | | |
| Master Servicing Fee / Master Servicer | One-twelfth of the Stated Principal Balance of each Mortgage Loan multiplied by the Master Servicing Fee Rate (3) | Compensation | Amounts on deposit in the Certificate Account representing payments of interest and application of liquidation proceeds with respect to that Mortgage Loan. | Monthly |
| Additional Servicing Compensation / Master Servicer | Prepayment Interest Excess | Compensation | Interest payments in connection with certain prepayments on the mortgage loans | Monthly |
| | All late payment fees, assumption fees and other similar charges (excluding prepayment charges) | Compensation | Payments made by obligors with respect to the Mortgage Loans | Time to time |
| | All investment income earned on amounts on deposit in the Certificate Account and Distribution Account | Compensation | Investment income related to the Certificate Account and the Distribution Account | Monthly |
| | Excess Proceeds (4) | Compensation | Liquidation proceeds and Subsequent Recoveries | Time to time |
| Trustee Fee (the "*Trustee Fee*") / Trustee | One-twelfth of the Trustee Fee Rate multiplied by the aggregate Stated Principal Balance of the outstanding Mortgage Loans (5) | Compensation | Amounts on deposit in the Certificate Account or the Distribution Account | Monthly |
| **Expenses** | | | | |
| Insured expenses / Master Servicer | Expenses incurred by the master servicer | Reimbursement of Expenses | To the extent the expenses are covered by an insurance policy with respect to the Mortgage Loan | Time to time |
| Servicing Advances / Master Servicer | To the extent of funds available, the amount of any Servicing Advances | Reimbursement of Expenses | With respect to each Mortgage Loan, late recoveries of the payments of the costs and expenses, liquidation proceeds, Subsequent Recoveries, purchase proceeds or repurchase proceeds for that Mortgage Loan (6) | Time to time |
| Indemnification expenses / the sellers, the master | Amounts for which the sellers, the master servicer and depositor are entitled to | Indemnification | Amounts on deposit on the Certificate Account | Monthly |



**SEC DOCUMENT REVIEW**

servicer and the     indemnification (7)
depositor

S-61

*[Irrefutable confirmation that all expenses and fees as listed above are a direct derivative of the Borrowers' monthly payments...which were never disclosed to the Borrower(s).]*

**Use of Proceeds**

We expect the proceeds to the depositor from the sale of the offered certificates to be approximately $1,014,696,336 before deducting issuance expenses payable by the depositor. The depositor will apply the net proceeds of the sale of these classes of certificates against the purchase price of the Mortgage Loans.
**Pg. S-111**

*[This verifies the intent and purpose of the issuing entity and the parties hereto was to use the proceeds from the sale of securities to fund the subject loan. The two principals to the several, interdependent, and interrelated transactions are the investors and the Borrowers.]*

**Pooling and Servicing Agreement**

**Exhibit 4.1**

CWALT, INC.,
Depositor

COUNTRYWIDE HOME LOANS, INC.,
Seller

PARK GRANADA LLC,
Seller

PARK MONACO INC.,
Seller



*SEC DOCUMENT REVIEW*

PARK SIENNA LLC,
Seller

COUNTRYWIDE HOME LOANS SERVICING LP,
Master Servicer
and

THE BANK OF NEW YORK,
Trustee

## POOLING AND SERVICING AGREEMENT
Dated as of June 1, 2007

ALTERNATIVE LOAN TRUST 2007-OH2

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OH2

**[This is the title page of the Pooling and Servicing Agreement.]**

THIS POOLING AND SERVICING AGREEMENT, dated as of June 1, 2007, among CWALT, INC., a Delaware corporation, as depositor (the "Depositor"), COUNTRYWIDE HOME LOANS, INC. ("*Countrywide*"), a New York corporation, as a seller (a "*Seller*"), PARK GRANADA LLC ("*Park Granada*"), a Delaware limited liability company, as a seller (a "*Seller*"), PARK MONACO INC. ("*Park Monaco*"), a Delaware corporation, as a seller (a "*Seller*"), PARK SIENNA LLC ("*Park Sienna*"), a Delaware limited liability company, as a seller (a "*Seller*"), COUNTRYWIDE HOME LOANS SERVICING LP, a Texas limited partnership, as master servicer (the "*Master Servicer*"), and THE BANK OF NEW YORK, a banking corporation organized under the laws of the State of New York, as trustee (the "*Trustee*").

WITNESSETH THAT

In consideration of the mutual agreements contained in this Agreement, the parties to this Agreement agree as follows:

PRELIMINARY STATEMENT

The Depositor is the owner of the Trust Fund that is hereby conveyed to the Trustee in return for the Certificates. For federal income tax purposes, the Trust Fund (excluding the Pre-Funding Account, the Capitalized Interest Account and the Carryover Reserve Fund), will consist of three real estate mortgage investment conduits (each a "REMIC" or, in the alternative, the "Subsidiary REMIC" and the "Master REMIC," respectively). Each Certificate, other than the Class A-R Certificate, will represent ownership of one or more regular interests in the Master REMIC for purposes of the REMIC Provisions. The Class A-R Certificate represents ownership of the sole Class of residual interest in each of the Swap-IO REMIC, Subsidiary REMIC and the Master REMIC. The Master REMIC will hold as assets the several classes of uncertificated Subsidiary REMIC Interests (other than the SR-A-R Interest). The Subsidiary REMIC will hold as assets the several classes of uncertificated Swap-IO REMIC Interests (other than the SW-A-R Interest). The Swap-IO REMIC will hold as assets all the property of the Trust Fund



 **SEC DOCUMENT REVIEW**

(excluding the Pre-Funding Account, the Capitalized Interest Account and the Carryover Reserve Fund). For federal income tax purposes, each Swap-IO REMIC, Subsidiary REMIC Interest and Master REMIC Interest (except the SW-A-R Interest, SR-A-R Interest and the A-R Interest) is hereby designated as a regular interest in its issuing REMIC. The latest possible maturity date of all REMIC regular interests created hereby shall be the Latest Possible Maturity Date.

The Swap Trust, the Swap Contracts and the Swap Accounts will not constitute any part of any REMIC.

*[The Depositor here has effectively exchanged the mortgage loans, which it alleges it has good and marketable title to, for the certificates.]*

<u>Advance</u>:  The payment required to be made by the Master Servicer with respect to any Distribution Date pursuant to Section 4.01, the amount of any such payment being equal to the aggregate of payments of principal and interest (net of the Master Servicing Fee) on the Mortgage Loans that were due on the related Due Date and not received by the Master Servicer as of the close of business on the related Determination Date, together with an amount equivalent to interest on each Mortgage Loan as to which the related Mortgaged Property is an REO Property, net of any net income from such REO Property, less the aggregate amount of any such delinquent payments that the Master Servicer has determined would constitute a Nonrecoverable Advance if advanced.

13

*[This definition from the PSA confirms the advances made are mandatory, unless the servicer determines in its own discretion that it may not be recoverable...this appears to be a surety or voluntary form of guarantee, however, counsel should review this section and render their legal opinion as to any claims that the Borrower may have. See: UCC 3-602, Cal. Comm. Code 3602.]*

<u>Cut-off Date Pool Principal Balance</u>:  An amount equal to the sum of (x) the Initial Cut-off Date Pool Principal Balance plus (y) the amount, if any, deposited in the Pre-Funding Account on the Closing Date.

<u>Cut-off Date Principal Balance</u>:  As to any Mortgage Loan, the Stated Principal Balance thereof as of the close of business on the Cut-off Date.

*[The sole value of the loan pool is derived from the principal (not the interest portion) of the subject loan(s). Since the trust is prohibited from holding or acquiring any other interests as a REMIC, it is axiomatic that the Borrowers payment stream, which is their property as an asset, is the sole source of all monetary interests generated by the use of those funds.]*

<u>Lender PMI Mortgage Loan</u>:  Certain Mortgage Loans as to which the lender (rather than the Mortgagor) acquires the Primary Insurance Policy and charges the related Mortgagor an interest premium.



 **SEC DOCUMENT REVIEW**

*[Counsel should review and discover any and all insurance policies for possible Borrowers interests.]*

Primary Insurance Policy:  Each policy of primary mortgage guaranty insurance or any replacement policy therefor with respect to any Mortgage Loan.

*[These policies should also be discovered.]*

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS;
REPRESENTATIONS AND WARRANTIES

SECTION 2.01. Conveyance of Mortgage Loans.

(a)        Each Seller, concurrently with the execution and delivery of this Agreement, hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all its respective right, title and interest in and to the related Initial Mortgage Loans, including all interest and principal received or receivable by such Seller, on or with respect to the applicable Initial Mortgage Loans after the Initial Cut-off Date and all interest and principal payments on the related Initial Mortgage Loans received prior to the Initial Cut-off Date in respect of installments of interest and principal due thereafter, but not including payments of principal and interest due and payable on such Initial Mortgage Loans, on or before the Initial Cut-off Date.  On or prior to the Closing Date, Countrywide shall deliver to the Depositor or, at the Depositor's direction, to the Trustee or other designee of the Depositor, the Mortgage File for each Mortgage Loan listed in the Mortgage Loan Schedule (except that, in the case of the Delay Delivery Mortgage Loans (which may include Countrywide Mortgage Loans, Park Granada Mortgage Loans, Park Monaco Mortgage Loans or Park Sienna Mortgage Loans), such delivery may take place within thirty (30) days following the Closing Date or twenty (20) days following the applicable Supplemental Transfer Date, as applicable).  Such delivery of the Mortgage Files shall be made against payment by the Depositor of the purchase price, previously agreed to by the Sellers and Depositor, for the Mortgage Loans.  With respect to any Initial Mortgage Loan that does not have a first payment date on or before the Due Date in the month of the first Distribution Date or any Supplemental Mortgage Loan that does not have a first payment date on or before the Due Date in the month after the related Supplemental Transfer Date, Countrywide shall deposit into the Distribution Account on or before the Distribution Account Deposit Date relating to the first applicable Distribution Date, an amount equal to one month's interest at the related Adjusted Mortgage Rate on the Cut-off Date Principal Balance of such Mortgage Loan.

Countrywide further agrees (x) to cause The Bank of New York to enter into the Swap Contract Administration Agreement as Swap Contract Administrator and (y) to assign all of its right, title and interest in and to the Swap Contracts to, and to cause all of its obligations in respect of each such transaction to be assumed by, the Swap Contract Administrator on the terms and conditions set forth in the related Swap Contract Assignment Agreement.

(b)        Immediately upon the conveyance of the Initial Mortgage Loans referred to in clause (a), the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with the Depositor's right to require each Seller to cure any breach of a representation or warranty made in this Agreement by such Seller or to repurchase or substitute for any affected Mortgage Loan in accordance herewith.



 **SEC DOCUMENT REVIEW**

(c)      In connection with the transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee (or, in the case of the Delay Delivery Mortgage Loans that are Initial Mortgage Loans, will deliver or cause to be delivered to the Trustee within thirty (30) days following the Closing Date and in the case of the Delay

54

Delivery Mortgage Loans that are Supplemental Mortgage Loans, will deliver or cause to be delivered to the Trustee within twenty (20) days following the applicable Supplemental Transfer Date) for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned:

(i)  (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of_____ without recourse," with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or

(B) with respect to any Lost Mortgage Note, a lost note affidavit from Countrywide stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;

(ii)  except as provided below and for each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage or a copy of such Mortgage, with recording information, (or, in the case of a Mortgage for which the related Mortgaged Property is located in the Commonwealth of Puerto Rico, a true copy of the Mortgage certified as such by the applicable notary) and in the case of each MERS Mortgage Loan, the original Mortgage or a copy of such mortgage, with recording information, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon, or a copy of the Mortgage certified by the public recording office in which such Mortgage has been recorded;

(iii)  in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage or a copy of such assignment, with recording information, (which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments of such mortgage or a copy of such assignment, with recording information, (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates); provided that, if the related Mortgage has not been returned from the applicable public recording office, such assignment of the Mortgage may exclude the information to be provided by the recording office; provided, further, that such assignment of Mortgage need not be delivered in the case of a Mortgage for which the related Mortgaged Property is located in the Commonwealth of Puerto Rico;

(iv)  the original or copies of each assumption, modification, written assurance or substitution agreement, if any;

55

(v)  except as provided below, the original or a copy of lender's title policy or a printout of the electronic equivalent and all riders thereto; and

(vi)  in the case of a Cooperative Loan, the originals of the following documents or instruments:

(A)      The Coop Shares, together with a stock power in blank;



**SEC DOCUMENT REVIEW**

(B)        The executed Security Agreement;

(C)        The executed Proprietary Lease;

(D)        The executed Recognition Agreement;

(E)        The executed UCC-1 financing statement with evidence of recording thereon which have been filed in all places required to perfect the applicable Seller's interest in the Coop Shares and the Proprietary Lease; and

(F)        The executed UCC-3 financing statements or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation).

In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at the Trustee's expense, the MERS® System to indicate that the Mortgage Loans sold by such Seller to the Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement (and any Supplemental Transfer Agreement, as applicable) for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS® System to identify the series of the Certificates issued in connection with such Mortgage Loans. Each Seller further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan sold by such Seller to the Depositor during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

In the event that in connection with any Mortgage Loan that is not a MERS Mortgage Loan the Depositor cannot deliver (a) the original recorded Mortgage or a copy of such Mortgage, with recording information, (b) all interim recorded assignments or a copy of such assignments, with recording information, or (c) the lender's title policy or a copy of the lender's title policy (together with all riders thereto) satisfying the requirements of clause (ii), (iii) or (v) above, respectively, concurrently with the execution and delivery of this Agreement because such document or documents have not been returned from the applicable public recording office in the case of clause (ii) or (iii) above, or because the title policy has not been delivered to either the Master Servicer or the Depositor by the applicable title insurer in the case of clause (v) above, the Depositor shall promptly deliver to the Trustee, in the case of clause (ii) or (iii) above, such original Mortgage or a copy of such Mortgage, with recording information, or such interim

56

***[This section is critical to the conveyances of mortgages. Counsel must determine if these mandates, in trust, were adhered to. It appears that they were not.]***

SECTION 2.03.        <u>Representations, Warranties and Covenants of the Sellers and Master Servicer</u>.

(a)        Countrywide hereby makes the representations and warranties set forth in (i)  Schedule II-A, Schedule II-B, Schedule II-C and Schedule II-D hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, (ii)  Schedule III-A hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to all of the Initial Mortgage Loans and as of the related Supplemental Cut-off Date with respect to all of the Supplemental Mortgage Loans, and (iii)  Schedule III-B hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing



 **SEC DOCUMENT REVIEW**

Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Countrywide Mortgage Loans and as of the related

64

Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans that are Countrywide Mortgage Loans. Park Granada hereby makes the representations and warranties set forth in (i) Schedule II-B hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date and (ii) Schedule III-C hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Park Granada Mortgage Loans and as of the related Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans that are Park Granada Mortgage Loans. Park Monaco hereby makes the representations and warranties set forth in (i) Schedule II-C hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date and (ii) Schedule III-D hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Park Monaco Mortgage Loans and as of the related Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans that are Park Monaco Mortgage Loans. Park Sienna hereby makes the representations and warranties set forth in (i) Schedule II-D hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date and (ii) Schedule III-E hereto, and by this reference incorporated herein, to the Depositor, the Master Servicer and the Trustee, as of the Closing Date, or if so specified therein, as of the Initial Cut-off Date with respect to the Initial Mortgage Loans that are Park Sienna Mortgage Loans and as of the related Supplemental Cut-off Date with respect to the Supplemental Mortgage Loans that are Park Sienna Mortgage Loans.

(b)     The Master Servicer hereby makes the representations and warranties set forth in Schedule IV hereto, and by this reference incorporated herein, to the Depositor and the Trustee, as of the Closing Date.

(c)     Upon discovery by any of the parties hereto of a breach of a representation or warranty with respect to a Mortgage Loan made pursuant to Section 2.03(a) or a breach of a representation or warranty with respect to a Supplemental Mortgage Loan under Section 2.01(e)(i) that materially and adversely affects the interests of the Certificateholders in that Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties and the NIM Insurer. Each Seller hereby covenants that within 90 days of the earlier of its discovery or its receipt of written notice from any party of a breach of any representation or warranty with respect to a Mortgage Loan sold by it pursuant to Section 2.03(a) and with respect to a breach of a representation and warranty with respect to a Supplemental Mortgage Loan sold to it under Section 2.01(e)(i) that materially and adversely affects the interests of the Certificateholders in that Mortgage Loan, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) if such 90-day period expires prior to the second anniversary of the Closing Date, remove such Mortgage Loan (a "Deleted Mortgage Loan") from the Trust Fund and substitute in its place a Substitute Mortgage Loan, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below; provided, however, that any such substitution pursuant to (i) above shall not be effected prior to the delivery to the Trustee of the Opinion of Counsel required by Section 2.05, if any, and any such substitution pursuant to (i) above shall not be effected prior to the additional delivery to the Trustee of a Request for Release substantially in the form of Exhibit N and the Mortgage File for

65

any such Substitute Mortgage Loan. The Seller repurchasing a Mortgage Loan pursuant to this Section 2.03(c) shall promptly reimburse the Master Servicer and the Trustee for any expenses reasonably incurred by the Master Servicer or the Trustee in respect of enforcing the remedies for such breach. With respect to the representations and warranties described in this Section which are made to the best of a Seller's knowledge, if it is discovered by either the Depositor, a Seller or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interests of the



 **SEC DOCUMENT REVIEW**

Certificateholders therein, notwithstanding that Seller's lack of knowledge with respect to the substance of such representation or warranty, such inaccuracy shall be deemed a breach of the applicable representation or warranty.

With respect to any Substitute Mortgage Loan or Loans sold to the Depositor by a Seller, Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) shall deliver to the Trustee for the benefit of the Certificateholders the Mortgage Note, the Mortgage, the related assignment of the Mortgage, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed and the Mortgage assigned as required by Section 2.01. No substitution is permitted to be made in any calendar month after the Determination Date for such month. Scheduled Payments due with respect to Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the related Seller on the next succeeding Distribution Date. For the month of substitution, distributions to Certificateholders will include the monthly payment due on any Deleted Mortgage Loan for such month and thereafter that Seller shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the related Seller shall be deemed to have made with respect to such Substitute Mortgage Loan or Loans, as of the date of substitution, the representations and warranties made pursuant to Section 2.03(a) with respect to such Mortgage Loan. Upon any such substitution and the deposit to the Certificate Account of the amount required to be deposited therein in connection with such substitution as described in the following paragraph, the Trustee shall release the Mortgage File held for the benefit of the Certificateholders relating to such Deleted Mortgage Loan to the related Seller and shall execute and deliver at such Seller's direction such instruments of transfer or assignment prepared by Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna), in each case without recourse, as shall be necessary to vest title in that Seller, or its designee, the Trustee's interest in any Deleted Mortgage Loan substituted for pursuant to this Section 2.03.

For any month in which a Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will determine the amount (if any) by which the aggregate principal balance of all Substitute Mortgage Loans sold to the Depositor by that Seller as of the date of substitution is less than the aggregate Stated Principal Balance of all Deleted Mortgage Loans repurchased by that Seller (after application of the scheduled principal portion of the monthly payments due in the month of substitution). The amount of such shortage (the "Substitution Adjustment Amount") plus an amount equal to the aggregate of any unreimbursed Advances with respect to such Deleted Mortgage Loans shall be deposited in the

66

Certificate Account by Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) on or before the Distribution Account Deposit Date for the Distribution Date in the month succeeding the calendar month during which the related Mortgage Loan became required to be purchased or replaced hereunder.

*[This section should be reviewed by counsel for strict compliance. In most cases, it is the opinion of the author that these requirements were not adhered to at all.]*

SECTION 2.04.      <u>Representations and Warranties of the Depositor as to the Mortgage Loans</u>.

*Secured Document Research | [Alt. Loan Trust 2007-OH-2* 

 **SEC DOCUMENT REVIEW**

The Depositor hereby represents and warrants to the Trustee with respect to each Mortgage Loan as of the date of this Agreement or such other date set forth in this Agreement that as of the Closing Date, and following the transfer of the Mortgage Loans to it by each Seller, the Depositor had good title to the Mortgage Loans and the Mortgage Notes were subject to no offsets, defenses or counterclaims.

The Depositor hereby assigns, transfers and conveys to the Trustee all of its rights with respect to the Mortgage Loans including, without limitation, the representations and warranties of each Seller made pursuant to Section 2.03(a), together with all rights of the Depositor to require a Seller to cure any breach thereof or to repurchase or substitute for any affected Mortgage Loan in accordance with this Agreement.

It is understood and agreed that the representations and warranties set forth in this Section 2.04 shall survive delivery of the Mortgage Files to the Trustee. Upon discovery by the Depositor or the Trustee of a breach of any of the foregoing representations and warranties set forth in this Section 2.04 (referred to herein as a "breach"), which breach materially and adversely affects the interest of the Certificateholders, the party discovering such breach shall give prompt written notice to the others and to each Rating Agency and the NIM Insurer.

67

*[Again, as above, these rep's and warrants need counsels' review.]*

SECTION 3.17.     Errors and Omissions Insurance; Fidelity Bonds.

The Master Servicer shall for so long as it acts as master servicer under this Agreement, obtain and maintain in force (a) a policy or policies of insurance covering errors and omissions in the performance of its obligations as Master Servicer hereunder and (b) a fidelity bond in respect of its officers, employees and agents. Each such policy or policies and bond shall, together, comply with the requirements from time to time of FNMA or FHLMC for persons performing servicing for mortgage loans purchased by FNMA or FHLMC. In the event that any such policy or bond ceases to be in effect, the Master Servicer shall obtain a comparable replacement policy or bond from an insurer or issuer, meeting the requirements set forth above as of the date of such replacement.

*[Counsel should discover these policies and their effect upon the Borrower.]*

ARTICLE IV
DISTRIBUTIONS AND
ADVANCES BY THE MASTER SERVICER

SECTION 4.01.     Advances.

(a)     The Master Servicer shall determine on or before each Master Servicer Advance Date whether it is required to make an Advance pursuant to the definition thereof. If the Master Servicer determines it is required to make an Advance, it shall, on or before the Master Servicer Advance Date, either (i) deposit into the Certificate Account an amount equal to the Advance or (ii) make an appropriate entry in its records relating to the Certificate Account that any Amount Held for Future Distribution has been used by the Master Servicer in discharge of its obligation to make any such Advance. Any funds so applied shall be replaced by the Master Servicer by deposit in the Certificate Account no later than the close of business on the next Master Servicer Advance Date. The Master Servicer shall be entitled to be reimbursed from the Certificate Account for all Advances of its own funds made

 **SEC DOCUMENT REVIEW**

pursuant to this Section as provided in Section 3.08. The obligation to make Advances with respect to any Mortgage Loan shall continue if such Mortgage Loan has been foreclosed or otherwise terminated and the related Mortgaged Property has not been liquidated.

(b)     If the Master Servicer determines that it will be unable to comply with its obligation to make the Advances as and when described in the second sentence of Section 4.01(a), it shall use its best efforts to give written notice thereof to the Trustee (each such notice a "Trustee Advance Notice"; and such notice may be given by telecopy), not later than 3:00 P.M., New York time, on the Business Day immediately preceding the related Master Servicer Advance Date, specifying the amount that it will be unable to deposit (each such amount an "Advance Deficiency") and certifying that such Advance Deficiency constitutes an Advance hereunder and is not a Nonrecoverable Advance. If the Trustee receives a Trustee Advance Notice on or before 3:30 P.M., New York time on a Master Servicer Advance Date, the Trustee shall, not later than 3:00 P.M., New York time, on the related Distribution Date, deposit in the Distribution Account an amount equal to the Advance Deficiency identified in such Trustee Advance Notice unless it is prohibited from so doing by applicable law. Notwithstanding the foregoing, the Trustee shall not be required to make such deposit if the Trustee shall have received written notification from the Master Servicer that the Master Servicer has deposited or caused to be deposited in the Certificate Account an amount equal to such Advance Deficiency. All Advances made by the Trustee pursuant to this Section 4.01(b) shall accrue interest on behalf of the Trustee at the Trustee Advance Rate from and including the date such Advances are made to but excluding the date of repayment, with such interest being an obligation of the Master Servicer and not the Trust Fund. The Master Servicer shall reimburse the Trustee for the amount of any Advance made by the Trustee pursuant to this Section 4.01(b) together with accrued interest, not later than the fifth day following the related Master Servicer Advance Date. In the event that the Master Servicer does not reimburse the Trustee in accordance with the requirements of the preceding sentence, the Trustee shall have the right, but not the obligation, to immediately (a) terminate all of the rights and obligations of the Master Servicer under this Agreement in accordance with Section 7.01 and (b) subject to the limitations set forth in Section 3.04, assume all of the rights and obligations of the Master Servicer hereunder.

93

(c)     The Master Servicer shall, not later than the close of business on the second Business Day immediately preceding each Distribution Date, deliver to the Trustee a report (in form and substance reasonably satisfactory to the Trustee) that indicates (i) the Mortgage Loans with respect to which the Master Servicer has determined that the related Scheduled Payments should be advanced and (ii) the amount of the related Scheduled Payments. The Master Servicer shall deliver to the Trustee on the related Master Servicer Advance Date an Officer's Certificate of a Servicing Officer indicating the amount of any proposed Advance determined by the Master Servicer to be a Nonrecoverable Advance.

*[The advances are clearly defined and appear to be a form of guarantee that has been achieved through the use of Borrowers' money.]*

ARTICLE VIII
CONCERNING THE TRUSTEE

SECTION     Duties of Trustee.
8.01.

The Trustee, prior to the occurrence of an Event of Default and after the curing of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this



 **SEC DOCUMENT REVIEW**

Agreement. In case an Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they are in the form required by this Agreement; provided, however, that the Trustee shall not be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument.

No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; provided, however, that:

(i)      unless an Event of Default known to the Trustee shall have occurred and be continuing, the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believed in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder;

(ii)      the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be finally proven that the Trustee was negligent in ascertaining the pertinent facts;

(iii)      the Trustee shall not be liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of Holders of Certificates evidencing not less than 25% of the Voting Rights of Certificates relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement; and

(iv)      without in any way limiting the provisions of this Section 8.01 or Section 8.02, the Trustee shall be entitled to rely conclusively on the information delivered to it by the Master Servicer in a Trustee Advance Notice in determining whether it is required

120

to make an Advance under Section 4.01(b), shall have no responsibility to ascertain or confirm any information contained in any Trustee Advance Notice, and shall have no obligation to make any Advance under Section 4.01(b) in the absence of a Trustee Advance Notice or actual knowledge of a Responsible Officer of the Trustee that (A) such Advance was not made by the Master Servicer and (B) such Advance is not a Nonrecoverable Advance.

The Trustee hereby represents, warrants, covenants and agrees that, except as permitted by Article IX hereof, it shall not cause the Trust Fund to consolidate or amalgamate with, or merge with or into, or transfer all or substantially all of the Trust Fund to, another Person.

***[The trustees' duties and limitations are defined herein. Counsel should render a legal opinion as to this section and its implications upon title.]***



**SEC DOCUMENT REVIEW**

SECTION 10.03.    <u>Governing Law</u>.

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

*[Self explanatory]*

SECTION 10.04. <u>Intention of Parties</u>.

(a)        It is the express intent of the parties hereto that the conveyance of the (i) Mortgage Loans by the Sellers to the Depositor and (ii) Trust Fund by the Depositor to the Trustee  each be, and be construed as, an absolute sale thereof to the Trustee. It is, further, not the intention of the parties that such conveyances be deemed a pledge thereof. However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of any Seller or the Depositor, as the case may be, or if for any other reason this Agreement or any Supplemental Transfer Agreement is held or deemed to create a security interest in either such assets, then (i) this Agreement or any Supplemental Transfer Agreement shall be deemed to be a security agreement (within the meaning of the Uniform Commercial Code of the State of New York) with respect to all such assets and security interests and (ii) the conveyances provided for in this Agreement or any Supplemental Transfer Agreement shall be deemed to be an assignment and a grant pursuant to the terms of this Agreement (a) by each Seller to the Depositor or (b) by the Depositor to the Trustee, for the benefit of the Certificateholders and each Swap Counterparty, of a security interest in all of the assets that constitute the Trust Fund, whether now owned or hereafter acquired.

Each Seller and the Depositor for the benefit of the Certificateholders and each Swap Counterparty shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Trust Fund, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Agreement. The Depositor shall arrange for filing any Uniform Commercial Code continuation statements in connection with any security interest granted or assigned to the Trustee for the benefit of the Certificateholders and each Swap Counterparty.

(b)        The Depositor hereby represents that:

(i)        This Agreement creates a valid and continuing security interest (as defined in the Uniform Commercial Code as enacted in the State of New York (the "NY UCC")) in the Mortgage Notes in favor of the Trustee, which security interest is prior to all other

140

liens, and is enforceable as such as against creditors of and purchasers from the Depositor.

(ii)        The Mortgage Notes constitutes "instruments" within the meaning of the NY UCC.



### Land Title / County Recorders Office

| Time Order | Document | Grantor | Grantee / New Trustee | Executed Date | Recorded Date | Person / Capacity Signing | Statute, Law or Contract Section |
|---|---|---|---|---|---|---|---|
| | Deed of Trust: $670,000.00 Doc#2007-0035330-00 | James & Deborah Ann Ray | MERS as Nominee for American Financing Co. | 5/18/2007 | 5/25/2007 | James & Deborah Ray as Trustors | See: Cal. Financial Code 22001, 22009; Cal Civ Code 2306, 2309, 2313 |
| | Assignment of Deed of Trust Doc# 2011-0029080-00 (Together with the Note) | MERS, Inc. (No Agency Agreement in writing with Amer. Financing Co., as original lender) | BONY as Trustee for CWALT ALT Trust 2007-OH2 | 6/11/2011 | 6/24/2011 | Mercedes Judilla, Asst. Sec'y, MERS, Inc. | Trust was closed in 2007 and assignment into this trust after this date is prohibited |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Copyright © 2011 by Secure Document Research and DTC Systems, Inc. All Rights Reserved.     Created on May 3, 2011  Version 1.0     Page 1 of 1

# PROOF OF SERVICE

| | |
|---|---|
| Case Name: | Ray v. Bank of New York Mellon, et al. |
| Case Number: | PC20160566 |
| Court: | Superior Court of the State of California, in and for the County of El Dorado |
| Document(s) Served: | **Second Amended Summons, Second Amended Complaint** |

I declare that:

I am a citizen of the United States and am employed in the County of El Dorado, California. I am over the age of eighteen years and not a party to the action referenced above. My business address is 656 Main Street, Placerville, CA 95667. On November 27, 2017, I served a true copy of the documents referred to above on the interested parties to this action, addressed as follows:

SEE ATTACHED LIST

X     BY MAIL as follows: I am "readily familiar" with this office's practice of collection and processing correspondence for mailing. On the stated date I placed a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid, in the United States mail at Placerville, California.

BY FACSIMILE TRANSMISSION, pursuant to Cal. Rules of Court 2003-2008, as follows: On the date below at 0:00AM from fax machine number (530) 763-1565, I personally caused all of the pages of a true copy of the documents referred to above to be sent to the recipient(s) stated above via electronic facsimile transfer to recipient at the following facsimile telephone number:(000) 000-0000. The transmission was reported as complete and without error. A copy of the transmission report, issued by the transmitting facsimile machine, is attached to this proof of service, and the transmission report was properly issued by the transmitting facsimile machine.

BY PERSONAL DELIVERY as follows: I delivered a true copy of the documents referred to above by hand to the offices of the addressee pursuant to CCP § 1011.

XX     STATE: I declare under penalty of perjury that the foregoing is true and correct.

_     FEDERAL: I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

This declaration was executed on November 27, 2017, at Placerville, California.

_Sandra D. Hurley_
Sandra D. Hurley

**PROOF OF SERVICE**

POS-030(P)

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL - CIVIL (PERSONS SERVED)
*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| BONY Mellon | c/o Bank of America, N.A.<br>400 National Way<br>Simi Valley, CA  93065 |
| The Bank of New York | 101 Barclay Street, 4 West<br>New York, NY  10286<br>Attn:  Mortgage Backed Sec. |
| Bank of America, N.A. | 450 Boundry Street<br>Chapin, SC  29036 |
| Select Portfolio Servicing, Inc | P.O. Box 65277<br>Salt Lake City, UT  84165-2077 |
| Recontrust Company | 1800 Tapo Canyon Road<br>Simi Valley, CA  93063 |
| MERS, Inc. Nominee for<br>American Financing | P.O. Box 2026<br>Flint, MI  48501-2026 |
| American Financing Corp. | 3161 S. Vaughn Way, #500<br>Aurora, CO  80014 |
| Country Wide Homeloans<br>dba BofA Home Loans | 4500 Park Granada Blvd.<br>Calabassas, CA  91302 |
| National Default Servicing Corp. | 7720 North 16th St., Suite 300<br>Pittsburg, PA  15222 |
| Reed Smith, LLP | 20 Stanwix St., Suite 1200<br>Pittsburg, PA  15222 |
| Stoel River, LLP | 500 Capitol Mall, Suite 1600<br>Sacramento, CA  95814 |
| Severson & Werson | One Embarcadero Center, Suite  2600<br>San Francisco, CA  94111 |
| Yu Mohandesi LLP | 633 West Fifth Street, Suite 2800<br>Los Angeles, CA 90071 |
|  |  |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

Martin Dean's
ESSENTIAL FORMS™

ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS
MAIL-CIVIL (PERSONS SERVED)
(Proof of Service)

Page _____ of _____

Ray, James and Deborah

**EXHIBIT H**

**YU | MOHANDESI LLP**

**Jordan S. Yu** (SBN 227341)
213.377.5502 | jyu@yumollp.com
**Pavel Ekmekchyan** (SBN 223222)
213.985.2007 | pavel@yumollp.com
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
213.377.5501 Facsimile

Attorneys for Defendants
The Bank of New York Mellon as Trustee for the
Certificate Holders of CWALT, Inc. Alternative
Loan Trust 2007-OH2 Mortgage Pass-Through
Certificate Series 2007-OH2 (erroneously sued
"individually"); Mortgage Electronic Registration
Systems, Inc.; and Select Portfolio Servicing, Inc.

EL DORADO CO. SUPERIOR CT.

FILED   JUL 25 2018

BY _____
                  Deputy
I. VECHTOMOV

FILED BY FAX

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF EL DORADO

JAMES WILFRED RAY AND
DEBORAH ANN RAY, individuals,

Plaintiff(s),

vs.

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, individually and
AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF CWALT, INC. ALTERNATIVE
LOAN TRUST 2007-OH2 MORTGAGE PASS-
THROUGH CERTIFICATE, SERIES 2007-0H2,
THE BANK OF NEW YORK, SELECT
PORTFOLIO SERVICING, INC., BANK OF
AMERICA, N.A., RECONTRUST COMPANY,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEM, INC. AMERICAN FINANCING
CORPORATION, COUNTRYWIDE HOME
LOANS dba BANK OF AMERICA HOME
LOANS, NATIONAL DEFAULT SERVICING
CORPORATION, REED SMITH LLP,
DOES 1 TO 10

Defendant(s).

Case No.: PC 20160566

**NOTICE OF RULING RE DEMURRER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Honorable Warren C. Stracener

Complaint Filed: December 13, 2016

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

NOTICE OF RULING RE DEMURRER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

On July 19, 2018, the Court posted the tentative ruling attached hereto as Exhibit A on the Court's website.  As the Court's ruling warned:

> **NO HEARING ON THESE MATTERS WILL BE HELD (LEWIS V. SUPERIOR COURT (1999) 19 CAL.4TH 1232, 1247.), UNLESS A NOTICE OF INTENT TO APPEAR AND REQUEST FOR ORAL ARGUMENT IS TRANSMITTED ELECTRONICALLY THROUGH THE COURT'S WEBSITE OR BY TELEPHONE TO THE COURT AT (530) 621-6551 BY 4:00 P.M. ON THE DAY THE TENTATIVE RULING IS ISSUED. NOTICE TO ALL PARTIES OF AN INTENT TO APPEAR MUST BE MADE BY TELEPHONE OR IN PERSON.  PROOF OF SERVICE OF SAID NOTICE MUST BE FILED PRIOR TO OR AT THE HEARING.**

Counsel for Defendants The Bank of New York Mellon as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2007-OH2 Mortgage Pass-Through Certificate Series 2007-OH2 (erroneously sued "individually"); Mortgage Electronic Registration Systems, Inc.; and Select Portfolio Servicing, Inc. (collectively, "Defendants") did not receive Notice of Intent to Appear from Plaintiffs.  As a result, the attached tentative ruling became the final ruling of the Court, sustaining Defendants' demurrer to the Second Amended Complaint without leave to amend.

DATED:  July 25, 2018

YU | MOHANDESI LLP

By _____
Pavel Ekmekchyan
Attorneys for Defendants The Bank of New York
Mellon as Trustee for the Certificate Holders of
CWALT, Inc. Alternative Loan Trust 2007-OH2
Mortgage Pass-Through Certificate Series 2007-OH2
(erroneously sued "individually"); Mortgage Electronic
Registration Systems, Inc.; and Select Portfolio
Servicing, Inc.

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

**NOTICE OF RULING RE DEMURRER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

# EXHIBIT A

2.   **RAY v. BANK OF NEW YORK MELLON  PC-20160566**

(1)   **Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Demurrer to 2nd Amended Complaint.**

(2)   **Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Special Anti-SLAPP Motion to Strike 2nd Amended Complaint.**

(3)   **Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Motion to Strike 2nd Amended Complaint.**

(4)   **Defendants Bank of New York Mellon's, Select Portfolio Servicing, Inc.'s, and MERS' Demurrer to 2nd Amended Complaint.**

**Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Demurrer to 2nd Amended Complaint.**

Plaintiffs filed a 2nd amended complaint against defendants Bank of America, Recontrust Co., MERS, the law firm representing them, Severson and Werson, and others. The 2nd amended complaint alleges all defendants did not disclose to plaintiffs that the lender of record did not risk any of its own capital in lending money to plaintiffs, which violated the Truth in Lending Act (TILA); all defendants violated the Home Ownership and Equity Protection Act of 1994 (HOEPA) by not adhering to the substantive limitations on closed end mortgage loans bearing rates above a certain percentage amount; all defendants failed to notify plaintiff that a transfer of ownership had occurred in violation of 15 USC § 1641(g) and in breach of plaintiffs' contract with the defendants; all defendants did not convey the loan into the Trust 2007 OH2, the loan was never endorsed or signed, and, therefore, plaintiffs are entitled to quiet title to the subject residence; and defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016. (2nd Amended Complaint, page 2, lines 8-22.)

The caption page of the 2nd amended complaint states it is a 2nd amended complaint for violation of TILA, violation of HOEPA, fraud and breach of contract. Although the caption page does not state there is a quiet title cause of action, the 2nd amended complaint alleges plaintiff should be granted quiet title to the subject real property. (See 2nd Amended Complaint, page 2, lines 17-20 and page 3, lines 22-23.)

Defendants Bank of America, Recontrust Co., MERS, and the law firm representing them, Severson and Werson demur to the entire 2nd amended complaint on the following grounds: the entire complaint is uncertain in that while the 2nd amended complaint's caption page states that the 2nd amended complaint is asserting causes of action for violation of the Truth in Lending Act (TILA), violation of the Home Ownership and Equity Protection Act of 1994 (HOEPA), fraud and breach of contract, the 2nd amended complaint fails to allege any ascertainable claims against the demurring defendants and the factual allegations that are included in the 2nd amended complaint are grammatically and legally ambiguous and confused; the entire complaint is time barred by the applicable statutes of limitation; plaintiffs failed to allege sufficient facts to establish violations of either TILA or HOEPA; plaintiffs failed to allege sufficiently specific facts that identifies any particular misrepresentation by a specific person on behalf of a specific defendant and does not allege sufficient facts to establish plaintiffs relied on any alleged misrepresentation that resulted in damages; and plaintiffs failed to allege sufficient facts to establish what contractual provision was breached and facts establishing they were damaged.

The proof of service in the court's file declares that on December 11, 2018 notice of the hearing and the papers filed in support of the demurrers were served by mail on plaintiffs and counsel for the other defendants in this action. There is no document filed after the motion that is recognizable as an opposition to the demurrers.

On January 26, 2018 and February 23, 2018 plaintiffs filed Submissions for the Record wherein plaintiffs asserted arguments concerning the continued litigation of this action and the related unlawful detainer action brought by Bank of New York Mellon against plaintiffs in case number PCU-20170277, the requirement that plaintiffs pay court fees and the purported obligation of the court to justify each fee charged, and a demand that a court reporter be present at each and every hearing. The documents do not contain any arguments and points and authorities that are responsive to the defendants' demurrers.

When any ground for objection to a complaint appears on its face, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by demurrer to the pleading. (Code of Civil Procedure, § 430.30(a).)

"'A demurrer admits all material and issuable facts properly pleaded.  [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein.'  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)  Also, '... "plaintiff need only plead facts showing that he may be entitled to some relief [citation]." [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint.'  (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)" (Highlanders, Inc. v. Olsan (1978) 77 Cal.App.3d 690, 696-697.)

"We are required to construe the complaint liberally to determine whether a cause of action has been stated, given the assumed truth of the facts pleaded. (*Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 628 [246 Cal.Rptr. 185].)" (Picton v. Anderson Union High School Dist. (1996) 50 Cal.App.4th 726, 732-733.)

Inasmuch as plaintiffs have not set forth the 2nd amended complaint as separate causes of action, the court will be required to overrule the demurrer to the entire 2nd amended complaint

should the 2nd amended complaint state a cause of action under any legal theory. "A demurrer does not lie to a portion of a cause of action. (Citations Omitted.)" (PH II, Inc. v. Superior Court (1995) 33 Cal.App.4th 1680, 1682.) Where a portion of the cause of action is defective on the face of the complaint, the appropriate remedy is to bring a motion to strike that portion of the complaint. (PH II, Inc., supra at pages 1682-1683.)

With the above-cited principles in mind, the court will rule on the demurrers to the 2nd amended complaint.

Statute of Limitations/Statute of Repose

"'A demurrer on the ground of the bar of the statute of limitations will not lie where the action may be, but is not necessarily barred.' (*Moseley v. Abrams* (1985) 170 Cal.App.3d 355, 359, 216 Cal.Rptr. 40; *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 775, 167 Cal.Rptr. 440.) It must appear clearly and affirmatively that, upon the face of the complaint, the right of action is necessarily barred. (*Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 895, 136 Cal.Rptr. 865; *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155, 281 Cal.Rptr. 827.) This will not be the case unless the complaint alleges every fact which the defendant would be required to prove if he were to plead the bar of the applicable statute of limitation as an affirmative defense. (*Farris v. Merritt* (1883) 63 Cal. 118, 119.)" (Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort (2001) 91 Cal.App.4th 875, 881.)

An action under the federal Truth in Lending Act (TILA) must be brought within one year of the date of the violation of the Act. (15 USC § 1640(e).) The limitations period begins to run upon execution of the loan documents, because the borrower could have discovered the alleged disclosure violations and discrepancies at that time. (Cervantes v. Countrywide Home Loans, Inc. (9th Cir. 2011) 656 F.3d 1034, 1045.) While equitable tolling may be applied under

appropriate circumstances to suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action (<u>King v. State of Cal.</u> (9th Cir 1986) 784 F.2d 910, 915.), equitable tolling does not apply where nothing prevented the borrower from comparing the loan contract, the lender's initial disclosures, and TILA's statutory and regulatory requirements (<u>Hubbard v. Fidelity Federal Bank</u> (9th Cir 1996) 91 F.3d 75, 79.).

In addition, plaintiffs allege that defendants violated 15 USC 1641(g) by failure to notify them that the note/deed of trust was transferred/assigned. 15 USC 1641(g) is part of TILA. An action for damages for failure to notify the borrowers of an assignment of the deed of trust to a new creditor must be brought within one year of the violation. The court finds the following U.S. District Court opinion persuasive on this issue: "Hamilton alleges that U.S. Bank violated TILA Section 1641g because it did not disclose the identity of the current noteholder. 15 U.S.C. § 1641(g). The statute of limitations for TILA violations—with some exceptions not relevant here—is one year. *Id.* § 1640(e). According to Hamilton's securitization audit, Compl. Ex. D, his loan was last transferred in 2004. Additionally, U.S. Bank claims to have acquired an interest in Hamilton's mortgage in 2008 when the original lender was placed in receivership. US Bank Mot. to Dismiss at 12. As previously mentioned, Hamilton lost title to his house in 2010 when it was foreclosed. *Hamilton,* Case No. 3:11–cv–00977–DMS–RBB, 2011 WL 5976244. Under any possible transfer date, Count Seven is therefore barred by TILA's one-year statute of limitations." (<u>Hamilton v. JPMorgan Chase Bank</u> (D.D.C. 2015) 118 F.Supp.3d 328, 334.)

The court also finds persuasive the U.S. District Court opinion in <u>Vargas v. JP Morgan Chase Bank, N.A.</u> (C.D. Cal. 2014) 30 F.Supp.3d 945, which found that the one year statute of limitations commenced to run as of the date of violation of Section 1641(g) and the running of the statute was not equitably estopped merely because the new or former creditors did not

inform the borrowers of the assignment of the deed of trust. The U.S. District Court held: "The Court finds that Vargas's claims arising from the 2011 assignment are time-barred. It is apparent on the face of the Complaint that the one year limitations period has run. The alleged failure to disclose Assignment 1 occurred in September 2011; however, Vargas did not file his Complaint until April 30, 2014—well outside the one-year mark. (Compl. ¶¶ 28, 31.) ¶ Vargas argues that equitable tolling applies to save his TILA claim. He contends that he was unaware that WTNA claimed an ownership interest because he did not receive a copy of the assignment as required by TILA and was not required to check the recorder's office. (Compl. ¶¶ 33–38.) ¶ But equitable tolling is the exception—not the general rule. To allow tolling whenever a plaintiff alleges an improper disclosure would render the TILA limitations period completely meaningless. *Jacob,* 2010 WL 2673128 at *3. Vargas must allege more than the alleged TILA violation itself; the violation and tolling are not one and the same. It is rather unclear how Vargas can characterize his conduct as reasonably diligent when he did not check the recorder's office." (Vargas v. JP Morgan Chase Bank, N.A. (C.D. Cal. 2014) 30 F.Supp.3d 945, 949.)

"Plaintiffs also seek damages and rescission of their loan under HOEPA. HOEPA requires additional disclosures that for "a special class of regulated loans that are made at higher interest rates or with excessive costs and fees." *See Lynch v. RKS Mortg., Inc.,* 588 F.Supp.2d 1254, 1260 (E.D.Cal.2008) (quoting *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 304 (3d Cir.2005)). HOEPA is not itself an independent regulatory scheme, but rather it is an amendment to TILA codified at 15 U.S.C. § 1639. Claims under HOEPA are governed by the same statute of limitations as are claims under TILA—three years for claims seeking rescission, which begins to run from "the date of consummation of the transaction," and one year for claims seeking damages, which begins to run from "the occurrence of the violation." 15

U.S.C. §§ 1635(f), 1640(e); 12 C.F.R. § 226.23(a)(3). Like Plaintiffs' TILA claim, their allegations under HOEPA are time-barred, and thus Plaintiffs' claim is dismissed, with leave to amend." (Emphasis added.) (Kimball v. Flagstar Bank F.S.B. (S.D. Cal. 2012) 881 F.Supp.2d 1209, 1223.)

The U.S. Supreme Court stated the following when it reversed the Eight Circuit Court of Appeal decision finding that the TILA action for rescission had to be filed within the three year statute of repose of 15 USC §1635(f) and merely submitting a notice of rescission within the three year period was insufficient: "Congress passed the Truth in Lending Act, 82 Stat. 146, as amended, to help consumers "avoid the uninformed use of **[*792]** credit, and to protect the consumer against inaccurate and unfair credit billing." 15 U.S.C. § 1601(a). To this end, the Act grants borrowers the right to rescind a loan "until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so." § 1635(a) (2006 ed.)." This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements. But this conditional right to rescind does not last forever. Even if a lender *never* makes the required disclosures, the "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first." § 1635(f). The Eighth Circuit's affirmance in the present case rested upon its holding in *Keiran v. Home Capital, Inc.,* 720 F.3d 721, 727–728 (2013) that, unless a borrower has filed a suit for rescission within three years of the transaction's consummation, § 1635(f) extinguishes the right to rescind and bars relief. ¶ That was error. Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind ... *by notifying the creditor, in*

*accordance with regulations of the Board, of his intention to do so* " (emphasis added). <u>The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years. ¶ Nothing in § 1635(f) changes this conclusion. Although § 1635(f) tells us *when* the right to rescind must be exercised, it says nothing about *how* that right is exercised. Our observation in *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 417, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), that § 1635(f) "govern[s] the life of the underlying right" is beside the point.</u> That case concerned a borrower's attempt to rescind in the course of a foreclosure proceeding initiated six years after the loan's consummation. We concluded only that there was "no federal right to rescind, defensively or otherwise, after the 3–year period of § 1635(f) has run," *id.,* at 419, 118 S.Ct. 1408, not that there was no rescission until a suit is filed. ¶ Respondents do not dispute that § 1635(a) requires only written notice of rescission. Indeed, they concede that written notice suffices to rescind a loan within the first three days after the transaction is consummated. They further concede that written notice suffices after that period if the parties agree that the lender failed to make the required disclosures. Respondents argue, however, that if the parties dispute the adequacy of the disclosures—and thus the continued availability of the right to rescind—then written notice *does not* suffice. ¶ Section 1635(a) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter. In an effort to sidestep this problem, respondents point to a neighboring provision, § 1635(g), which they believe provides support for their interpretation *793 of the Act. Section 1635(g) states merely that, "[i]n any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the

right to rescind." Respondents argue that the phrase "award relief" "in addition to rescission" confirms that rescission is a consequence of judicial action. But the fact that it can be a consequence of judicial action when § 1635(g) is triggered in no way suggests that it can *only* follow from such action. The Act contemplates various situations in which the question of a lender's compliance with the Act's disclosure requirements may arise in a lawsuit—for example, a lender's foreclosure action in which the borrower raises inadequate disclosure as an affirmative defense. Section 1635(g) makes clear that a court may not only award rescission and thereby relieve the borrower of his financial obligation to the lender, but may also grant any of the remedies available under § 1640 (including statutory damages). It has no bearing upon whether and how borrower-rescission under § 1635(a) may occur. ¶ Finally, respondents invoke the common law. It is true that rescission traditionally required either that the rescinding party return what he received before a rescission could be effected (rescission at law), or else that a court affirmatively decree rescission (rescission in equity). 2 D. Dobbs, Law of Remedies § 9.3(3), pp. 585–586 (2d ed. 1993). It is also true that the Act disclaims the common-law condition precedent to rescission at law that the borrower tender the proceeds received under the transaction. 15 U.S.C. § 1635(b). But the negation of rescission-at-law's tender requirement hardly implies that the Act codifies rescission in equity. Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. *Astoria Fed. Sav. & Loan Assn. v. Solimino,* 501 U.S. 104, 108–109, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). The clear import of § 1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent § 1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice. ¶ * * * ¶ <u>The Jesinoskis mailed respondents written notice of</u>

<u>their intention to rescind within three years of their loan's consummation. Because this is all that a borrower must do in order to exercise his right to rescind under the Act, the court below erred in dismissing the complaint.</u> Accordingly, we reverse the judgment of the Eighth Circuit and remand the case for further proceedings consistent with this opinion." (<u>Jesinoski v. Countrywide Home Loans, Inc.</u> (2015) – US --, 135 S.Ct. 790, 791–793.)

"Because § 1635(f) is a statute of repose, it is not subject to tolling. *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329-30 (9th Cir. 2012), *abrogated on other grounds by Jesinoski*, 132 S. Ct. at 792; [Footnote omitted.] *see also Sotanski v. HSBC Bank USA, Nat'l Assoc.*, No. 15-CV-01489, 2015 WL 4760506, at *6 (N.D. Cal. Aug. 12, 2015), *appeal filed*, No. 15-16798 (9th Cir. Sept. 10, 2015) (equitable tolling does not apply to § 1635(f)'s deadline)." (<u>Mohanna v. Bank of America, N.A.</u> (N.D. Cal. 2016) 2016 WL 1729996, at *4.)

Plaintiffs admit they executed the note on May 18, 2007 in the amount of $670,000. (2nd Amended Complaint, page 2, lines 23-24.) The court takes judicial notice that a deed of trust securing the subject note was recorded on May 25, 2007 and appears to be executed by plaintiffs (Defendants' Request for Judicial Notice, Exhibit A.); and the action was commenced by filing the initial complaint on December 13, 2016.

Plaintiffs do not allege that they ever submitted notice of rescission to the lender and do not pray for rescission of the loan under TILA or HOEPA. Therefore, the face of the 2nd amended complaint establishes that any TILA or HOEPA cause of action for rescission would have been extinguished as of May 18, 2010.

The initial TILA and HOEPA violations occurred at the time the initial notifications were allegedly not provided, which was the date plaintiffs executed the note and deed of trust. The one year statute of limitations for those causes of action ran on May 18, 2008. There are no

allegations of fact in the 2nd amended complaint establishing that the one year statute for actions for damages was tolled under any legal theory.

As for the Section 1641(g) claim of failure to notify plaintiffs of a new creditor, that violation occurred at the time of the assignment of the deed of trust and alleged failure to notify plaintiffs of that assignment. The court takes judicial notice that the assignment of the deed of trust to defendant Bank of New York Mellon as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2007-OH2 was recorded on June 24, 2011. (Defendants' Request for Judicial Notice, Exhibit B – Assignment of Deed of Trust.) Therefore, the time limitation to bring an action for damages for alleged failure to notify plaintiffs of the change in creditors expired on June 24, 2012, which is over four years before this action was filed. Plaintiffs have not alleged any facts to establish that the one year statute of limitation to bring the Section 1641(g) cause of action was tolled under any legal theory.

The court finds that it appears clearly and affirmatively that, upon the face of the complaint and matters of which the court may take judicial notice of, the rights of action for rescission and/or damages under TILA or HOEPA are necessarily barred and the 15 USC § 1641(g) action for damages for alleged failure to notify plaintiffs of the change of creditor is also necessarily barred.

As for the fraud and breach of contract causes of action, There are no dates alleged as to when a breach of contract occurred or any dates of alleged misrepresentations, therefore, it does not appear clearly and affirmatively that, upon the face of the complaint, the right of action is necessarily barred.

Fraud Cause of Action

"…[E]very element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a

defective complaint. (*Hall v. Department of Adoptions* (1975) 47 Cal.App.3d 898, 904, 121 Cal.Rptr. 223.)" (Cooper v. Equity Gen. Insurance (1990) 219 Cal.App.3d 1252, 1262.) "This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." (*Hills Trans. Co. v. Southwest Forest Industries Inc.* (1968) 266 Cal.App.2d 702, 707, 72 Cal.Rptr. 441.)" (Stansfield v. Starkey (1990) 220 Cal.App.3d 59, 73.) "A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' (*Tarmann v. State Farm Mutual Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861.)" (Lazar v. Superior Court (1996) 12 Cal.4th 631, 645.)

The 2nd amended complaint contains no specific factual allegations to show what was misrepresented, how, when, where, to whom, and by what means the representations were tendered; and/or the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. Plaintiffs allege that an analysis of the prospectus of the Countrywide Alternative Loan Trust 2007-OH2 securitized trust attached as Exhibit 1 to the 2nd amended complaint explains how each and every defendant defrauded borrowers causing them to lose their homes and then refers to that analysis of the prospectus written by a some person who plaintiff alleges will testify at trial as an expert to prove fraud, misrepresentation and breach of contract by defendants. (2nd Amended Complaint, page 3, lines 7-11; and Exhibit 1.) A purported analysis by a purported expert regarding the securitized trust prospectus in general terms does not set forth sufficiently specific factual allegations concerning exact conduct by these specific defendants in this action that allegedly defrauded the plaintiffs in this action.

The 2nd amended complaint fails adequately allege a cause of action for fraud.

Breach of Contract Cause of Action

"… [T]he complaint must indicate on its face whether the contract is written, oral, or implied by conduct. (Code Civ.Proc., § 430.10, subd. (g).)  [Footnote omitted.] If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference. *(Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59, 35 Cal.Rptr. 652.)" (Otworth v. Southern Pac. Transportation Co. (1985) 166 Cal.App.3d 452, 458-459.)

"A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect. (*Id.,* §§ 479, 480, pp. 572–573.) In order to plead a contract by its legal effect, plaintiff must "allege the substance of its relevant terms. This is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." (*Id.,* § 480, p. 573.)" (Emphasis added.) (McKell v. Washington Mut., Inc. (2006) 142 Cal.App.4th 1457, 1489.)

"Under a breach of contract theory, the plaintiff must demonstrate a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and damage to the plaintiff. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570.)" (Amelco Electric v. City of Thousand Oaks (2002)  27 Cal.4th 228, 243.)

Plaintiffs allege a conclusion of law that the contract was breached when defendants failed to notify plaintiff that a transfer of ownership had occurred in violation of 15 USC § 1641(g). (2nd Amended Complaint, page 2, lines 15-17.) Plaintiffs have not alleged that the terms of the agreement mandated that the lender notify plaintiffs whenever they assigned the deed of trust and the court takes judicial notice that the sale of note provision of the deed of trust does not

mandate notification of the sale of the note. (See Defendants' Request for Judicial Notice, Exhibit A – Deed of Trust, page 11, paragraph 20.) That provision only requires notification of changes in loan servicers and provides: " …The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower…If there is a change in Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing…"

Plaintiffs also allege that plaintiffs were damaged when they were unable to maintain the loan, because defendants did not disclose that defendants were not risking any of their capital in making the loans as illustrated in Exhibit 1. (2nd Amended Complaint, page 2, lines 24-25.) There are no allegations in the 2nd amended complaint that there was any contract term requiring defendants to disclose that defendants were not risking any of their capital in making the loans.

The purported agreement is not alleged to be oral or written, there is no written agreement attached to the 2nd amended complaint, and the terms of the agreement are not set forth in the 2nd amended complaint either verbatim or as to its legal effect. The 2nd amended complaint fails to state a cause of action for breach of contract.

Quiet Title Cause of Action

Inasmuch as plaintiffs have referred to the court granting quiet title to the subject property in the 2nd amended complaint (See 2nd Amended Complaint, page 2, lines 18-21 and page 3, lines 22-23.), the court feels it is obligated to determine whether treating as true all of the complaint's material factual allegations and construing the complaint liberally to determine whether a cause of action has been stated, given the assumed truth of the facts pleaded, for

the purposes of demurrer (Picton v. Anderson Union High School Dist. (1996) 50 Cal.App.4th 726, 732-733.), the 2nd amended complaint states sufficient facts to state a cause of action to quiet title.

"An action may be brought under this chapter to establish title against adverse claims to real or personal property or any interest therein." (Code of Civil Procedure, § 760.020(a).) "The complaint shall be verified and shall include all of the following: ¶ (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any. ¶ (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession. ¶ (c) The adverse claims to the title of the plaintiff against which a determination is sought. ¶ (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought. ¶ (e) A prayer for the determination of the title of the plaintiff against the adverse claims." (Code of Civil Procedure, § 761.020.)

The Third District Court of Appeal has stated: "A quiet title action seeks to declare the rights of the parties in realty. A trial court should ordinarily resolve such dispute. This accords with the rule that a trial court should not dismiss a regular declaratory relief action when the plaintiff loses, but instead should issue a judgment setting forth the declaration of rights and thus ending the controversy. (See *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 729, 146 P.2d 673; *Haley v. L.A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 292-294, 342 P.2d 476.) As stated in a case involving Western's predecessors, " 'The object of the action is

to finally settle and determine, as between the parties, all conflicting claims to the property in

controversy, and to decree to each such interest or estate therein as he may be entitled to.' "

(*Yuba Invest. Co. v. Yuba Consol. Gold Fields* (1926) 199 Cal. 203, 209, 248 P. 672; see

*Gazos Creek Mill etc. Co. v. Coburn* (1908) 8 Cal.App. 150, 153, 96 P. 359 ["all parties were

before the court with their grievances"].)" (Emphasis added.) (Western Aggregates, Inc. v.

County of Yuba (2002) 101 Cal.App.4th 278, 305.)

Plaintiffs allege: defendants did not convey the loan into the Trust 2007 OH2; the loan was

never endorsed or signed and, therefore, defendants can not prove the loan was conveyed to

the Trust; plaintiffs should be granted quiet title to the subject residence encumbered by the

loan; inasmuch as the plaintiffs were not informed the deed of trust was assigned and

defendants failed to convey the note for the loan, it is unclear who actually holds title to the real

property; and defendant Bank of New York Mellon did not purchase the subject property at the

trustee's sale on November 15, 2016, because plaintiff was present at the public sale, no one

appeared to bid on the residence on that date, and defendant Bank of New York Mellon was

not at the auction. (2nd Amended Complaint, page 2, lines 17-22; page 3, lines 1-7; and page 3,

lines 12-15.)

The Supreme Court has reiterated the principle that the assignment of the underlying note

necessarily follows with the assignment of the deed of trust. "The deed of trust, moreover, is

inseparable from the note it secures, and follows it even without a separate assignment. (§

2936; *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291, 267 P.2d 16; *U.S. v.

Thornburg* (9th Cir.1996) 82 F.3d 886, 892.)" (Yvanova v. New Century Mortg. Corp. (2016) 62

Cal.4th 919, 927.) Therefore, the note/loan follows the assignment of the deed of trust and

allegations that the note/loan was not assigned does not give rise to any lack of clarity as to

who is the beneficiary of the deed of trust who has the power of sale.

An allegation that plaintiff was not notified that the deed of trust was assigned does not create a cloud on the title to the property or cause a lack of clarity as to who is the beneficiary of the deed of trust who has the power of sale. As stated earlier in this ruling, the court takes judicial notice that the assignment of the deed of trust to defendant Bank of New York Mellon as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2007-OH2, which was recorded on June 24, 2011. (Defendants' Request for Judicial Notice, Exhibit B – Assignment of Deed of Trust.) The court also takes judicial notice that plaintiffs agreed that MERS was the nominee for the Lender and its successors and assigns and the beneficiary of the Deed of Trust (See Defendants' Request for Judicial Notice, Exhibit A – Deed of Trust, page 1.) and that MERS as beneficiary of the deed of trust executed the assignment of deed of trust recorded on June 24, 2011 (Defendants' Request for Judicial Notice, Exhibit B – Assignment of Deed of Trust.). The recorded documents make it clear that plaintiffs' allegations that the defendants did not convey the loan into the Trust 2007 OH2 and it is unclear who actually holds title to the real property is unsupported and factually inaccurate as established by matters of which the court may take judicial notice.

The court may disregard facts alleged in the complaint that are contrary to matters judicially noticed. "The courts, however, will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed. (*Alphonzo E. Bell Corp. v. Bell View Oil Syndicate*, 46 Cal.App.2d 684, 116 P.2d 786; *Chavez v. Times Mirror Company*, 185 Cal. 20, 195 P. 666.) Thus, a pleading valid on its face may nevertheless be subject to demurrer when matters judicially noticed by the court render the complaint meritless." (Del E. Webb Corp. v. Structural Materials Co. (1981) 123 Cal.App.3d 593, 604.)

""The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." (*Moeller, supra,* 25 Cal.App.4th 822, 831, 30 Cal.Rptr.2d 777.)" (<u>Residential Capital v. Cal-Western Reconveyance Corp</u>. (2003) 108 Cal.App.4th 807, 824, fn. 4.)

The court takes judicial notice of the trustee's deed upon sale recorded on November 17, 2016. The trustee's deed upon sale states that the beneficiary of the deed of trust, defendant Bank of New York Mellon as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2007-OH2, was entitled to $986,631.38 in unpaid debt on the loan and paid $565,250 to purchase the subject real property, which appears to be a credit bid; that all requirements of law regarding recording and mailing of copies of the notice of default and election to sell, the recording, mailing, posting, and publication of the notice of trustee's sale have been complied with; and the trustee in accordance with the notice of trustee's sale and in exercise of its powers under the deed of trust sold the property at the public auction to the grantee, Bank of New York Mellon, on November 15, 2016, being the highest bidder at the sale. (Defendants' Request for Judicial Notice, Exhibit H – Trustee's Deed upon Sale recorded November 17, 2016.) That alleged fact that defendant Bank of New York Mellon was not physically present at the trustee's sale does not rebut the presumption of regularity of the sale. Plaintiff has not alleged that the auctioneer was not holding a credit bid by the deed of trust beneficiary/grantee in the event no one bid more than the credit bid. Acceptance of a beneficiary's credit bid when no one bid for the property does not render the sale irregular or fraudulent or make it unclear who actually holds title to the real property

The 2nd amended complaint does not allege sufficient facts to state a cause of action for quiet title.

Leave to Amend

The demurrers are effectively unopposed. Plaintiffs have had three opportunities to sufficiently allege a cause of action on any legal theory and has failed. There does not appear to be a reasonable possibility that the pleading can be cured by amendment, the 2nd amended complaint appears to be incapable of amendment to cure the defects, and plaintiff has not demonstrated how the 2nd amended complaint can be amended to cure the defects to state a cause of action under at least one theory of liability. (See Roman v. County of Los Angeles (2000) 85 Cal.App.4th 316, 322.) The demurrers to the entire 2nd amended complaint are sustained without leave to amend.

**Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Special Anti-SLAPP Motion to Strike 2nd Amended Complaint.**

Plaintiffs filed a 2nd amended complaint against defendants Bank of America, Recontrust Co., MERS, and the law firm representing them, Severson and Werson. The 2nd amended complaint alleges all defendants did not disclose to plaintiffs that the lender of record did not risk any of its own capital in lending money to plaintiffs, which violated the Truth in Lending Act (TILA); all defendants violated the Home Ownership and Equity Protection Act of 1994 (HOEPA) by not adhering to the substantive limitations on closed end mortgage loans bearing rates above a certain percentage amount; all defendants failed to notify plaintiff that a transfer of ownership had occurred in violation of 15 USC § 1641(g) and in breach of plaintiffs' contract with the defendants; all defendants did not convey the loan into the Trust 2007 OH2, the loan was never endorsed or signed, and, therefore, plaintiffs are entitled to quiet title of the

residence; and defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016. (2nd Amended Complaint, page 2, lines 8-22.)

Defendants Bank of America, Recontrust Co., MERS, and the law firm representing them, Severson and Werson move to strike the 2nd amended complaint as it relates to defendant Severson and Werson on the ground that the claims brought against defendant Severson and Werson are premised upon protected conduct of the law firm in defending its clients defendants Bank of America, Recontrust Co., and MERS in this lawsuit.

The proof of service in the court's file declares that on December 11, 2018 notice of the hearing and the special anti-SLAPP Motion to Strike were served by mail on plaintiffs and counsel for the other defendants in this action. There is no document filed after the motion that is recognizable as an opposition to the motion.

On January 26, 2018 and February 23, 2018 plaintiffs filed Submissions for the Record wherein plaintiffs asserted arguments concerning the continued litigation of this action and the related unlawful detainer action brought by Bank of New York Mellon against plaintiffs in case number PCU-20170277, the requirement that plaintiffs pay court fees and the purported obligation of the court to justify each fee charged, and a demand that a court reporter be present at each and every hearing. The documents do not contain any arguments and points and authorities that are responsive to the defendants' special anti-SLAPP motion to strike.

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim…" (Code of Civil Procedure, § 425.16(b)(1).)  "As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California

Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code of Civil Procedure, § 425.16(e).) "…[T]his section shall be construed broadly." (Code of Civil Procedure, § 425.16(a).)

"In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code of Civil Procedure, § 425.16(b)(2).)

"In 1992, the Legislature enacted section 425.16 in an effort to curtail lawsuits brought primarily 'to chill the valid exercise of ... freedom of speech and petition for redress of grievances' and 'to encourage continued participation in matters of public significance.' (§ 425.16, subd. (a).) The section authorizes a special motion to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue ....' (§ 425.16, subd. (b)(1).) The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings. (*Liu v. Moore* (1999) 69 Cal.App.4th 745, 750, 81 Cal.Rptr.2d 807; *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 672, 64 Cal.Rptr.2d 222.) The statute directs the trial court to grant the special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16,

subd. (b)(1).) ¶ The statutory language establishes a two-part test. First, we determine whether plaintiff's causes of action arose from acts by defendants in furtherance of defendants' rights of petition or free speech in connection with a public issue. (*Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721, 77 Cal.Rptr.2d 1, disapproved on another ground in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10, 81 Cal.Rptr.2d 471, 969 P.2d 564.) Assuming this threshold condition is satisfied, we then determine whether plaintiff has established a reasonable probability that she will prevail on her claims at trial. We must reverse the order denying the motion if plaintiff failed to make a prima facie showing in the trial court of facts, which, if proved at trial, would support a judgment in her favor.   (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 646, 653, 49 Cal.Rptr.2d 620.)" (Seelig v. Infinity Broadcasting Corp. (2002) 97 Cal.App.4th 798, 806-807.)

Defendants argue that there are no allegations of fact in the 2nd amended complaint that identifies any conduct by Severson and Werson to serve as a basis for the claims asserted against the firm and, therefore, no actions could have taken place that would serve as a basis to sue the law firm defendant other than the law firm's previous demurrers filed on behalf of the firm's clients, which is protected conduct.

Although the allegations of conduct are vague, ambiguous, and uncertain as they relate to defendant Severson and Werson's connection to the conduct complained of, the allegations do not allege any protected litigation conduct as the basis for the action filed against the defendant law firm.

In discussing the moving party's initial burden of proof of part one of the two part test, an appellate court stated: "Rudolph's first task is to make a prima facie showing that each cause of action against him "aris[es] from" activity he took "in furtherance" of his right to petition or free speech. Cal. Civ. Proc. Code § 425.16(b)(1). "[T]he critical consideration is whether the

cause of action is *based on* the defendant's protected" conduct. *Mindys*, 611 F.3d at 597

(quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 89, 124 Cal.Rptr.2d 530, 52 P.3d 703 (2002)).

Specifically, " 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the

plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or

free speech." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66, 124 Cal.Rptr.2d

507, 52 P.3d 685 (2002) (quoting *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993,

1003, 113 Cal.Rptr.2d 625 (2001))." (Emphasis added.) (Safari Club International v. Rudolph

(9th Cir. 2017) 862 F.3d 1113, 1119–1120.)

The moving defendants would have the court determine based upon a cause and effect

analysis that the underlying motivation of the naming of the law firm as a defendant in this

action was to retaliate against the defendant law firm due to its representation of its clients in

this action. The action pled against the defendant law firm, however, is not premised upon any

allegations of fact that arise from protected litigation conduct. "…"'the act underlying the

plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself*

have been an act in furtherance of the right of petition or free speech."…" (Safari Club

International v. Rudolph (9th Cir. 2017) 862 F.3d 1113, 1120.)

The moving defendants have not made a prima facie showing that each cause of action

asserted against defendant Severson and Werson arises from activity it took in furtherance of

its right to submit statements, writings and pleadings in connection with civil litigation.

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute--i.e., that arises

from protected speech or petitioning and lacks even minimal merit--is a SLAPP, subject to

being stricken under the statute." (Navellier v. Sletten (2002) 29 Cal.4th 82, 89.)

The special anti-SLAPP motion to strike is denied.

56

**Defendants Bank of America's, Recontrust Co.'s, MERS', and Severson and Werson's Motion to Strike 2nd Amended Complaint.**

The motion to strike the entire 2nd amended complaint on the ground that it does not comply with the pleading requirements of rules of court, rule 2.112 is dropped from the calendar as moot.

**Defendants Bank of New York Mellon's, Select Portfolio Servicing, Inc.'s, and MERS' Demurrer to 2nd Amended Complaint.**

Plaintiffs filed a 2nd amended complaint against defendants Bank of New York Mellon, Select Portfolio Servicing, Inc., MERS, and others. The 2nd amended complaint alleges all defendants did not disclose to plaintiffs that the lender of record did not risk any of its own capital in lending money to plaintiffs, which violated the Truth in Lending Act (TILA); all defendants violated the Home Ownership and Equity Protection Act of 1994 (HOEPA) by not adhering to the substantive limitations on closed end mortgage loans bearing rates above a certain percentage amount; all defendants failed to notify plaintiff that a transfer of ownership had occurred in violation of 15 USC § 1641(g) and in breach of plaintiffs' contract with the defendants; all defendants did not convey the loan into the Trust 2007 OH2, the loan was never endorsed or signed, and, therefore, plaintiffs are entitled to quiet title of the residence; and defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016. (2nd Amended Complaint, page 2, lines 8-22.) The allegations relate to the promissory note allegedly executed by plaintiffs on May 18, 2007. (2nd Amended Complaint, page 2, lines 22-23.)

From these allegations, the demurring defendants construe the 2nd amended complaint as asserting the following five causes of action: violation of TILA; violation of HOEPA; breach of contract; quiet title; and wrongful foreclosure.

The caption page of the 2nd amended complaint states it is a 2nd amended complaint for violation of TILA, violation of HOEPA, fraud and breach of contract. Although the caption page does not state there is a quiet title cause of action, the 2nd amended complaint alleges plaintiff should be granted quiet title to the subject real property. (See 2nd Amended Complaint, page 2, lines 17-20 and page 3, lines 22-23.)

The 2nd amended complaint does not allege the foreclosure itself was wrongful. Plaintiffs only contend that the trustee's sale was fraudulent. The plaintiffs allege that defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016, because no representative from defendant Bank of New York Mellon was present at the auction to bid on the property and, therefore, defendant Bank or New York Mellon purchased the residence through fraudulent means rendering the sale null and void. (2nd Amended Complaint, page 2, lines 21-22; page 3, lines 13-14; and 3, lines 17-18.)

Defendants Bank of New York Mellon, Select Portfolio Servicing, Inc., and MERS demur to the entire 2nd amended complaint on the following grounds: the entire complaint is barred by the doctrines of res judicata and collateral estoppel; the wrongful foreclosure cause of action is deficient due to failure to allege tender of the loan balance or facts defeating the presumption of fair trustee's sale; the claims fail against defendant MERS, because plaintiffs do not allege any facts against MERS; and defendants join in and adopt the arguments raised by defendants Bank of America, Recontrust Co., MERS, and Severson and Werson in their demurrers to the 2nd amended complaint.

The proofs of service in the court's file declares that on May 30, 2018 notice of the hearing and the papers filed in support of the demurrers were served by mail on plaintiffs and counsel for the other defendants in this action. There is no document filed after the motion that is recognizable as an opposition to the demurrers.

When any ground for objection to a complaint appears on its face, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by demurrer to the pleading. (Code of Civil Procedure, § 430.30(a).)

"'A demurrer admits all material and issuable facts properly pleaded.  [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein.' (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)  Also, '... "plaintiff need only plead facts showing that he may be entitled to some relief [citation]." [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint.' (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)" (Highlanders, Inc. v. Olsan (1978) 77 Cal.App.3d 690, 696-697.)

"We are required to construe the complaint liberally to determine whether a cause of action has been stated, given the assumed truth of the facts pleaded. (*Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 628 [246 Cal.Rptr. 185].)" (Picton v. Anderson Union High School Dist. (1996) 50 Cal.App.4th 726, 732-733.)

Inasmuch as plaintiffs have not set forth the 2nd amended complaint as separate causes of action, the court will be required to overrule the demurrer to the entire 2nd amended complaint should the 2nd amended complaint state a cause of action under any legal theory. "A demurrer does not lie to a portion of a cause of action. (Citations Omitted.)" (PH II, Inc. v. Superior Court (1995) 33 Cal.App.4th 1680, 1682.) Where a portion of the cause of action is defective on the

face of the complaint, the appropriate remedy is to bring a motion to strike that portion of the complaint. (PH II, Inc., supra at pages 1682-1683.)

With the above-cited principles in mind, the court will rule on the demurrers to the 2nd amended complaint.

Res Judicata/Collateral Estoppel

Plaintiffs filed a previous action against defendants Bank of New York Mellon and Select Portfolio Servicing, Inc., and others on November 15, 2013. (Case Number PC-20130578.) The 2nd amended complaint in case number PC-20130578 asserted causes of action against defendants for cancellation of instruments, violation of the homeowners bill of rights, unfair business practices, wrongful foreclosure, and quiet title related to the May 18, 2007 loan, which included claims that the MERS assignment of the deed of trust was invalid, and the note was not duly endorsed, transferred and delivered to defendant Bank of New York Mellon as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2007-OH2.

Defendants Bank of New York Mellon and Select Portfolio Servicing, Inc. demurred to all causes of action. Plaintiffs Ray opposed the demurrers and asserted, among other grounds, that plaintiffs validly rescinded the note and deed of trust by mailing a notice of rescission under the Truth in Lending Act on August 5, 2015.

The court sustained the demurrers to all causes of action without leave to amend and on April 6, 2016 entered a judgment of dismissal with prejudice in favor of defendants and against plaintiffs Ray.

""Res judicata" describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." (Lucido

*v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) [Footnote omitted.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action. ¶ A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. " 'Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief.' " (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245 [65 Cal.Rptr.2d 25].)" (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896-897.)

The Supreme Court further held: "California's res judicata doctrine is based upon the primary right theory. As we explained in *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682, 34 Cal.Rptr.2d 386, 881 P.2d 1083: ¶ "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] ... ¶ "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a

single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' [Citation.] ¶ "The primary right theory ... is invoked ... when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata." ¶ The judgment in *Mycogen I* bars the action brought in *Mycogen II* if both suits seek to vindicate the same primary right. The Court of Appeal in this case found that the proceedings in *Mycogen I* and *Mycogen II* arose from the same injury, and therefore concluded that the proceeding in *Mycogen II* was barred. We agree." (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 904-905.)

The Third District Court of Appeal has stated: "The rule against splitting a cause of action is, in part, an application of the doctrine of res judicata. (*Ford Motor Co. v. Superior Court* (1973) 35 Cal.App.3d 676, 680, 110 Cal.Rptr. 59.) 'It is clearly established that a party may not split up a single cause of action and make it the basis of separate suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim. [Citations.] The rule against splitting a cause of action is based upon two reasons: (1) That the defendant should be protected against vexatious litigation; and (2) that it is against public policy to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action.' (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 894-895, 151 P.2d 846.) "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being

determinative of the other." (Id. at pp. 895-896, 151 P.2d 846, italics omitted.)" (<u>People v. Damon</u> (1996) 51 Cal.App.4th 958, 974.)

The 2nd amended complaint in the instant action seeks to split plaintiffs' primary right related to claims that the conduct and omissions of defendant Bank of New York Mellon as trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2007-OH2 and Select Portfolio Servicing, Inc. caused damages to plaintiffs Ray and plaintiffs Ray were entitled to quiet title to the same real property confirming they owned the real property. The only conduct not alleged in the 2nd amended complaint in case number PC-20130578 and allegedly post-dating the entry of judgment in case number PC-20130578 is that defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016. Therefore, all theories of liability premised upon the alleged conduct in the 2nd amended complaint in the instant action, except a cause of action arising from the allegation that defendant Bank of New York Mellon did not purchase the subject real property at the trustee's sale on November 15, 2016, are barred by the doctrine of res judicata.

<u>Joinder In and Adoption of the Arguments Raised by Defendants Bank Of America, Recontrust Co., MERS, and Severson and Werson in their Demurrers to the 2nd Amended Complaint</u>

The demurring defendants join in and adopt the demurrers of defendants Bank of America, Recontrust Co., MERS, and Severson and Werson, which is being heard concurrently with the instant demurrers.

The court incorporates by reference into this ruling its ruling on the demurrers to the 2nd amended complaint asserted by defendants Bank of America, Recontrust Co., MERS, and Severson and Werson. For the same reasons as stated in that incorporated ruling, the court sustains defendants Bank of New York Mellon's, Select Portfolio Servicing, Inc.'s, MERS' demurrers to the entire 2nd amended complaint without leave to amend.

**TENTATIVE RULING # 2: DEFENDANTS BANK OF AMERICA'S, RECONTRUST CO.'S, MERS', AND SEVERSON AND WERSON'S DEMURRERS TO THE ENTIRE 2ND AMENDED COMPLAINT ARE SUSTAINED WITHOUT LEAVE TO AMEND. DEFENDANTS BANK OF AMERICA'S, RECONTRUST CO.'S, MERS', AND SEVERSON AND WERSON'S SPECIAL ANTI-SLAPP MOTION TO STRIKE 2ND AMENDED COMPLAINT IS DENIED. DEFENDANTS BANK OF AMERICA'S, RECONTRUST CO.'S, MERS', AND SEVERSON AND WERSON'S MOTION TO STRIKE THE ENTIRE 2ND AMENDED COMPLAINT ON THE GROUND THAT IT DOES NOT COMPLY WITH THE PLEADING REQUIREMENTS OF RULES OF COURT, RULE 2.112 IS DROPPED FROM THE CALENDAR AS MOOT. DEFENDANTS BANK OF NEW YORK MELLON'S, SELECT PORTFOLIO SERVICING, INC.'S, AND MERS' DEMURRERS TO THE ENTIRE 2ND AMENDED COMPLAINT ARE SUSTAINED WITHOUT LEAVE TO AMEND. NO HEARING ON THESE MATTERS WILL BE HELD (LEWIS V. SUPERIOR COURT (1999) 19 CAL.4TH 1232, 1247.), UNLESS A NOTICE OF INTENT TO APPEAR AND REQUEST FOR ORAL ARGUMENT IS TRANSMITTED ELECTRONICALLY THROUGH THE COURT'S WEBSITE OR BY TELEPHONE TO THE COURT AT (530) 621-6551 BY 4:00 P.M. ON THE DAY THE TENTATIVE RULING IS ISSUED. NOTICE TO ALL PARTIES OF AN INTENT TO APPEAR MUST BE MADE BY TELEPHONE OR IN PERSON. PROOF OF SERVICE OF SAID NOTICE MUST BE FILED PRIOR TO OR AT THE HEARING.   MATTERS IN WHICH THE PARTIES' TOTAL TIME ESTIMATE FOR ARGUMENT IS 15 MINUTES OR LESS WILL BE HEARD ON THE LAW AND MOTION CALENDAR AT 10:00 A.M. ON FRIDAY, JULY 20, 2018 IN DEPARTMENT NINE  UNLESS OTHERWISE NOTIFIED BY THE COURT.  ALL OTHER LONG CAUSE ORAL ARGUMENT REQUESTS WILL BE SET FOR HEARING ON ANOTHER DATE.  (EL DORADO COUNTY SUPERIOR COURT LOCAL RULES, RULE 7.10.05, et seq.) SHOULD A LONG CAUSE**

**HEARING BE REQUESTED, THE PARTIES ARE TO APPEAR AT 10:00 A.M. ON FRIDAY,
JULY 20, 2018 IN DEPARTMENT NINE WITH THREE MUTUALLY AGREEABLE DATES
FALLING ON A FRIDAY MORNING AT 8:30 A.M.**

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Yu | Mohandesi LLP, 633 W. Fifth Street, Suite 2800, Los Angeles, CA 90071.

On July 25, 2018, on the case known as

Case Name:  JAMES WILFRED RAY ET AL V. BANK OF NEW YORK MELLON
Case No.:  PC20160566

the following document(s) were served by the method indicated below:

- **NOTICE OF RULING RE DEMURRER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

| | |
|---|---|
| | by having the document(s) listed above to be delivered by hand to the office of the addressee(s) set forth below. (C.C.P. § 1011(a), (b)) |
| **X** | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles County in California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. |
| | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day to the address(es) set forth below. |
| | by emailing the document(s) listed above to the person(s) at the address(es) set forth below. |

*__Plaintiffs In Pro Per__*
James Wilfred Ray
Deborah Ann Ray
3190 Carlson Drive
Shingle Springs, CA 95682

*__Attorneys for Bank of America, N.A.__*
Mark Joseph Kenney
Diane P. Cragg
Severson & Werson
4 One Embarcadero Center, Suite 2600
San Francisco, California 94111

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on July 25, 2018 at Los Angeles County, California.



_____
Arvin Paja

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

# EXHIBIT I

**YU | MOHANDESI LLP**

**Jordan S. Yu** (SBN 227341)
213.377.5502 | jyu@yumollp.com
**Pavel Ekmekchyan** (SBN 223222)
213.985.2007 | pavel@yumollp.com
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071
213.377.5501 Facsimile

Attorneys for Defendants
The Bank of New York Mellon as Trustee for the
Certificate Holders of CWALT, Inc. Alternative
Loan Trust 2007-OH2 Mortgage Pass-Through
Certificate Series 2007-OH2 (erroneously sued
"individually"); Mortgage Electronic Registration
Systems, Inc.; and Select Portfolio Servicing, Inc.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF EL DORADO

|  |  |
|---|---|
| JAMES WILFRED RAY AND DEBORAH ANN RAY, individuals,<br><br>Plaintiff(s),<br><br>vs.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, individually and AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2007-OH2 MORTGAGE PASS-THROUGH CERTIFICATE, SERIES 2007-0H2, THE BANK OF NEW YORK, SELECT PORTFOLIO SERVICING, INC., BANK OF AMERICA, N.A., RECONTRUST COMPANY, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AMERICAN FINANCING CORPORATION, COUNTRYWIDE HOME LOANS dba BANK OF AMERICA HOME LOANS, NATIONAL DEFAULT SERVICING CORPORATION, REED SMITH LLP, DOES 1 TO 10<br><br>Defendant(s). | Case No.: PC 20160566<br><br>**NOTICE OF ENTRY OF JUDGMENT**<br><br>Honorable Warren C. Stracener<br><br>Complaint Filed: December 13, 2016 |

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 26, 2018, this Court entered Judgment of Dismissal in favor of Defendants The Bank of New York Mellon as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2007-OH2 Mortgage Pass-Through Certificate Series 2007-OH2; Mortgage Electronic Registration Systems, Inc.; and Select Portfolio Servicing, Inc., and against Plaintiffs James Wilfred Ray and Deborah Ann Ray in the above-entitled action.  A true and correct copy of the Judgment of Dismissal is attached hereto as **Exhibit A.**

DATED:  August 23, 2018

YU | MOHANDESI LLP

By_____
Pavel Ekmekchyan
Attorneys for Defendants The Bank of New York
Mellon as Trustee for the Certificate Holders of
CWALT, Inc. Alternative Loan Trust 2007-OH2
Mortgage Pass-Through Certificate Series 2007-OH2
(erroneously sued "individually"); Mortgage Electronic
Registration Systems, Inc.; and Select Portfolio
Servicing, Inc.

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

# EXHIBIT A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EL DORADO CO. SUPERIOR CT.

FILED   JUL 26 2018

BY _____
              Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF EL DORADO**

| | |
|---|---|
| JAMES WILFRED RAY AND DEBORAH ANN RAY, individuals, | Case No.: PC 20160566 |
| Plaintiff(s), | ▓▓▓▓▓ **JUDGMENT OF DISMISSAL** |
| vs. | Honorable Warren C. Stracener |
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, individually and AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2007-OH2 MORTGAGE PASS-THROUGH CERTIFICATE, SERIES 2007-0H2, THE BANK OF NEW YORK, SELECT PORTFOLIO SERVICING, INC., BANK OF AMERICA, N.A., RECONTRUST COMPANY, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. AMERICAN FINANCING CORPORATION, COUNTRYWIDE HOME LOANS dba BANK OF AMERICA HOME LOANS, NATIONAL DEFAULT SERVICING CORPORATION, REED SMITH LLP, DOES 1 TO 10 | Complaint Filed: December 13, 2016 |
| Defendant(s). | |

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

▓▓▓▓▓ JUDGMENT OF DISMISSAL

CMS

On July 20, 2018, this Court sustained the demurrer of Defendants The Bank of New York Mellon as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2007-OH2 Mortgage Pass-Through Certificate Series 2007-OH2 (erroneously sued "individually"); Mortgage Electronic Registration Systems, Inc.; and Select Portfolio Servicing, Inc. (collectively, "Defendants")  to the Second Amended Complaint ("Complaint") of Plaintiffs James Wilfred Ray and Deborah Ann Ray ("Plaintiffs") in its entirety and without leave to amend

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that

(1) Plaintiffs shall take nothing as to Defendants;

(2) Judgment of Dismissal with prejudice shall be entered in favor of Defendants;

(3) If Plaintiffs have recorded a lis pendens, it shall and hereby is expunged, and Defendants may record this Judgment with the County Recorder as evidence of said expungement; and

(4) Defendants shall be awarded their costs of suit against Plaintiffs, in an amount to be determined at a later time, pursuant to applicable law.

DATED: _7-26_____, 2018.

JUL 26 2018

The Honorable Warren C. Stracener

YU | MOHANDESI LLP
633 West Fifth Street, Suite 2800
Los Angeles, CA 90071

JUDGMENT OF DISMISSAL

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Yu | Mohandesi LLP, 633 W. Fifth Street, Suite 2800, Los Angeles, CA 90071.

On August 24, 2018, on the case known as

Case Name:    JAMES WILFRED RAY ET AL V. BANK OF NEW YORK MELLON
Case No.:        PC20160566

the following document(s) were served by the method indicated below:

- **NOTICE OF ENTRY OF JUDGMENT**

|  | |
|---|---|
|  | by having the document(s) listed above to be delivered by hand to the office of the addressee(s) set forth below. (C.C.P. § 1011(a), (b)) |
| **X** | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles County in California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. |
|  | by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day to the address(es) set forth below. |
|  | by emailing the document(s) listed above to the person(s) at the address(es) set forth below. |

***Plaintiffs In Pro Per***
James Wilfred Ray
Deborah Ann Ray
3190 Carlson Drive
Shingle Springs, CA 95682

***Attorneys for Bank of America, N.A.***
Mark Joseph Kenney
Diane P. Cragg
Severson & Werson
4 One Embarcadero Center, Suite 2600
San Francisco, California 94111

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on August 24, 2018 at Los Angeles County in the State of California.



_____
Arvin Paja

**EXHIBIT J**

1 | JAMES WILFRED RAY AND DEBORAH ANN RAY
*3190 Carlson Drive*
2 | Shingle Springs, CA 95682
Phone: 530-676-1486
3 | Email: theray6@sbcglobal.net

**FILED**

4 |

5 | JAMES WILFRED RAY AND DEBORAH ANN RAY, IN PRO PER

JAN - 9 2019

6 | CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

7 |

8 | **UNITED STATES DISTRICT COURT FOR EASTERN**

**DISTRICT OF CALIFORNIA**

9 |

10 |

11 | THE BANK OF NEW YORK MELLON FKA     )   Case No.:
THE BANK OF NEW YORK, AS TRUSTEE,     )   **2: 1 9 - CV - 0 0 6 3 KJM EFB PS**
*ON BEHALF OF THE HOLDERS OF THE*     )

12 | ALTERNATIVE LOAN TRUST 2007-OH2     )
MORTGAGE PASS-THROUGH     )   **NOTICE OF REMOVAL**

13 | CERTIFICATE, SERIES 2007-OH2     )
    )

14 |       Plaintiff(s),     )
    )

15 |     vs.     )
    )

16 | JAMES WILFRED RAY, DEBORAH ANN     )
RAY, AND DOES 1 through 10, inclusive     )

17 |     )
    )

18 |       Defendant(s).     )

19 |

20 |

21 | Pursuant to Title 28 United States Code sections, 1331, 1441, (b), 1446 (b) (federal court

22 | jurisdiction founded on right under the Constitution, and laws) Defendants, James Wilfred Ray and

23 | Deborah Ann Ray, hereby Remove Civil Action, case no PCU20170277 to the United States

24 | District Court, Eastern District of California, at Sacramento, 501 I Street, Rm 4-200. Plaintiff, The

25 | Bank of New York Mellon FKA The Bank of New York, as Trustee, On Behalf of the Holders of

26 | the Alternative Loan Trust 2007-OH2 Mortgage Pass-through Certificate Series 2007-OH2 v

27 | Defendants James Wilfred Ray and Deborah Ann Ray.

28 |

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

1  Plaintiffs, James Wilfred Ray and Deborah Ann Ray invoke Title 28 section 1446, (b) removal in

2  order to capture case no. PC20160566 Quiet Title, Plaintiffs, James Wilfred Ray and Deborah Ann

3  *Ray v The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificate*

4  Holders of CWALT, Inc. Alternative Loan Trust 2007-OH2 Mortgage Pass-through Certificate

5  Series 2007-OH2, The Bank of New York, Select Portfolio Servicing, Inc., Bank of America N.A.,

6  Recontrust Company, Mortgage Electronic Registration System, Inc., American Financing

7  Corporation, Countrywide Home Loans dba Bank of America Home Loans, National Default

8  Servicing Corporation, Reed Smith LLP, Stores Rives LLP, Severson & Werson, Yu Mohandesi,

9  LLP., The Wolf Law Firm, revival of right to have federal Constitution and laws enforced, case no.

10  PC20160566 being a necessary component to fair adjudication, as all named defendants in the Civil

11  Rights Complaint underlying the revival, act through conspiracy to deny federal civil rights, refusal

12  to recognize federal law, denying access to and protection of federal law.

13  Supplemental jurisdiction established under 28 USC 1367.

14

15  WE declare under penalty of perjury that the foregoing is true and correct and that this declaration

16  was executed at Shingle Springs, California.

17

18  DATED: January 7, 2019

19  _____
    JAMES WILFRED RAY
20  *In Pro Per*

21  _____
    DEBORAH ANN RAY
22  In Pro Per

23

24

25

26

27

28

INSERT DOCUMENT TITLE (e.g., MOTION TO STRIKE)

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ E l  D o R A D D _____ )

                                                                    PUBLIC

On ___January 7, 2019___ before me, ___FARIDA Z. NOORANI - NOTARY___
                                      (insert name and title of the officer)

personally appeared ___JAMES WILFRED RAY and Deborah Ann Ray,___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

FARIDA Z. NOORANI
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2136902
EL DORADO COUNTY
My Comm. Exp. December 14, 2019

Signature ___Farida Z. Norrani___     (Seal)

1 | Kayo Manson-Tompkins, Esq., SBN 136476
Parnaz Parto, Esq., SBN 276874

**EL DORADO CO. SUPERIOR CT.**

2 | THE WOLF FIRM
A Law Corporation

**FILED** DEC 20 2017

3 | 2955 Main Street, Second Floor
Irvine, CA 92614

BY _____ J. Jimenez
Deputy

4 | Telephone: (949)720-9200
Facsimile: (949)608-0131

5 | Attorneys for Plaintiff, BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW
6 | YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE
LOAN TRUST 2007-OH2, MORTGAGE PASS-THROUGH CERTIFICATES,
7 | SERIES 2007-OH2

8

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | COUNTY OF EL DORADO – CAMERON PARK BRANCH

11

12 | BANK OF NEW YORK MELLON, F/K/A THE
BANK OF NEW YORK, AS TRUSTEE, ON

CASE NO. **P C U 2 0 1 7 0 2 7 7**

13 | BEHALF OF THE HOLDERS OF THE
ALTERNATIVE LOAN TRUST 2007-OH2,

**VERIFIED COMPLAINT FOR
UNLAWFUL DETAINER**

14 | MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-OH2,

Action based on Code of Civil
Procedure Section 1161a

15 | Plaintiff,

DEMAND IS LESS THAN $10,000.00

16 | vs.

(LIMITED CIVIL CASE)

17 | JAMES WILFRED RAY, DEBORAH ANN
RAY, and DOES 1 through 10, inclusive,

Assigned to

18 |

Judge Warren C. Stracener
For all purposes

19 | Defendants.

20 |     Plaintiff, BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS

21 | TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-

22 | OH2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OH2 (hereinafter

23 | "Plaintiff"), herein alleges:

24 |     1. Plaintiff is authorized to do business and is doing business within the state of

25 | California.

26 |     2. Plaintiff is informed and believes and thereon alleges that Defendants, JAMES

27 | WILFRED RAY, DEBORAH ANN RAY, and DOES 1 through 10, inclusive, (hereinafter

28

- 1 -
VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

747-2335

*By Fax*

1   "Defendants") are individuals residing at, or are otherwise in possession of the premises

2   situated in the County of El Dorado, APN No. 070-101-33-100, and commonly known as

3   3190 Carlson Drive, Shingle Springs, CA 95682, together with detached garage and

4   separate structures, if any, (hereinafter "Subject Property" and/or "Premises") and within

5   this judicial district.

6       3.  Plaintiff seeks to recover possession of the Premises.

7       4.  The true names or capacities, whether individual, corporate, associate or

8   otherwise of Defendants named herein as Does 1 through 10 inclusive, are unknown to

9   Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will

10  amend this Complaint to show their true names and capacities when the same has been

11  ascertained.

12      5.  JAMES WILFRED RAY and DEBROAH ANN RAY, the original trustors who were

13  the owners of the Subject Property at the time they executed the Promissory Note and

14  Deed of Trust described hereinafter, conveyed the Subject Property as security for

15  payment of a promissory note dated May 18, 2007, and recorded on May 25, 2007, as

16  Instrument No. 2007-0035330-00 of official records in the office of the County Recorder of

17  El Dorado County, California.

18      6.  A default occurred in the payment of the promissory note and thereafter, at the

19  request of the owner and holder of said promissory note and Deed of Trust, the Trustee

20  recorded a Notice of Default and Election To Sell in the office of the County Recorder of El

21  Dorado County, California, to initiate non-judicial foreclosure proceedings to satisfy the

22  obligations of the Note.

23      7.  More than three months after recordation of said Notice of Default, the Trustee

24  gave notice in the manner and form required by Civil Code §§ 2924 et. seq., that the

25  Subject Property would be sold at public auction on November 15, 2016, to satisfy the

26  obligations secured by Deed of Trust.

27      8.  On November 15, 2016, at the time and place noticed for said sale, the Trustee

28  sold the Subject Property to Plaintiff and thereafter executed and delivered a Trustee's

- 2 -
VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

747-2335

Deed Upon Sale. The Trustee's Deed Upon Sale was thereafter recorded and Plaintiff's title to the Subject Property thereby perfected. A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as Exhibit "1" and is incorporated herein by reference.

9. On December 28, 2016, after Plaintiff's title was perfected, Plaintiff caused to be served on Defendants a Notice to Quit (hereinafter "Notice") requiring them to quit and deliver up possession of the premises to Plaintiff within 90 days after service of the Notice. A true and correct copy of the Notice, and a copy of the Proof of Service, are attached hereto collectively as Exhibit "2" and is incorporated herein by reference.

10. Defendants continue in possession of said Premises without Plaintiff's permission or consent.

11. More than 90 days have elapsed since the service of the Notice but Defendants have failed and refused to deliver up possession of said Premises.

12. Plaintiff is informed and believes and thereupon alleges that the reasonable rental value of the use and occupancy of the Premises is equal to an amount according to proof at trial, and damages have accrued to Plaintiff caused by Defendants' unlawful detention thereof, and will continue to accrue at said rate since March 29, 2017 so long as Defendants remain in possession of the Subject Property.

13. Plaintiff requests that the Court take judicial notice of the documents attached to this Complaint and those identified above, pursuant to the provisions of California Evidence Code §452 and §453.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Restitution and possession of the Premises;

2. Damages in an amount to be determined, according to proof, at trial, at a daily rate from March 29, 2017, until the date that judgment for Plaintiff is entered by the Court;

3. For an order to terminate the lease, if any, under which Defendants occupy the Premises;

///

- 3 -
VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

747-2335

4.      Costs of suit herein; and,

5.      For such other and further relief as the court deems just and proper.

DATED: December 18, 2017          THE WOLF FIRM
                                  A Law Corporation


                                  By: _____
                                  KAYO MANSON-TOMPKINS, ESQ.
                                  PARNAZ PARTO, ESQ.
                                  Attorneys for Plaintiff, BANK OF NEW YORK MELLON,
                                  F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON
                                  BEHALF OF THE HOLDERS OF THE ALTERNATIVE
                                  LOAN TRUST 2007-OH2, MORTGAGE PASS-
                                  THROUGH CERTIFICATES, SERIES 2007-OH2

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ray, James W.
Ray, Deborah A.

**DEFENDANTS**

Stracener, Warren G. - Judge ; Pechner, Freda - Judge;
Devore, David - Judge ; Smith, Thomas - Judge;
Heminez, Jennifer - Superior Court Clerk;

**(b)** County of Residence of First Listed Plaintiff  El Dorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  El Dorado
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

None

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC. SEC. 1986, 1985, 1983

Brief description of cause:
Denial of and access to laws of the United States protecting the people

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

2: 1 9 - CV - 0 0 6 3 KJM EFB PS

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**EXHIBIT K**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF NEW YORK MELLON, | No.  2:19-cv-00063-KJM-EFB (PS) |
| Plaintiff, | |
| v. | ORDER |
| JAMES WILFRED RAY and DEBORAH ANN RAY, | |
| Defendants. | |

On January 9, 2019, defendants James Wilfred Ray and Deborah Ann Ray (collectively "defendants"), proceeding pro se, removed this unlawful detainer action from El Dorado County Superior Court.  ECF No. 1.  As explained below, the court REMANDS the case back to the El Dorado Superior Court.

I.      SUBJECT MATTER JURISDICTION

A.      Legal Standard

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, a defendant may remove it to federal court.  28 U.S.C. § 1441(a).  There are two primary bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.

1

District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the longstanding well-pleaded complaint rule, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Federal question jurisdiction cannot rest upon an actual or anticipated defense or counterclaim. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

District courts have diversity jurisdiction where the amount in controversy exceeds $75,000 and the parties are in complete diversity. 28 U.S.C. § 1332. "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

A federal district court may remand a case sua sponte where a defendant has not established federal jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Enrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

II.    DISCUSSION

Defendants' Notice of Removal asserts that the court has federal question, diversity and supplemental jurisdiction over this matter. *See* ECF No. 1 at 1–2 (citing 28 U.S.C. §§ 1331, 1441(b), and 1367 as grounds for jurisdiction). But neither plaintiff's complaint, attached to defendants' removal documents, *see id.* at 4–6, nor defendants' Notice of Removal justify jurisdiction here. The complaint asserts only a claim for unlawful detainer, *id.*, which sounds clearly and exclusively in state law, *see PNC Bank Nat'l Ass'n v. Ahluwalia*, No. 15-cv-01264 WHA, 2015 WL 3866892, at *4 (N.D. Cal. June 22, 2015) ("Unlawful-detainer claims do not arise under federal law and, without more, the court lacks federal-question jurisdiction.") (collecting cases). And the Notice of Removal makes no attempt to satisfy the elements of

2

1   diversity of citizenship and amount in controversy required to establish diversity jurisdiction. *See*

2   *generally* ECF No. 1; 28 U.S.C. § 1332.  In fact, plaintiff's complaint expressly states the amount

3   in controversy is less than the $75,000 threshold.  ECF No. 1 at 4 ("Demand is less than

4   $10,000.").  Finally, remand is appropriate because the function of supplemental jurisdiction does

5   not itself serve as an independent basis for federal court jurisdiction. *See* 28 U.S.C. § 1367

6   (supplemental jurisdiction applies where "district courts have *original* jurisdiction") (emphasis

7   added).  Because defendants have provided no basis for jurisdiction, the court must remand.

8   III.    CONCLUSION

9           For the foregoing reasons, the court REMANDS this case to El Dorado Superior

10  Court.  The Clerk of Court is instructed to close this matter in its entirety.

11          IT IS SO ORDERED.

12   DATED:  January 11, 2019.

14                                          _____
                                            UNITED STATES DISTRICT JUDGE

3

**DECLARATION OF SERVICE**

I declare that I am over the age of eighteen years and not a party to this action.  I am employed in the City and County of San Francisco and my business address is Three Embarcadero Center, Suite 1120, San Francisco, California  94111.

On February 22, 2019, at San Francisco, California, I served the attached document(s):

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

on the following parties:

James Wilfred Ray                        *Plaintiffs*
Deborah Ann Ray
3190 Carlson Dr.
Shingle Springs, CA 95682

☒ **BY FIRST CLASS MAIL:**  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the U.S. Postal Service.  In the ordinary course of business, correspondence would be deposited with the U.S. Postal Service on the day on which it is collected.  On the date written above, following ordinary business practices, I placed for collection and mailing at the offices of Stoel Rives LLP, Three Embarcadero Center, Suite 1120, San Francisco, California  94111, a copy of the attached document in a sealed envelope, with postage fully prepaid, addressed as shown on the service list.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing contained in this declaration.

☐ **BY HAND DELIVERY:**  On the date written above, I placed a copy of the attached document in a sealed envelope, with delivery fees paid or provided for, and arranged for it to be delivered by messenger that same day to the office of the addressee, as shown on the service list.

☐ **BY EMAIL:**  On the date written above, I emailed a copy of the attached documents to the addressee, as shown on the service list.

☐ **BY OVERNIGHT MAIL:**  I am readily familiar with my employer's practice for the collection and processing of correspondence for overnight delivery.  In the ordinary course of business, correspondence would be deposited in a box or other facility regularly maintained by the express service carrier or delivered to it by the carrier's authorized courier on the day on which it is collected.  On the date written above, following ordinary business practices, I placed for collection and overnight delivery at the offices of Stoel Rives LLP, Three Embarcadero Center, Suite 1120, San Francisco, California  94111, a copy of the attached document in a sealed envelope, with delivery fees prepaid or provided for, addressed as shown on the service list.

☒ **(Federal Courts Only)**  I declare that I am employed in the office of a member of this court at whose direction this service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on February 22, 2019, at San Francisco, California.

_____
                              Sharon R. Witkin

Stoel Rives LLP
Attorneys At Law
Sacramento

REQUEST FOR JUDICIAL NOTICE ISO
MOTION TO DISMISS                                    -4-                          2:19-CV-0055-MCE-KJN

100407482.1 0099805-00000